UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| CHARLES V. RYAN IV, on behalf of himself ) | |
| and on behalf of others similarly situated, ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | Civil Action No. 05-30017-MAP |
| ) | |
| ROBERT J. GARVEY, and PATRICK J. ) | |
| CAHILLANE in their individual capacities, ) | |
| ) | |
| Defendants ) | |
| _____) | |

**PLAINTIFFS' CONSENT MOTION FOR
PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

**I.    INTRODUCTION**

The parties have reached a settlement whereby the defendants will maintain a policy

protecting the privacy of pre-trial detainees at the Hampshire County Jail and will pay $205,000 to

an estimated class of 90 people to resolve all of the plaintiffs' claims.[1] The settlement is the product

of intensive negotiations during the months from June through December 2006. Counsel for the

parties believe that the settlement is fair, reasonable and adequate, and should be approved by the

Court.[2] Plaintiffs request that this Court grant the plaintiffs' motion for preliminary approval of the

settlement, approve the notice forms and the notice plan, appoint Analytics, Inc. as the claims

administrator, set a date for the final fairness hearing and a date for filing motions to approve the

settlement and for attorney's fees and costs.

---

[1] The defendants' consent to this motion does not encompass an endorsement of all statements in the incorporated supporting memorandum, but the defendants do join fully with plaintiffs in requesting that the Court approve the written settlement agreement of the parties attached as Exhibit 1 and the other relief requested in the motion.

[2] Ex. 2 at ¶22 (Affidavit of Howard Friedman).

## II.    CASE BACKGROUND

Plaintiff Charles V. Ryan IV alleged that the Hampshire Jail and House of Correction unconstitutionally required every person who was admitted into the jail to be strip searched without individualized suspicion. On July 14, 2006, the Court certified this case as a class action under Fed.R.Civ.P. 23(b)(3). The class was defined as follows:

> All persons who were illegally strip searched at the Hampshire Jail and House of Correction from January 18, 2002 to November 7, 2002, under a policy of conducting strip searches without evaluating for individualized reasonable suspicion:
>
> (1)    while waiting for bail to be set or for a first court appearance after being arrested on charges that did not involve a weapon or drugs or contraband or a violent felony; or
>
> (2)    while waiting for a first court appearance after being arrested on a default or other warrant (for example, those issued by the State Parole Board) on charges that did not involve a weapon or drugs or contraband or a violent felony; or
>
> (3)    while held after a finding of civil contempt of court for failure to pay child or spousal support, a judgment, or a fine.

The parties began negotiating a settlement in June 2006. After the Court certified the case as a class action, and the parties agreed that the class consisted of approximately 90 people, plaintiffs made a detailed settlement proposal on August 2, 2006. The parties, through counsel, signed the Settlement Agreement, attached to this motion as Exhibit 1, on December 27, 2006.

## III.    SUMMARY OF THE PROPOSED SETTLEMENT

The Defendants have agreed to pay $205,000 to settle all claims brought by the plaintiff in this action, including attorney's fees and costs. The agreement provides for a cash payment to every person who meets the class definition. The parties estimate that there are approximately 90 class members. Only one payment will be made no matter how many times a person was admitted into the

2

jail during the class period and strip searched. Class counsel recommends an incentive payment of $10,000 to the named plaintiff Charles V. Ryan IV to compensate him for his loss of privacy as a result of bringing this case and for the time he spent in responding to discovery and working with counsel to bring about the favorable result for the class. While the parties have no agreement with regard to attorney's fees, counsel will request that the Court award a fee of 33.3% of the gross settlement amount. Fees and expenses, including the cost of administering the settlement, will be deducted from the settlement amount before calculating the distribution amounts to class members.

## IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AND NOTICE PLAN AND SET A DATE FOR A FAIRNESS HEARING

In deciding whether to approve a proposed settlement of a class action, the Court must hold a hearing and determine if the settlement is "fair, reasonable and adequate."[3] Before the final fairness hearing, this Court should conduct a review of the settlement and make a "preliminary determination of the fairness, reasonableness and adequacy of the settlement terms."[4] This Court should be satisfied that the settlement is in the range of possible approval before the settlement proceeds.

At this stage, the Court should also review the proposed notices, attached to the Settlement Agreement as Exhibits A, C and D, before permitting counsel to send notice to potential class members. This provisional approval is subject to a more searching inquiry at the fairness hearing.

### A.    Benefit to Class Members

Class members who submit a qualifying claim form will receive a check. The proposed claim form is attached to the Settlement Agreement as Exhibit B. The precise amount will depend on the total number of claims submitted. It is difficult to predict the participation rate in this case because

---

[3] Fed. R.Civ.P. 23(e); *See* Durrett v. Housing Authority of Providence, 896 F.2d 600, 604 (1st Cir. 1990).

[4] Fed. R.Civ.P. 23 *Manual for Complex Litigation, Fourth*, (Federal Judicial Center 2004) §21.632.

of the very small size of the class. However, it is clear that each class member would receive a significant amount.[5] If 30% of the potential class of 90 members were to submit claim forms, payments would be $3,666. Should 50% of the potential class members submit claims, each would receive $2,444.

By any measure, this is more than a token recovery. Participating class members will receive a significant cash payment for filling out a short form, affixing a $.39 cent stamp to an envelope and mailing it to the claims administrator. These class members will obtain money without having to find and hire their own lawyers, pay litigation expenses, endure the anxiety of litigation, respond to interrogatories or requests for documents, testify at depositions, and prepare for trials. Instead of giving up their privacy by filing suit, they will benefit from the anonymity provided by their membership in the class.

### B.     Courts Favor Settlements Particularly in Class Actions

Courts consistently favor the settlement of disputed claims.[6] In the class action context, "there is an overriding public interest in favor of settlement."[7] Settlement of this class action will prevent substantial litigation expenses, delayed payment to the plaintiffs and the strain on court resources that would result from nearly a hundred individual damages trials.[8] Furthermore, settlement will increase the number of class members who are able to participate in this case, class members whose rights would otherwise not be vindicated.

---

[5] Support for this statement and the rest of this paragraph is found in Ex. 2 at ¶27 (Affidavit of Howard Friedman).

[6] *See* Durrett, 896 F.2d at 604.

[7] Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977).

[8] Id. at 1331.

4

By reaching a compromise, both sides avoid the risks they faced by proceeding to trial. If damages claims were decided individually, some class members may have received only one dollar.[9] Of course, the defendant also faced the risk that many plaintiffs would obtain larger damages awards ranging from $5,000 to $40,000, and that some might recover more than $40,000.[10] The wide range of verdicts in strip search cases shows that, absent a settlement, both the plaintiffs and the defendants faced significant uncertainty.

Even if plaintiffs were able to win large verdicts, collecting the amounts from the defendants would have presented additional problems. First, the defendants would have been likely to appeal, further delaying payment. Then, plaintiffs would have had to pursue collection against the individual defendants who may not have had the means to pay, again delaying payment. The defendants also had compelling reasons to settle. They could have lost the trial on liability based on their admitted policy of requiring strip searching class members without individualized suspicion. The defendants would then have been facing close to a hundred damages trials. Even if the damages in individual cases were not large, the defendants would be liable for reasonable attorney's fees to the plaintiffs pursuant to 42 U.S.C. § 1988. The costs of pursuing this litigation could have been large. Thus, both sides had good reasons to settle.

---

[9] Nominal damage verdicts have been awarded in individual strip search cases. *See* Foote v. Spiegel, 118 F.3d 1416 (10th Cir. 2001) (after two appeals, plaintiff awarded $1 for an admittedly illegal strip search); Stewart v. Lubbock County 767 F.2d 153, 154, n.2. (5th Cir. 1985)(one plaintiff awarded $1 and the other awarded $15,000); Sorenson v. City of New York, 2000 U.S.Dist. LEXIS 15090 (S.D.N.Y. 2000)(two plaintiffs awarded $1 each); Polk v. Montgomery County, 689 F.Supp. 556 (D. Md. 1988) (plaintiff awarded $1 after rejecting a settlement offer of $31,000).

[10] Verdicts in Massachusetts courts for women alleging an illegal strip search have ranged from $45,000 to $177,000. Blackburn v. Snow, 771 F.2d 556 (lst Cir. 1985)(award of $177,040); Denk v. Santos, 98-11963-NG (jury award of $135,000); Rodriguez v. Silva and City of New Bedford, June 17,1996, (award of $45,000 for plaintiff who was deceased at time of trial and $150,000 for another); Adams v. Town of Wareham, 94-11446-DPW (award of $50,000). In Joan W. v. City of Chicago, 771 F.2d 1020 (7th Cir. 1985), the Seventh Circuit addressed the question whether a verdict of $112,000 was excessive. In ordering that the case be remanded for a new trial unless the plaintiff accepted a reduction of the award to $75,000, the Court looked to verdicts in nine other strip search suits against the City of Chicago in which the juries returned awards of $3,300, $15,000, $15,000, $25,000, $25,000, $30,000, $45,000, $50,000 (reduced as excessive to $25,000), and $60,000. *See* id. at 1023–24.

5

### C.    Procedural Considerations Support Approval of the Settlement

"When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."[11] In assessing a proposed settlement, a court is entitled to rely upon the views of experienced trial counsel.[12]

### 1.    Stage of proceedings and discovery

"The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims."[13]

The defendants admitted that the County had a written policy requiring strip searches of class members without individualized suspicion. Therefore, counsel for the parties recognized very early in the case that the critical issue would be the size of the class.[14] Plaintiff served a set of interrogatories and requests for documents in June 2005. In response, defendants produced multiple sets of electronic booking information relating to more than 900 bookings. The data was analyzed to determine the size and composition of the class. Because the Jail did not record in its booking computer system why or how a prisoner was brought to the Jail, a determination whether the individuals were pre-arraignment or pretrial detainees could not be made from examining the booking data alone. Class counsel visited the Jail to personally review 266 inmate booking files to determine class membership. It took a full year to determine class size. A class had been certified. The parties entered settlement negotiations with a full understanding of the strengths and weaknesses of their positions on liability and potential damage awards.

---

[11] City Partnership Co. v. Atlantic Acquisition Ltd. Partnership, 100 F.3d 1041, 1043 (1st Cir. 1996).

[12] See Cotton, 559 F.2d at 1330.

[13] Duhaime, 177 F.R.D. at 67 (quoting Armstrong v. Bd. of School Directors of Milwaukee, 616 F.2d 305, 325 (7th Cir. 1980)).

[14] Ex. 2 at ¶23 (Affidavit of Howard Friedman).

2.    **Arm's length negotiations**

The case settled after months of negotiations by counsel.[15] The parties began negotiating a settlement in June 2006. After the Court certified the case as a class action, plaintiffs made a detailed settlement proposal on August 2, 2006. In late August, the parties reached agreement in principle on the terms of the settlement. It took another four months to agree on the details contained in the Settlement Agreement. This settlement is the result of very vigorous negotiations.

D.    **The Amount of the Settlement is Fair, Reasonable and Adequate**

The Court should examine the amount of recovery as well as the plan for distributing the recovery to class members in order to determine whether the proposed monetary settlement is fair, reasonable and adequate. "[I]n any case, there is a range of reasonableness with respect to a settlement . . . ."[16] The settlement in this case is well within that range.

In the two prior Massachusetts strip search class action cases, Judge Nancy Gertner approved a $10 million settlement for approximately 5,400 women in Mack v. Suffolk County and Magistrate Judge Robert Collings approved a $1.35 million settlement for approximately 700 women in Connor v. Plymouth County. In Mack, 1,500 women filed claims while 113 did in Connor.[17]

District courts in other jurisdictions have approved comparable lump-sum settlements in similar strip search class actions.[18] In Eddleman v. Jefferson County, the court approved a settlement of $11.5 million for a class of about 50,000 class members - more than 4,000 made claims. In Tyson

---

[15] Support for this statement and the rest of this paragraph is found in Ex. 2 at ¶22 (Affidavit of Howard Friedman).

[16] Newman, 464 F.2d at 693.

[17] Ex. 2 at ¶¶14-15 (Affidavit of Howard Friedman).

[18] Support for this statement and the rest of this paragraph is found in Ex. 2 at ¶¶18, 17 and 16 (Affidavit of Howard Friedman).

v. City of New York, the court approved a $50 million settlement for a class of over 50,000 - approximately 6,000 made claims. In Nilsen, the court approved a $3.3 million settlement for more than 7,000 people - approximately 1,400 made claims. The settlement in this case of $205,000 to a potential class of 90 people falls comfortably within the "range of reasonableness" established by prior settlements approved by courts here in Massachusetts and elsewhere.

**E.     The Distribution Formula is Fair, Reasonable and Adequate**

Plaintiffs' counsel approached settlement with the helpful experience of having settled, with court approval, two similar strip search class action case in Massachusetts, Mack v. Suffolk County and Connor v. Plymouth County, and one in Maine, Nilsen v. York County.[19] Plaintiffs' counsel had the additional benefit of advice from lawyers who had settled similar strip search class actions in other states. Some of those settlements required individualized determinations of each class member's subjective experience to determine his or her share of the settlement. This method proved to be so time consuming and expensive that it harmed the class as a whole. For example, in the Tyson case the claims administrator was paid an amount that nearly equaled the amount distributed to the class. In that case, a claimant could only obtain a payment of $250 without providing answers to a detailed claim form and releases for medical, employment, social security and educational records. A settlement that attempted to decide damages individually would require spending much more money to administer the fact finding process. Counsel felt that given the limited funds available to settle this case, a proposal that limited administrative expenses in favor of payments to class members would be more beneficial to the class.

---

[19] Support for this statement and the rest of this paragraph is found in Ex. 2 at ¶¶13 and 21 (Affidavit of Howard Friedman).

Therefore, plaintiffs' counsel agreed to a settlement that provides one payment to every person who was subjected to the defendants' policy. Those people who were arrested more than once during the class period do not receive additional payments because it is unlikely that a jury would reward a person for being arrested several times. Rather, it is more likely that a jury would feel the strip search was much less traumatic when the detainee had been through the search previously and would not be surprised by it the second or third time. Similarly, in administering the 9/11 Victim Compensation Fund, Kenneth Fineberg decided to award every family the same amount for non-economic damages, recognizing how difficult it would be for him to attempt to make fine distinctions between the pain and suffering of the families.[20]

## F.     The Attorney's Fees and Expenses are Reasonable

Class counsel will request an attorney's fee of 33.3% of the common fund plus litigation and claims administration expenses as provided for in the fee agreement between class counsel and the class representative.[21] This is consistent with the fees awarded to counsel in other similar strip search class action cases. In Mack, class counsel was awarded fees of 30% of a $10 million settlement fund. In Connor, class counsel was awarded a fee of 33% of a $1.35 million settlement fund. In Eddleman v. Jefferson County, class counsel was awarded 33.3% of a $11.5 million settlement fund. In Moser v. Anderson, class counsel was awarded 33.3% of the $3 million settlement fund.

The fee is justified by the amount of work, skill, and expertise needed to settle this case with the results achieved. Counsel will file a motion for attorney's fees and expenses under Fed. R.Civ.P. 23(h) to be heard at the time of the fairness hearing. Counsel will provide the Court with a lodestar figure for attorney's fees as a method to verify the reasonableness of the percent of fund method.

---

[20] http://www.cbsnews.com/stories/2003/11/07/60minutes/main582529.shtml.

[21] Ex. 2 at ¶25 (Affidavit of Howard Friedman).

### G.     Bonus Should Be Paid to Compensate the Named Class Representative

Class counsel requests an incentive payment of $10,000 for named class representative Charles V. Ryan IV.[22] The purpose of the bonus is to compensate him for his loss of privacy as a result of bringing this case and for the time he spent in responding to discovery and working with counsel to benefit the entire class. Mr. Ryan spent significant time on this case: not only was he deposed, he also answered individual discovery requests, and he consulted with counsel throughout the litigation. Mr. Ryan endured a loss of his personal privacy by revealing his name to bring this lawsuit on behalf of the class.

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."[23] In Eddleman, the court approved bonuses of $5,000, $10,000 and $15,000 to the class representatives and other class members who assisted class counsel in litigating the case.[24] In Mack, the court approved bonuses in the amount of $15,000 for acting as a class representative and $5,000 for being the subject of a deposition. In Brecher v. St. Croix County, the two named plaintiffs shared an incentive award of $35,000.

Bonuses are particularly proper for the named class representative here because he agreed to sacrifice his privacy in the embarrassing context of admitting that he was arrested and forced to strip naked as part of his detention in jail. It would be unfair not to compensate him for efforts that helped achieve a benefit for the entire class.

---

[22] Support for this statement and the rest of this paragraph is found in Ex.2 at ¶24 (Affidavit of Howard Friedman).

[23] In re Southern Ohio Correctional Facility, 175 F.R.D. 270, 272-273 (S.D.Ohio 1997)(citing 10 other courts where incentive awards were approved); Spicer v. Chicago Bd. Options Exchange, Inc., 844 F.Supp. 1226, 1266-68 (N.D.Ill. 1993)(citing 17 courts where incentive awards were approved). See also, Thorton v. Texas Motor Freight, 497 F.2d 416 (6th Cir. 1974).

[24] Support for this statement and the rest of this paragraph is found in Ex. 2 at ¶¶18-19, 15 and 20 (Affidavit of Howard Friedman).

**H.    The Notice to Class Members Satisfies Due Process Requirements and the Federal Rules of Civil Procedure 23**

Fed.R.Civ.P. 23(e) requires that notice of the proposed settlement be sent to all members of the class "in such manner as the court directs."

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[25] "Where the name and last known address of a class member or individual party is known or is capable of being readily identified," individual notice must be given.[26] Plaintiffs propose sending individual notice to each class member based on the mailing addresses provided at booking unless updated by the class member.

The Notice of Class Action and Proposed Settlement is attached to the Settlement Agreement as Exhibit A. The Notice summarizes the terms of the settlement, describes the options of each class member, discloses the bonus to the class representative, discloses the proposed amount of attorney's fees and expenses and that this issue will be decided by the Court at the fairness hearing, gives the date, time and place of the fairness hearing, and provides contact information for any questions about the settlement.[27] The notice is drafted in plain English. This notice will be sent by first class mail, postage-prepaid, to all potential class members at their last known addresses within three weeks of the court's order granting preliminary approval of the settlement.

---

[25] Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

[26] In Re Domestic Air Transp. Antitrust Litigation, 141 F.R.D. 534, 539 (N.D.Ga. 1992).

[27] See Notice, attached as Ex 3A; Manual for Complex Litigation §30.212.

11

In order to reach as many class members as possible, the notice plan includes several additional notices. First, because some class members may have moved without leaving a forwarding address, and to account for any errors in the class list, the notice plan also includes publication of a settlement notice in three local newspapers. A notice, attached to the Settlement Agreement as Exhibit C, will be published in the *Springfield Republican,* the *Daily Hampshire Gazette* and the *Greenfield Recorder*. Second, the press will be notified of the settlement, through a release which is attached as Exhibit E, which is likely to result in news coverage of the settlement. Class members are more likely to learn of this settlement through news coverage than through paid notices in a newspaper. Third, the defendants have agreed to post a notice, attached as Exhibit D, in the Booking Room of the Hampshire Jail. Finally, a website will be established to provide additional information. The notices, forms and other information on the case will be posted to the website. The notice plan is designed to reach as many class members as possible, not to simply meet minimum due process requirements.

## V.     ADMINISTRATION OF THE SETTLEMENT

Class counsel recommend that this Court appoint Analytics, Inc. as the claims administrator. Documents regarding Analytics are attached to the Settlement Agreement as Exhibit F. Analytics is the oldest class action consulting firm in the country.[28] They have experience in processing settlements in strip search class actions, having handled the administration of the Bilovde case in Wisconsin, the Nilsen case in Maine and distribution of the settlement proceeds of the Connor case in Massachusetts. Class members will be able to fill out a simple claim form, a copy of which is attached to the Settlement Agreement as Exhibit B.

---

[28] Support for this statement and the rest of this paragraph is found in Ex. 2 at ¶26 (Affidavit of Howard Friedman) and Exhibit F to the Settlement Agreement (Affidavit of Richard W. Simmons).

## VI.  <u>PROPOSED SCHEDULE</u>

Class counsel proposes the following schedule based on the time periods in the Settlement Agreement. Assuming that there are no unforseen circumstances and that this Court approves the settlement, the schedule provides for distribution before the end of 2007. Based on this schedule, the fairness hearing would take place in June 2007, although it could be a few weeks earlier if the Court grants preliminary approval in February 2007.

| | | Chronology of Anticipated Dates for Completing the Settlement Process | |
|---|---|---|---|
| **EVENT NUMBER** | **DATE CALCULATION** | **DESCRIPTION OF EVENT** | **ESTIMATED DATE** |
| **1** | | **Preliminary Hearing held.** | **1/19/2007** |
| **2** | **To be determined by the Court** | **Court issues Order granting preliminary approval of settlement.** | **2/16/2007** |
| 3 | 3 weeks after 2 | Mail the Notice of Class Action Settlement and Settlement Claim Form. Also, print notice in newspapers and post notice at the jail. | 3/9/2007 |
| 4 | 2 weeks before 8 | Postmark date for class members to submit written objections to the settlement. | 5/25/2007 |
| 5 | 2 weeks before 8 | Postmark date for class members to submit Notice of Exclusion to opt. | 5/25/2007 |
| **6** | **To be determined by the Court** | **Settlement Fairness Hearing held.** | **6/8/2007** |
| 7 | 2 weeks after 6 | Postmark date for class members to submit Settlement Claim Forms. | 6/22/2007 |
| 8 | 1 week before 7 | One week amnesty ends. | 6/29/2007 |
| **9** | **To be determined by the Court** | **Court issues Order granting final approval of settlement.** | **7/13/2007** |
| 10 | 1 week after 9 | Claims administrator will send a Notice of Claim Approval to all participating class members. | 7/20/2007 |
| 11 | 1 week after 9 | Claims administrator will send a Notice of Claim Denial to claimants who are not verified as class members. | 7/20/2007 |
| 12 | 2 weeks after 11 | Claimants must appeal all claim denials to claims administrator by this date. | 8/3/2007 |
| 13 | 1 week after 12 | Claims administrator will resolve all appeals regarding class membership and send notices to claimants regarding final decision approving or denying appeals. | 8/10/2007 |
| 14 | 2 weeks after 13 | Deadline for claimants to appeal to Court regarding claim's administrator's final decision denying claim. | 8/24/2007 |
| **15** | **To be determined by the Court** | **Court willl decide all appeals.** | **9/7/2007** |
| 16 | 1 week after 15 | Claims administrator will make final calculation of distributions of the settlement funds. Claims administrator will prepare for the MA Comptroller's Office a distribution spreadsheet. | 9/14/2007 |
| 17 | 60 days after 16 | Comptroller's Office will mail settlement checks to class members, then make payment to class counsel for fees and expenses. | 11/13/2007 |
| 18 | 60 days after 17 | Attorney General's Office will obtain settlement distribution report. | 1/12/2008 |
| 19 | | Comptroller's Office will send 1099's to class members. | 1/15/2008 |
| 20 | 90 days after 18 | Attorney General's Office will obtain settlement distribution report. | 4/11/2008 |
| 21 | 90 days after 20 | Attorney General's Office will obtain settlement distribution report. | 7/10/2008 |
| 22 | 90 days after 21 | Attorney General's Office will obtain settlement distribution report. | 10/8/2008 |
| 23 | 90 days after 22 | Attorney General's Office will obtain final settlement distribution report. | 1/6/2009 |

## VII.    <u>CONCLUSION</u>

Plaintiffs request that this Court grant the plaintiffs' motion for preliminary approval of the settlement, approve the notice forms and the notice plan, appoint Analytics, Inc. as the claims administrator, set a date for the final fairness hearing and a date for filing motions to approve the settlement and for attorney's fees and costs.

**RESPECTFULLY SUBMITTED,**
For the plaintiff, and the class,

Date: December 29, 2006        /s/ Myong J. Joun

Howard Friedman
BBO #180080
Myong J. Joun
BBO #645099
Law Offices of Howard Friedman, P.C.
90 Canal Street, Fifth floor
Boston, MA 02114-2022
T (617) 742-4100
F (617) 742-5858
hfriedman@civil-rights-law.com
mjjoun@civil-rights-law.com

14

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES V. RYAN IV, on behalf of himself and on behalf of others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>ROBERT J. GARVEY, and PATRICK J. CAHILLANE in their individual capacities,<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 05-30017-MAP<br>)<br>)<br>)<br>)<br>)<br>) |

## SETTLEMENT AGREEMENT

## I.    SUMMARY

1.    The parties, by counsel, enter into this Settlement Agreement, which they will submit to the Court for its approval. The defendants agree to settle plaintiffs' claims by establishing a common fund of Two Hundred and Five Thousand Dollars ($205,000.00). This amount, hereinafter referred to as the "settlement fund," will not be segregated or placed in a separate account by the Commonwealth. After payment of claims administration expenses, litigation expenses, an incentive award to the class representative and attorney's fees, the remaining settlement fund balance will be evenly divided among participating class members. Under this agreement, class members will receive one payment each no matter how many times they were booked into the jail during the class period.

## II.    **BACKGROUND**

2.    The plaintiffs filed this action on January 18, 2005.

3.    On July 14, 2006, the Court appointed Attorneys Howard Friedman and Myong J. Joun as class counsel under Fed.R.Civ.P. 23(g) and certified this case as a class action under Fed.R.Civ.P. 23(b)(3) defined as follows:

> All persons who were illegally strip searched at the Hampshire Jail and House of Correction from January 18, 2002 to November 7, 2002, under a policy of conducting strip searches without evaluating for individualized reasonable suspicion:
>
> (1)    while waiting for bail to be set or for a first court appearance after being arrested on charges that did not involve a weapon or drugs or contraband or a violent felony; or
>
> (2)    while waiting for a first court appearance after being arrested on a default or other warrant (for example, those issued by the State Parole Board) on charges that did not involve a weapon or drugs or contraband or a violent felony; or
>
> (3)    while held after a finding of civil contempt of court for failure to pay child or spousal support, a judgment, or a fine.

## III.    **TERMS OF SETTLEMENT**

4.    On behalf of the defendants, the Commonwealth of Massachusetts will pay Two Hundred and Five Thousand Dollars ($205,000.00) ("settlement fund") to settle all claims brought by the plaintiffs in this action including claims for attorney's fees and costs.

5.    All payments hereunder will be made out of the Commonwealth's Settlement and Judgments account as detailed in this agreement and are subject to appropriation.

6.    The defendants understand that this agreement will require the approval of the Court. The defendants will ask the Court to approve the terms of this settlement agreement.

7.    The defendants and their counsel agree to provide reasonable assistance to facilitate the administration of this settlement including providing access to data and documents necessary to determine class membership if a person disputes denial of a claim.

### III.    COURT SUPERVISION

8.    The Court will retain jurisdiction over the settlement and may enter orders as appropriate to enforce it, to adjudicate the rights and responsibilities of the parties, and to effect fair and orderly administration.

9.    Any deadlines, dates, or other details in this Settlement Agreement may be changed by the Court on a showing of good cause.

### IV.    HEARINGS

10.    The parties will jointly request that the Court hold a hearing as soon as reasonably practicable to decide whether to grant preliminary approval to the settlement. If preliminary approval is granted, the parties will begin to implement the settlement.

11.    The Court will hold the Final Fairness Hearing to decide whether to grant final approval to the settlement on a date sixteen weeks after the Court grants preliminary approval to the settlement.

12.    If the Court grants final approval of the settlement, the settlement fund will then be distributed pursuant to this agreement and the orders of the Court.

### VI.    CLAIMS ADMINISTRATOR

13.    Class counsel recommends that the firm of Analytics, Inc. of Chanhassen, Minnesota be approved by the Court as the claims administrator for this case. Analytics, Inc. has provided similar claims administration services in other strip search class actions.

3

14.    The claim administrator will administer notice to class members in the manner prescribed by the Court; shall accept and docket all claim forms; shall send all notices that a claim has been either accepted or rejected to class members; shall resolve any appeals of claim denials and shall calculate the amount of each claim pursuant to the formula set out in this agreement.

15.    Class counsel will oversee settlement administration and will provide direction to the claims administrator as needed.

## VII.    COMPTROLLER'S OFFICE

16.    The Comptroller's Office will distribute settlement checks to participating class members; prepare all 1099s and other necessary tax forms relating to the settlement; and provide periodic reports accounting for the distribution of the settlement fund and reporting on the status of issued checks as provided in this agreement.

17.    The Office of the Attorney General will oversee the settlement distribution to class members as detailed below in paragraphs 39, 41, and 44-47 and will provide direction to the Comptroller's Office as needed by class counsel.

## VII.    NOTICE, OBJECTIONS, AND OPT-OUTS

18.    Class counsel will send a Notice of Class Action and Proposed Settlement ("Notice") and a Settlement Claim Form ("Claim Form") (collectively, the "Notice Packet"), by first class mail postage prepaid to all potential class members at their last known addresses within three weeks after the Court's order granting preliminary approval. If any mail is returned by the post office with notice of a more current address, class counsel will resend the notice packet to the newer address. Class counsel is not required to make any further efforts to send mail directly to class members.

19.     The Notice will include the terms of the settlement and the class member's right to contest the settlement or opt-out. The Notice will answer anticipated questions explaining the settlement terms and answer anticipated questions. The proposed Notice is attached as Exhibit A.

20.     The Claim Form requests the class member's contact information, instructions for check delivery, and a Form W-9. The proposed Claim Form is attached as Exhibit B.

21.     Class counsel will also publish a notice in the *Springfield Republican,* the *Daily Hampshire Gazette* and the *Greenfield Recorder.* The defendants will post a notice in the Booking Room of the Hampshire Jail. These notices are attached as Exhibits C and D.  In addition to the legal notices, class counsel will issue a press release informing the public of the settlement. The press release is attached as Exhibit E.

22.     In order for a class member to claim a share of the settlement, he or she must submit a valid and complete claim form postmarked no later than 2 weeks after the the Final Fairness Hearing. This deadline is the "Claims Deadline."

23.     The claims administrator will send a claim form to anyone who requests one up to the date of the Final Fairness Hearing, or as allowed by the Court. In addition, the claims administrator will maintain updated documents regarding this settlement on a website including the claim form which can be printed and mailed.

24.     In order for a class member to object to the proposed settlement, he or she must submit a written notice of the objection to the claims administrator postmarked no later than 2 weeks before the Final Fairness Hearing. An objector must also appear in person or through counsel at the Final Fairness Hearing to have the objection considered by the Court. The claims administrator will forward all letters of objection to the Court and to counsel for all parties. The class member must

also submit a claim form if he or she wishes to be eligible to share in the settlement should it be approved despite an objection.

     25.    In order for a class member to opt out of the proposed settlement, he or she must submit a written notice of exclusion to the claims administrator postmarked within 2 weeks of the Final Fairness Hearing. The claims administrator will forward all notices of exclusion to the Court and to counsel for all parties.

### VIX.  CLAIMS APPROVAL, DENIAL AND APPEALS

     26.    Claim forms received by the claims administrator within one week after the claims deadline will be treated as if postmarked by the claims deadline. This one-week grace is the Amnesty Period. Claim forms received after the Amnesty Period will be denied as untimely.

     27.    The claims administrator will review each claim form to determine that the claimant is a class member by confirming (a) that the claim form is timely and valid, (b) that the information on the form is consistent with available booking data previously provided by the defendant, and (c) that the form is completely filled out and signed.

     28.    The claims administrator may, in its discretion, waive a technical defect in a claim form to achieve substantial justice.

     29.    If the booking data indicates that the person does not meet the class definition, the claims administrator will send a Notice of Claim Denial to the claimant. The denial notice will, if possible, indicate the reason or reasons for the denial.

     30.    In order to object to the claims administrator's determination that he or she is not a class member, a claimant must file a written appeal to the claims administrator postmarked no later than 2 weeks after the date of the mailing of the Notice of Claim Denial. The claimant must include

written documentation that shows that he or she is a class member, and may also include a written statement. The claims administrator will make a determination on each appeal no later than one week after the deadline for claimants to file such appeals. The claims administrator will inform the claimant in writing of its determination, and provide copies to all counsel.

31.    A claimant may appeal to the Court the claims administrator's final decision denying a claim. In order to do so, a claimant must write a letter addressed to the claims administrator indicating his or her wish to appeal to the Court within 2 weeks after the date of the mailing of the Notice of Claim Denial Upon Appeal. The claims administrator will present all such appeals, along with supporting documentation, to the Court within 2 weeks of the deadline to file such appeals.

32.    The claims administrator will send a Notice of Claim Approval to each approved claimant promptly but in no event later than 1 week after the Court grants final approval of the settlement.

33.    A claimant who used a different name at booking must present documentation establishing that he or she is the person referred to in the booking records.

## X.    EXPENSES AND ATTORNEY'S FEES

34.    Class counsel will ask the Court to approve payment of plaintiffs' litigation expenses, class action administrative costs (including the claims administrator's fees and expenses) and attorney's fees from the settlement fund. All of these expenses and attorney's fees will be incorporated into a single payment and paid by one check made payable to class counsel.

## XI.    DISTRIBUTION TO CLASS MEMBERS

35.    The named plaintiff Charles V. Ryan IV will receive $10,000, subject to approval of the Court, to be paid from the settlement fund to compensate him for bringing this case, the time he

spent on this case and his loss of privacy as a result of serving as the named plaintiff. Mr. Ryan answered interrogatories and requests for documents and counsel for the defendants took his deposition. This incentive payment is in addition to his share as a class member. This payment will be issued at the same time as the distribution payments to class members.

36.    Class members will receive payment from the settlement fund after deducting attorney's fees, litigation expenses, claims administration costs and incentive payment to the class representative.

37.    The claims administrator will calculate the amount of money due each class member by dividing the number of participating class members into the balance of the settlement fund. Class members will receive one payment each even if they were booked into the jail more than one time during the class period.

38.    The claims administrator will prepare for the Comptroller's Office a settlement distribution list in the form of a spreadsheet which will contain the legal names, current addresses, mailing addresses (if different), and TIN/EINs of the participating class members as well as the amount payable to each class member. The claims administrator will also provide the Comptroller's Office with all of the Substitute W-9 forms submitted by the class members (Page 2 of the claim forms).

39.    Within 60 days of receipt of the distribution spreadsheet from the claims administrator, the Comptroller's Office will directly pay each participating class member. The Comptroller's Office may deduct any outstanding child support obligations and IRS/DOR tax liens from a participating class member's check if that class member owes any such obligations or liens.

40.     Interest will accrue at an annual rate of 4.9% on any payments which are not made within 60 days after the receipt by the Comptroller's Office of the distribution spreadsheet and W-9 forms regardless of the reason for non-payment including inadequate funds in the Settlements and Judgments account due to appropriation issues or otherwise. Interest will only apply to the unpaid portion of the defendants' obligation. Interest, if any, will not be paid by separate check but will be included in the original check issued by the Comptroller's Office.

41.     The Comptroller's Office will be responsible for all tax withholding and reporting.

42.     Each class member's check will be made payable only in his or her name or in the name of a deceased class member's estate. The check will be mailed to the class member at the address indicated on the claim form. Any change of address request must be made in writing and must be signed by the claimant.

43.     If a participating class member is confined in a prison, hospital, or other institution and has provided the address of such institution for payment, the settlement check will be sent to that address unless the class member makes other acceptable arrangements in writing with the claims administrator.

**XII.    POST-DISTRIBUTION ADMINISTRATION**

44.     The Comptroller's Office will prepare all 1099s for class members who were issued a settlement check during the next regular tax-form processing period following the distribution and will prepare all other necessary tax forms relating to the settlement.

45.     Within 60 days of mailing settlement checks to class members, the Commonwealth will provide to the Attorney General's Office a settlement distribution report accounting for the distribution of the settlement fund, including attorney's fees and expenses. This report will be

9

provided to class counsel by the Attorney General's Office. Thereafter, the Attorney General's Office will request quarterly updates from the Commonwealth concerning the status of payments (or checks issued) and balance of the settlement fund remaining uncashed pursuant to this agreement. These updates will be provided to class counsel by the Attorney General's Office.

46.     After one year from the original date on which the last check is issued, the Attorney General's Office will request a Final Report from the Commonwealth accounting for the distribution of the settlement fund, reporting the status of payments (or checks issued) and total amount transferred to the Unpaid Check Fund.

47.     Class members will be informed that all settlement checks must be cashed within sixty days. Within one year of the original date of issue, class counsel may request, through the Attorney General's Office, that the State Treasurer's Office reissue a check to any affected class member.

48.     If checks are returned as undeliverable to the Comptroller's Office, these checks will be forwarded to class counsel who will then attempt to locate the affected class members. The Comptroller's Office will not assume any responsibility for attempting to locate class members for uncashed or undeliverable checks nor will the Commonwealth incur any additional attorney's fees or costs for class counsel's attempt to do so.

49.     If a check is uncashed or unclaimed after one year from the original date of issue, the funds will be moved to the Commonwealth's Unpaid Check Fund. Any affected class member or her legal representative may claim the money by filing an Unpaid Check Fund Claim Form with the State Treasurer.

50.    If any settlement check is not cashed or claimed within three years of the original date of issue, monies for uncashed or unclaimed checks will be moved from the Unpaid Check Fund to the Commonwealth's Abandoned Property Fund. Any affected class member or her legal representative may later claim the money from the State Treasurer pursuant to 960 C.M.R. 4.04 of the Massachusetts Abandoned Property Act.

51.    All funds or monies referred to herein will be transferred in accordance with State Treasury procedures and State finance laws.

## XIII.  DECEASED CLASS MEMBERS

52.    If a class member is deceased, an authorized representative may file a Settlement Claim Form on behalf of the estate. However, the representative must provide to the Claims Administrator documentation that an estate has been established in accordance with the law and that he or she is the duly appointed administrator or executor.

## XIV.  RELEASE AND AGREEMENT TO DEFEND, INDEMNIFY AND HOLD HARMLESS.

53.    In consideration of payment of the settlement fund, the plaintiff class members, including those class members who do not file claims but excluding those class members who request exclusion and file claims within the statute of limitations, hereby remise, release and forever discharge defendants ROBERT J. GARVEY and PATRICK J. CAHILLANE in their individual capacities, the Hampshire Sheriff's Office, the Commonwealth of Massachusetts and all of their present and former agents, servants, officers, employees and insurers from any and all past, present and future claims and liabilities of every name and nature arising out of or in any way related to the incidents, events, allegations or occurrences described in Charles V. Ryan IV, on behalf of himself and on behalf of others similarly situated v. Robert J. Garvey and Patrick J. Cahillane in their individual capacities, United States District Court Civil Action No. 05-30017-MAP.

11

XV.  **EXHIBITS**

54.  The following Exhibits are attached to this Agreement:

Exhibit A    Class Notice to be mailed to class members.
Exhibit B    Claim Form
Exhibit C    Notice to be published in newspapers
Exhibit D    Notice to be posted at Hampshire Jail
Exhibit E    Press Release
Exhibit F    Documents regarding Analytics, Inc., the proposed Claims Administrator

For the plaintiffs and the plaintiff class,

Date: 12/27/06

Howard Friedman
BBO #180080
Myong J. Joun
BBO #645099
Law Offices of Howard Friedman, P.C.
90 Canal Street, Fifth floor
Boston, MA 02114-2022
T (617) 742-4100
F (617) 742-5858
hfriedman@civil-rights-law.com
mjjoun@civil-rights-law.com

For defendants Robert J. Garvey
and Patrick J. Cahillane,
By: Thomas F. Reilly, Attorney General,

Date: 12/20/06

Rosemary Tarantino
BBO #492233
Assistant Attorney General
Western Massachusetts Division
1350 Main Street, 4th Floor
Springfield, MA 01103
T (413)784-1240 Ext. 112
F (413)784-1244
rosemary.tarantino@ago.state.ma.us

Exhibit A

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**
*Ryan v. Garvey, et al., Civil Action No. 05-30017-MAP*

# NOTICE OF CLASS ACTION AND PROPOSED SETTLEMENT

*A Federal Court authorized this notice. This is not from a lawyer.*

## You could get a payment of $1,500 or more from a class action settlement if you meet <u>ALL</u> of the following conditions:

1. **TIME:** You were held at the Hampshire County Jail at any time between January 18, 2002 and November 7, 2002.
2. **TYPE OF CUSTODY:** You were held at Hampshire County Jail after an arrest but before a bail hearing or first court appearance (this includes arrests on default and other warrants) or after a finding of civil contempt of court for failure to pay a judgment, a fine, or child or spousal support.
3. **OFFENSE:** You were not charged with a crime involving drugs or weapons or a violent felony.
4. **SEARCH:** You were strip searched on admission into the Jail.

**Your legal rights are affected if you act or do not act. <u>Please read the complete Notice carefully</u>.**

You are receiving this notice because records show that you <u>may</u> be a class member. To see if you qualify, you must submit a complete Settlement Claim Form, **postmarked by _____, 2007**, to:

<u>Ryan</u> Claims Administrator, P.O. Box _____, Chanhassen, MN 55317-2007

If you submit a claim form and qualify as a class member, you will share in this settlement after deducting attorney's fees, and the costs and expenses for this case. The amount of money you will receive depends on how many people submit claim forms. The money will be divided by the number of claims.

| THESE ARE YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| SUBMIT A CLAIM FORM | This is the only way to get a payment. **Remember: Claim Forms postmarked after _____, 2007 will not be considered for payment.** |
| ASK TO BE EXCLUDED FROM THIS CASE | If you exclude yourself from this class action case, you will not be bound by the Settlement or judgment. You will **not** get a cash payment in this case. You will be free to pursue your claims against the defendants at your own expense. This is the only option that allows you to bring your own lawsuit against the Hampshire Sheriff or his employees for the claims raised in this case. **You must exclude yourself from the Settlement by _____, 2007.** If you exclude yourself, you will not be allowed to rejoin this class action. |
| OBJECT TO THIS SETTLEMENT | If you want to object to the settlement but you do not exclude yourself, you may object by writing to the Claims Administrator explaining why you believe the settlement is not fair, received no later than _____, 2007, or you may appear in Court at the Fairness Hearing on _____, 2007. You must also submit a claim form to preserve your right to receive payment. |
| DO NOTHING | You get <u>no</u> payment. You will still be bound by the settlement and you give up your right to sue the defendants or employees of the county on these claims later. |

**Questions? Visit www.HampshireSheriffClassAction.com.**

### BASIC INFORMATION

## What is this case about?

Plaintiff Charles V. Ryan IV claimed that it was illegal for the Hampshire Sheriff to routinely strip search people when they were admitted into the Hampshire County Jail. He brought this case on behalf of himself and others similarly situated seeking money damages for every person who was strip searched.

## Are all strip searches in a jail illegal?

There are times when jail officers can legally strip search a prisoner. This case does not claim that all strip searches at the Jail were illegal. Plaintiffs claim that the intake searches of people who were held before a first court appearance and those who were held after a finding of civil contempt by a court were illegal. This case does not concern strip searches for cause, after contact visits, or on return from work release or court. The case does not challenge any strip searches of convicted prisoners.

### THE SETTLEMENT BENEFITS
### – WHAT YOU GET AND HOW TO GET IT –

## How much will my payment be?

We do not know the amount of the payments yet. The defendants agreed to pay $205,000 to settle this lawsuit. If you are eligible, you will get a payment for only one strip search. The amount will depend on how many people submit claim forms. The amount per person will decrease as the number of forms submitted increases. We estimate that each participating class member will receive $1,500 or more.

The settlement money will be distributed after payment of attorneys' fees, expenses and an incentive payment. The attorneys who represented the plaintiffs, also called class counsel, will request an attorney's fee of no more than 33% of the settlement fund. Class counsel requests payment of an incentive payment to the class representative Charles V. Ryan IV who brought this case on behalf of all class members in order to compensate him for the time he spent helping to bring about this settlement and for his loss of privacy. The requested incentive payment is $10,000.

## How can I get a payment?

You must fill out the Settlement Claim Form completely and mail it to the Claims Administrator. A Claim Form is included with this notice. You can also obtain a Claim Form from **www.HampshireSheriffClassAction.com. The envelope must be postmarked no later than _____, 2007; if it is not, your claim will be denied.**

The settlement check will be written in your name with your social security number. Your check will be sent to your mailing address. If you move, you must notify the Claims Administrator in writing of your new address or the check will be sent to your old address.

## When will I get my payment?

You cannot be paid until the settlement is approved by the Court and any appeals are over. The Court will hold a hearing on _____, 2007 to decide whether to approve the settlement. Settlement checks will be issued after the Court approves the settlement and all appeals are completed. You may visit the website or contact the Claims Administrator for updates.

## If I owe past child support or tax obligations, will I have to pay them?

Yes. Any amounts for outstanding child support obligations and IRS/DOR tax liens may be deducted from your share of the settlement before a payment is made to you.

## Will I have to pay taxes on my payment?

You may have to pay taxes on your payment. You should consult your tax preparer when you file your tax returns. The Commonwealth of Massachusetts will send you a 1099 Form. (If you have questions about backup withholding, Form W-9 or Form 1099, call your tax preparer or the IRS Information Reporting Program Customer Service Section, toll free at (866) 455-7438, 8:30 a.m. to 4:30 p.m., Monday through Friday.)

## What claims will be released by this Settlement?

This settlement resolves all claims for illegal strip searches. This means that people who could have been a part of this lawsuit cannot ever again sue Hampshire Sheriff Robert J. Garvey or Superintendent Patrick J. Cahillane over the issue of illegal strip searches, unless you chose to opt-out of this lawsuit.

### WHO IS IN THE SETTLEMENT

## What is a Class Action and who are Class Members?

In a class action, one or more people, called Class Representatives (in this case, Charles V. Ryan IV), sue on behalf of all people who have similar claims. All of the people who were similarly treated are known as a Class or Class Members. One court resolves the issues for all Class Members.

## How do I know if I am a Class Member and part of the settlement?

The Court has ruled that you are a Class Member if you meet all four factors below:
1.  You were held at the Hampshire County Jail at any time between January 18, 2002 and November 7, 2002.
2.  You were held at Hampshire County Jail after an arrest but before a bail hearing or first court appearance (this includes arrests on default and other warrants) or after a finding of civil contempt of court for failure to pay a judgment, a fine, or child or spousal support.
3.  You were not charged with a crime involving drugs or weapons or a violent felony.
4.  You were strip searched on admission into the Jail.

NOTE: You are **not** a class member if you were either (1) strip searched while you were serving a sentence or being held for trial, (2) you were strip searched because a correctional officer had an individualized reason to think that you were in possession of contraband, drugs or weapons, or (3) you were arrested for and/or charged with a crime involving drugs, weapons or a violent felony.

## What crimes are considered to be violent felonies?

The following crimes are examples of violent felonies: arson, assault and battery with a dangerous weapon, assault with intent to rob or murder, extortion by threat of injury, home invasion, indecent assault and battery, intimidation of witness, kidnaping, manslaughter, mayhem, murder, rape, and robbery. This is not a complete list; other felony level crimes may be determined to be "violent".

## What if I was arrested for more than one crime?

The most serious charge for an arrest will determine your class membership. If any one of the charges was a crime involving weapons or drugs or was a violent felony, you are not a class member for that arrest. You might be eligible for another arrest that took place on a different date.

## What if I was found not guilty of the crime for which I was arrested?

You are entitled to the same settlement amount whether you were found guilty or not guilty of the crime.

## What if I was arrested on a default warrant for violation of probation or parole?

You are a class member if you were arrested on a default warrant or for violating the terms of probation or parole so long as the crime for which you were on probation or which you were arrested did not involve weapons, or drugs, or a violent felony.

## I was not arrested. I was held on a finding of civil contempt. Am I a Class Member?

Yes, if you also meet all of the other requirements.

## What if I was strip searched more than once at the Jail. Can I still participate?

Yes. If you were arrested and brought to the Jail more than once during the class period you are a member of the class and can recover money. You can only recover one payment, however, and will not be provided with extra payments for being strip searched at the jail more than one time.

## What if I was at the Jail before January 18, 2002 or after November 7, 2002?

The time period for being a class member is based on the legal requirement that a case must be filed within a certain time period; this is called the statute of limitations. The law in Massachusetts only allows a person to bring a claim within three years after his or her rights were violated. Because this case was filed by Charles V. Ryan IV on January 18, 2005, class members include anyone strip searched in the three years before that date. If you were strip searched before January 18, 2002, it may be too late to bring a lawsuit. The time period for the class ends on November 7, 2002, the date when Hampshire County changed its written search policy. If you were strip searched after this date, that search is not a part of this lawsuit; you must file your own lawsuit.

## What if I am still unsure about whether I am part of the Settlement?

If you are still unsure as to whether you are a member of the class, you may fill out and return the Settlement Claim Form. If the settlement is approved, you will be notified if you do not qualify. If you qualify, you will receive a check. You may also visit the settlement website on the Internet at www.HampshireSheriffClassAction.com or call (866) 890-4860 to speak to a Settlement Administrator or Class Counsel to answer your questions.

## What if I am currently incarcerated? Where will you send my payment to?

The Claims Administrator will send your payment to the address you indicate on your claim form, including jails and prisons. However, we recommend that you provide an outside address if possible.

## Who makes the final decision about who qualifies as a Class Member?

The Class Administrator makes the final decision about who qualifies as a Class Member and the Judge will review that decision. The computerized booking records kept by the Hampshire County Jail will determine if you are a class member. You can help by listing the date or dates when you feel you met the class definition. If the records do not show that you fit the class definition, your claim will be denied. You can appeal your denial to the Claims Administrator by sending documentation and information regarding the dates you believe you were held and strip searched. A decision of the Claims Administrator can be appealed to the judge. (If you are not a class member, you are not bound by this settlement. You can take action as an individual if you wish.)

## How did the lawyers in this case find me and how can I protect my privacy?

On admission into the Jail, you gave your name and address during booking. This information was given to the lawyers for the plaintiffs by Hampshire County. The lawyers for the plaintiffs will do everything they can to protect your privacy. Only the lawyers in the case and the court-appointed Claims Administrator will know your name and, in most cases, only the Claims Administrator will see your Claim Form.

## What should I do if I do not want to participate in the Class Action?

If you do not wish to participate in the class action, you can either exclude yourself or do nothing. If you do not send in a claim form, you will not be a participating Class Member and you will <u>not</u> receive a payment. You will also be barred from filing a case on these claims in the future.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

## If I exclude myself, can I get money from this settlement?

No, you will not get a payment from this settlement. You will not be legally bound by the settlement. You can bring your own lawsuit. Class counsel will not represent you in pursuing your claims. If you exclude yourself, do not send in a Claim Form. Because you will no longer be part of the case, you cannot object to the settlement if you ask to be excluded. A request to be excluded means you have opted out of this case.

## How do I get out of this settlement?

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from Ryan v. Garvey, et al. Be sure to include your name, address, telephone number and sign the letter. You must mail your exclusion request postmarked no later than _____, 2007, to the Claims Administrator at Ryan Claims Administrator, P.O. Box _____, Chanhassen, MN 55317-2007. The Claims Administrator will file your notice with the court and counsel. You cannot exclude yourself by phone or by e-mail.

## If I do not exclude myself, can I sue the Hampshire County Sheriff for the same thing later?

No. Unless you exclude yourself, you give up the right to sue the Hampshire County Sheriff or his employees for the claims that this settlement resolves. Remember, the exclusion deadline is _____, 2007.

### OBJECTING TO THE SETTLEMENT

## What if I think the proposed settlement is not fair? What can I do?

If you wish to object to the proposed settlement, you or a lawyer on your behalf must either state your objections to the Court in a letter sent to the Claims Administrator, received no later than _____, 2007, or appear in the U.S. District Court of Massachusetts, 1550 Main Street, Springfield, MA on _____, 2007 to present your objections. If you write, the Claims Administrator will forward your objection to the Court and to the lawyers.

You may object to the proposed settlement and still be eligible to receive a payment. ***You must submit a valid Settlement Claim Form by the _____, 2007 deadline even if you object to the settlement, if you wish to claim money should the settlement be approved.***

### THE COURT'S FAIRNESS HEARING

## What is a Fairness Hearing?

The Court will hold a hearing to decide whether to approve the settlement. The Court will consider whether the settlement is fair, reasonable and adequate. The Court will also decide whether to approve the request for attorney's fees, costs, expenses and the bonuses to class representatives and class members who were deposed. If the Court approves the proposed settlement, it will affect all class members.

## When and where is the hearing?

The Hearing will be at _____:00 ____.m. on _____day, _____, 2007 in the U.S. District Court of Massachusetts, 1550 Main Street, Springfield, MA.

## Do I have to come to the hearing? May I or my lawyer speak at the hearing?

No, you are not required to attend the hearing. Class counsel will answer any questions the Court may have. You are welcome to come at your own expense. If you object to the settlement and you want to explain the objection to the Court, you can attend the hearing or hire your own lawyer to attend for you.

### THE LAWYERS IN THIS CASE

## Who are the lawyers in this case?

The lawyers for the Plaintiff Charles V. Ryan IV and the class are Howard Friedman and Myong J. Joun, Law Offices of Howard Friedman P.C., 90 Canal Street, 5th Floor, Boston, Massachusetts 02114.

Defendants Hampshire Sheriff Robert J. Garvey and Superintendent Patrick J. Cahillane are represented by Attorney General Thomas F. Reilly and Assistant Attorney General Rosemary Tarantino, Western Massachusetts Division, 1350 Main Street, 4th Floor, Springfield, MA 01103.

## How will the plaintiffs' lawyers be paid?

The lawyers for the plaintiffs will request that the Court award an attorney's fee of no more than 33% of the settlement fund. In addition to the fee, they will seek reimbursement from the settlement fund for expenses of litigation and claims administration.

### OTHER INFORMATION

If you wish to view the Court file or a copy of the proposed settlement agreement, you may go to the Clerk of the U.S. District Court of Massachusetts, 1550 Main Street, Springfield, MA during regular business hours. You can also view the settlement papers on the web at www.yorkcountyjailclass.com.

To obtain more information about the settlement, write to the Claims Administrator at Ryan Claims Administrator, P.O. Box ____, Chanhassen, MN 55317-2007; or visit the website at www.HampshireSheriffClassAction.com.

**IMPORTANT:** Please do not call the Court directly with questions about this lawsuit or the settlement. All questions regarding this lawsuit or the settlement should be addressed to the Claims Administrator.

Exhibit B

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHARLES RYAN, et al,<br>Plaintiffs | ) ) ) | Civil Action No. 05-30017-MAP |
| v. | ) ) | CLAIM FORM |
| ROBERT J. GARVEY, et al.,<br>Defendants | ) ) ) ) | **Must be postmarked by** _____ |

*Late claims will be denied. You must complete and mail this Claim Form, postmarked by _____, to:*

Ryan Claims Administrator
PO Box _____
Chanhassen, MN 55317-2007

*Please see below to learn how to file for a deceased class member.*

**Step One—Provide your basic information.** Please note that it is your responsibility to notify the Claims Administrator in writing at the above address if the address you provide changes.

First Name: _____ Middle Initial: _____ Last Name: _____

Address: _____ City: _____ State: _____ Zip Code: _____

Home Phone: ( ) _____ Work Phone: ( ) _____ Cell Phone: ( ) _____

Email: _____ SSN: _____ - _____ - _____ Date of Birth: _____ / _____ / _____

<u>Provide the following information about someone who will always know how to contact you.</u>

Name: _____ Relation to you: _____

Address: _____ City: _____ State: _____ Zip Code: _____

Home Phone: ( ) _____ Work Phone: ( ) _____ Cell Phone: ( ) _____

**To File for a Deceased Class Member:**
To submit a Claim Form on behalf of a deceased class member, in **Step One**, give the class member's name and your contact information; in **Step Four**, sign your own name and note your relationship to the class member. To receive a settlement check for a deceased class member, you must be appointed administrator or executor of the class member's estate and you must send documentation of your appointment to the Claims Administrator by _____, or the claim will be denied. You may need to consult an attorney or probate court for more information on this process.

<u>**Please check one box to indicate how your check should be handled if your claim is approved:**</u>

| ❏ **Mail the check to my address above.** | ❏ **Hold the check for me to pick up in person.** | ❏ **Mail the check to this address:** |
|---|---|---|
| *If you do not select any of these options, the check will be sent to your address.* | *If you select this option, a letter to the address you entered for yourself above will inform you of when and where to pick up the check. You will need to provide a reliable photo ID when you pick up your check.* | Address: _____<br>_____<br>City: _____<br>State: _____ Zip Code: _____ |

*-Continued on Back-*

**Step Two—Please answer the following questions truthfully.** If you do not select Yes or No, then the form will be treated as if you selected No.

**(1)**    I was strip searched at the Hampshire County Jail between **January 18, 2002,** and **November 7, 2002,** while waiting for bail to be set or for a first court appearance after I was arrested on charges that did not involve a weapon or drugs or a violent felony; or while waiting for a first court appearance after being arrested on a default or other warrant on charges that did not involve a weapon or drugs or a violent felony; or while held after a finding of civil contempt of court for failure to pay child or spousal support, a judgment, or a fine**.**

❏ **Yes**    ❏ **No**

**(2)**    It will help us if you can list the date or dates when the above happened to you if you feel you fit the class definition. (This is optional. Answer to the best of your ability.):

_____    _____

_____    _____

_____

**Step Three—Substitute W-9 Request for Taxpayer Identification Number.** This should be your Social Security Number, unless you have been given a different number by the IRS for this purpose)

| | | | - | | | - | | | | |
|---|---|---|---|---|---|---|---|---|---|---|

*(9 digits)*

The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the IRS that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding.

If you have been notified by the IRS that you are subject to backup withholding, you must cross out the word "not" and check here    ❏   .

**Step Four—Please sign under penalty of perjury that all of the information you provided in this form is true and accurate to the best of your knowledge and belief.** It is important that your answers are truthful. If you sign this and you know that the statement is not true, you can be charged with  perjury pursuant to 18 USCA § 1621, 28 U.S.C. § 1746.

Under penalty of perjury, I certify that all of the information provided on this form is true and correct:

_____    _____
(Signature)                                                                                            (Date)

**Step Five—Mail this form, postmarked by ▮▮▮▮▮▮▮▮▮▮▮▮.**

Mail this form to:        Ryan Claims Administrator            *This form must be postmarked by _____,*
                          PO Box _____                       *or your claim will be denied.*
                          Chanhassen, MN 55317-2007

The Claims Administrator will send notice to indicate that your claim form was received.  You should keep a copy of this form as your receipt. If you move, notify the Claims Administrator in writing so that your check will be sent to the correct address.

Exhibit C

# Hampshire County Jail
# Class Action Settlement

Ryan v. Garvey, et al., U.S. District Court of Massachusetts, C.A. No. 05-30017-MAP

*A federal court authorized this notice. This is not an advertisement from a lawyer.*

**You could get a payment of $1,500 or more from a class action settlement** if you meet **ALL** of the following conditions:

♦ **You were held at the Hampshire County Jail from January 18, 2002 to November 7, 2002.**

♦ **You were held at Hampshire County Jail after an arrest but before a bail hearing or first court appearance (this includes arrests on default and other warrants) or after a finding of civil contempt of court for failure to pay child or spousal support, a judgment, or a fine.**

♦ **You were not charged with a crime involving drugs or weapons or a violent felony.**

♦ **You were strip searched.**

To see if you qualify, you must submit a complete Settlement Claim Form, **postmarked by _____.** You may obtain the Form by writing to: Ryan Claims Administrator, P.O. Box _____, Chanhassen, MN 55317-2007 or downloading the form at **www.hampshirecountyjailclassaction.com.**

# Exhibit D

# Hampshire County Jail Class Action Settlement

*A federal court authorized this notice.*

# You could get a payment of $1,500 or more from a class action settlement if you meet <u>ALL</u> of the following conditions:

1. **You were held at the Hampshire County Jail from January 18, 2002 to November 7, 2002.**

2. **You were held at Hampshire County Jail after an arrest but before a bail hearing or first court appearance (this includes arrests on default and other warrants) or after a finding of civil contempt of court for failure to pay child or spousal support, a judgment, or a fine.**

3. **You were not charged with a crime involving drugs or weapons or a violent felony.**

4. **You were strip searched.**

To see if you qualify, you must submit a completed Settlement Claim Form, postmarked by _____. You may obtain the Form by asking an officer at the Hampshire County Jail or by writing to: <u>Ryan</u> Claims Administrator, P.O. Box _____, Chanhassen, MN 55317-2007.

Exhibit E

# PRESS RELEASE

Date:

Contacts:      Attorney Howard Friedman (617) 742-4100 (Plaintiffs' lawyer)
               Attorney Rosemary Tarantino (413) 784-1240 (Hampshire Sheriff's lawyer)

### Court grants preliminary approval to strip search settlement

Springfield, MA—      Today, U.S. District Court Michael A. Ponsor granted preliminary approval to the settlement of a class action on behalf of people who alleged that they were illegally strip searched at the Hampshire County Jail after their arrest or after a finding of civil contempt. The Hampshire Sheriff has agreed to pay $205,000 dollars to settle the case. It is estimated that each participating class member will receive $1,500 or more.

As a result of this ruling, the claims administrator will send notice of the settlement and a claim form to class members. The Court has scheduled a final hearing on the fairness of the settlement to take place on _____. If the Court grants final approval, money will be sent to those class members who submit claim forms.

The amount of money class members will receive depends on how many people submit claim forms. The money will be divided by the number of claims.  The settlement fund will also pay for attorney's fees and the costs of the case and claims administration.

A person is a class member if he or she was arrested only for crimes that did not involve drugs, or weapons, or violent felonies, and was strip searched at the Hampshire County Jail before his or her first court appearance, between January 18, 2002 and November 7, 2002. A person who was strip searched during that time period while being held after a finding of civil contempt of court is also a class member. Class members will need to submit a claim form by _____, in order to obtain a share of the settlement. A copy of the claim form may be obtained from www.hampshiresheriffclassaction.com or by writing to Ryan Claims Administrator, P.O. Box _____, Chanhassen, MN 55317-2007.

The case is Ryan v. Garvey, et al., Civil Action Number 05-30017-MAP.

# Exhibit F

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHARLES V. RYAN IV, on behalf of himself and on behalf of others similarly situated, | ) ) ) | |
| | ) | |
| v. | ) ) | Civil Action No. 05-30017-MAP |
| | ) | |
| ROBERT J. GARVEY, and PATRICK J. CAHILLANE in their individual capacities, | ) ) | |

## AFFIDAVIT OF RICHARD W. SIMMONS

I, Richard W. Simmons, declare as follows:

1.     I am over the age of 21 and reside in the state of Minnesota.  I make this declaration based on personal knowledge and am competent to testify regarding the following facts.

2.     I am the President of Analytics, Incorporated ("Analytics").  As such, I am responsible for Analytics' class action consulting practice, including the dissemination of class notices, claims processing, and the distribution of settlement funds.

3.     Analytics is the oldest class action settlement administration firm in the country, having administered settlements for over 30 years.  These engagements have included civil rights (strip-search), securities, consumer fraud, racial and sexual discrimination, and antitrust settlements.

4.     Analytics clients include law firms, Fortune 500 companies, and the Federal Government.  Analytics has a ten-year contract with the Federal Trade Commission to administer, and to provide expert advice regarding, their settlements.

5.     Analytics' engagements have run from less than 100 to over 40 million class members.  Analytics administered the largest mailed notice campaign in U.S. history, the RAL Litigation (No. 98 C 2178, N. D. Illinois), where over 17.5 million claim forms were mailed in under three weeks, and has administered some of the largest and most complex litigation cases nationwide.  We have administered large, complex settlements involving more than 100,000

claimants.  A partial list of Analytics' class action administration experience is attached as
Exhibit A.

6.      Each member of the senior management team proposed to oversee Analytics
administration of this settlement has more than 15 years of direct experience administering class
action settlements.  The senior staff that Analytics' proposes be assigned to this engagement
include those responsible for the administration of this settlement have direct experience in the
administration of class action settlements regarding strip-searches.


I declare under penalty of perjury that the foregoing
Is true and correct this 29th day of December 2006.


Richard W. Simmons

## Exhibit A

## Analytics, Incorporated

Partial List of
Class Action Notification and Settlement Administration Experience

*Alan Freberg, et al. v. Merrill Corporation, et al.*
No. 99-010063  (Minn 4th Jud Dist)

*American Golf Schools, LLC, et al. v. EFS National Bank, et al.*
CT-005208-00 Div. 3 (Tenn 13th Jud. Dist)

*Anderson v. Investors Diversified Services*
Civ. 4-79-266 (D. Minn)

*Andrew J. Hudak, et al. v. United Companies Lending Corporation*
Case No.  334659 (Cuyahoga County, Ohio)

*Angela Doss, et al. v. Glenn Daniels Corporation*
No. 02 C 0787 (E. Dist. IL)

*Ann Castello v. Allianz Life Insurance Company*
No. 03-20405 (Minn 4th Jud Dist)

*Anthony Talalai, et al. v. Cooper Tire & Rubber Company*
L-008830-00-MT (Middlesex County, NJ)

*AVR, Inc. and Amidon Graphics v. Churchill Truck Lines*
Civ. 4-95-401 (Minn 4th Jud Dist)

*Ballard, et al. v. A A Check Cashiers, Inc., et al.*
Civ. 2001-351 (Washingotn County, AR)

*Belinda Peterson, et al. v. H & R Block Tax Services, Inc.*
No. 95 CH 2389 (Cook County, IL)

*Bernice Samples, et al. v. Conoco, Inc., et al.*
Case No.: 01-0631-CA-01 (Escambia Country, FL)

*Boyd Demmer, et al. v. Illinois Farmers Insurance Company*
No. MC 00-017872 (Hennepin County, MN)

*Chandler Glover and Dean Albrecht, et al., v. John E. Potter*
EEOC No. 320-A2-8011X; Agency No. CC-801-0015-99

*Christopher Carmona, et al. v. Henry I. Bryant, et al. (Albertson's Securities Litigation)*
No. CV OC 0601251 (Ada County, ID)

*Claudine Wilfong, et al. v. Rent-A-Center, Inc.*
Case No. 00-680-DRH (S. Dist. IL)

*Cummins, et al. v. H&R Block, et al.*
No. 03-C-134 (Kanawha County, WV)

# Exhibit A

## Analytics, Incorporated

Partial List of
Class Action Notification and Settlement Administration Experience

*Daryl L. Cooper, et al. v. Miller Johnson Steichen Kinnard, Inc.*
No.02-CV-1236 RHK/AJB (D. Minn)

*David Andino, et al. v. The Psychological Corporation, et al.*
No. A457725 (Clark County, NV)

*Don C. Lundell, et al. v. Dell, Inc.*
No. 05-03970 (N. D. CA)

*Duffy v. Security Pacific Autmotive Financial Services Corp., et al.*
Civ. 53-729 IEG (BTM) (S.D.C.)

*Edith Gottlieb v. Xcel Energy, Inc., et al.*
Civ No. 02-2931 (D. Minn)

*Edward Hawley, et al. v. American Pioneer Title Insurance Company*
No. CA CE 03-016234 (Broward County, FL)

*Family Medicine Specialsts, et al. v. Abatix Corp., et al.*
No. 3:04 CV 872B (N.D. TX)

*Federal Trade Commission v. 1st Beneficial Credit Services LLC*
No. 02-CV-1591 (N.D. Ohio)

*Federal Trade Commission v. Affordable Media LLC*
No. 98-16378 (9th Cir.); No. CV-S-98-669-LDG(RLH) (D. Nev.)

*Federal Trade Commission v. AmeraPress, Inc.*
(N. Dist. TX, Fort Worth Div.)

*Federal Trade Commission v. American International Travel Services Inc.*
No. 99-6943 (S.D. Fla.)

*Federal Trade Commission v. Bigsmart.com, L.L.C., et al.*
CIV 01-466-PHX-RCB (D. Az)

*Federal Trade Commission v. Cella*
No. CV-03-3202 GAF (SHSx)

*Federal Trade Commission v. Certified Merchant Services, Ltd., et al.*
No. 4:02cv44 (E.D. Texas)

*Federal Trade Commission v. Chierico et al.*
No. 96-1754-CIV- (S.D. Fla.)

*Federal Trade Commission v. Christopher Enterprises, Inc.*
Civ No.  2:01 CV-0505ST (D. UT, C. Div.)

**Exhibit A**

**Analytics, Incorporated**

Partial List of
Class Action Notification and Settlement Administration Experience

*Federal Trade Commission v. Clickformail.com, Inc.*
No. 03C-3033 (N.D. Ill.)

*Federal Trade Commission v. Consumer Credit Services*
No. 96 CIV 1990 (S.D.N.Y.)

*Federal Trade Commission v. Discovery Rental, Inc.*
Civ No: 1057-ORL-19B (M.D. of FL)

*Federal Trade Commission v. Enforma Natural Products, Inc.*
No. 00-04376 JSL (CWx) (C.D. Cal.)

*Federal Trade Commission v. Eureka Solutions*
Civ No. 97-1280 (W. Dist. PA)

*Federal Trade Commission v. Federal Data Services*
Case No. 00-6462-CIV-Ferguson

*Federal Trade Commission v. First Alliance Mortgage Co.*
Civ No. 00-964

*Federal Trade Commission v. First Capitol Consumer Membership Services Inc., et al.*
Civ No. 1:00cv00905 (W.D.N.Y.)

*Federal Trade Commission v. Franklin Credit Services, Inc.*
Civ. No. 98-7375-CIV-GOLD (S.D. Fla.)

*Federal Trade Commission v. Granite Mortgage, LLC*
No. 99-289 (E.D. Ky.)

*Federal Trade Commission v. ICR Services, Inc.*
No. 03C 5532 (N.D. Ill.)

*Federal Trade Commission v. iMall, Inc. et al.*
Civ No. 99-03650 (C.D. Cal.)

*Federal Trade Commission v. Ira Smolev, et al.*
Civ No.  01-8922 CIV-ZLOCH (S.D. FL.)

*Federal Trade Commission v. Jewelway International, Inc.*
CV-97-383 TUC JMR (D. Arizona)

*Federal Trade Commission v. LAP Financial Services, Inc.*
No. 3:99 CV-496-H (W.D. Ky.)

*Federal Trade Commission v. Marketing & Vending, Inc. Concepts, L.L.C., et al.*
Civ No. 00-1131 (S.D.N.Y.)

**Exhibit A**

**Analytics, Incorporated**

Partial List of
Class Action Notification and Settlement Administration Experience

*Federal Trade Commission v. Mercantile Mortgage*
Civ No. 02C-5078 (N. Dist of IL. E. Div.)

*Federal Trade Commission v. Meridian Capital Management*
Civ No. CV-S-96-63 PMP (D. Nev.)

*Federal Trade Commission v. Minuteman Press Int'l*
No. CV 93 2496 (E.D.N.Y.)

*Federal Trade Commission v. National Credit Management Group*
No. 98-6043 (3d Cir.); Civ. No. 98-936 (D.N.J.)

*Federal Trade Commission v. National Supply & Data Distribution Services*
Civ No.  99-128-28 HLH (Central Dist. of CA.)

*Federal Trade Commission v. Nationwide Information Services, Inc.*
Civ No. CV-00-06505 TJH

*Federal Trade Commission v. Pace Corporation*
Civ No. 94C 3625 (N.D. IL.)

*Federal Trade Commission v. Paradise Palms Vacation Club*
Civ No. 81-1160D (W.D. Wash.)

*Federal Trade Commission v. Raymond Urso*
No. 97-2680-CIV-Ungaro-Benages (S.Dist FL)

*Federal Trade Commission v. Robert S. Dolgin*
No-CIV-97-0833 (MHP) (D. N. CA)

*Federal Trade Commission v. Southern Maintenance Supplies*
No. 99 Civ 0975 (N.D. Ill.)

*Federal Trade Commission v. Star Publishing Group, Inc.*
No. 00 CV 023D (D. Wy.)

*Federal Trade Commission v. Stuffingforcash.com Corp.*
No. 02 C 5022 (N.D. IL)

*Federal Trade Commission v. Success Masters International*
Civ No. 02-04566 LGB

*Federal Trade Commission v. Target Vending Systems, L.L.C., et al.*
Civ No. 00-0955 (S.D.N.Y.)

*Federal Trade Commission v. The Crescent Publishing Group, Inc., et al.*
Civ Action No. 00-6315 (LAK) (S D.N.Y.)

## Exhibit A

## Analytics, Incorporated

Partial List of
Class Action Notification and Settlement Administration Experience

*Federal Trade Commission v. Think Achievement Corp.*
Civ. No. 2:98 CV12 JM (N.D. Ind.)

*Federal Trade Commission v. United Fitness of America, LLC*
CV-S-02-0648-KJD-LRL (D. Nevada)

*Federal Trade Commission v. Wellquest International, Inc.*
(W. D CA)

*Federal Trade Commission v. Wolf Group*
No. 94-8119 CIV-Ferguson (S. Dist FL, West Palm Beach Div.)

*Fernando N. Lopez and Mallory Lopez, et al. v. City Of Weston*
Case No. 99-8958  CACE 07 (FL 17th Jud Dist)

*FMS, Inc. v. Dell, Inc. et al.,*
No. 03-2-23781-7SEA (King County, WA)

*Frank Rose, et al. v. United Equitable Insurance Company, et al.*
CV-00-02248 (Cass County, ND)

*Frankie Kurvers, et al. v. National Computer Systems*
No. MC00-11010 (Hennepin County, Minn)

*FTC and The People of the State of New York v. UrbanQ*
(E. D. New York)

*Galatis, et al. v. Psak, Graziano Piasecki & Whitelaw, et. al.*
No.  L-005900-04 (Middlesex County, NJ)

*Garrison, et al., v. Auto-Owners Insurance Company*
Case No. 02CV324076 (Cole County, MO)

*Greg Benney, et al. v. Sprint International Communications Corp. et al.*
No. 02CV-1422 (Wyandotte County, KS)

*Gregory Hernandez v. The Children's Place*
No. CGC 04-4300989 (San Francisco, CA)

*Harold Hanson, et al. v. Acceleration Life Insurance Company, et al.*
3:97cv152 (D. ND S.E. Div)

*Harris, et al. v. Roto-Rooter Services Company*
No. 00-L-525 (Madison County, IL)

*Harrison, et al. v. Pacific Bay Properties*
No. BC285320 (Los Angeles County, CA)

## Exhibit A

## Analytics, Incorporated

Partial List of
Class Action Notification and Settlement Administration Experience

*In re Broadwing Inc ERISA Litigation*
No. 02-00857 (S.D. OH)

*In re E.W. Blanch Holdings, Inc. Securities Litigation*
Civ. No. 01-258 (JNE/JGL) (D. Minn)

*In Re High Sulfur Content Gasoline Products Liability Litigation*
MDL 1632

*In Re McCleodUSA Incorporated Securities Litigation*
No. 02-0001 (N.D. IA)

*In re Raytheon Company Securities Litigation*
Civ No. 99-12142 (D. MA)

*In Re Tellium Inc Securities Litigation*
02-CV-5878  (D. NJ)

*In Re VistaCare, Inc. Securities Litigation*
04 1661 (A. AZ)

*In Re: Aluminum Phosphide Antitrust Litigation*
93-2452 (D. KS.)

*In Re: American Adjustable Rate Term Trust Securities Litigation*
CIVIL FILE NOS. 4-95-666 and 4-95-667 (D. Minn, 4th Div)

*In Re: Ancor Communications, Inc Securities Litigation*
97-CV-1696 ADM/JGL (D. Minn)

*In re: Asia Pulp & Paper Securities Litigation*
No. 01-CV-7351 (S.D. NY)

*In Re: Bancomer Transfer Services Mexico Money Transfer Litigation*
BC238061, BC239611(Los Angeles County, CA)

*In Re: Beef Antitrust Litigation*
MDL No. 248 (N. Dist TX Dallas Div)

*In Re: Bioplasty Securities Litigation*
4-91-689 (D. Minn 4th Div)

*In Re: Bromine Antitrust Litigation*
MDL No. 1310 (S. Dist IN)

*In Re: Citi-Equity Group, Inc. Securities Litigation*
MC 94-012194 (D. Minn, 3rd Div)

**Exhibit A**

**Analytics, Incorporated**

Partial List of
Class Action Notification and Settlement Administration Experience

*In Re: Citi-Equity Group, Inc., Limited Partnerships Securities Litigation*
MDL Docket No. 1082 (Central D. Cal)

*In Re: Control Data Corporation Securities Litigation*
Civ. 3-85-1341 (D. Minn, 3rd Div)

*In Re: Cray Research Securities Litigation*
Civ. 3-89-508 (D. Minn, 3rd Div)

*In Re: Duluth Superior Chemical Spill Litigation*
92-C-503-C (W. Dist. WI)

*In Re: Encore Computer Corporation Shareholder Litigation*
No. 16044 (New Castle County, DE)

*In Re: Flight Transportation*
MDL 517 (D. Minn)

*In Re: Hennepin County 1986 Recycling Bond Litigation*
CT-92-22272 (Minn 4th Jud Dist)

*In Re: High Carbon Concrete Litigation*
No. 97-20657 (Minn 4th Jud Dist)

*In Re: Industrial Silicon Antitrust Litigation*
95-2104 (W. Dist. PA)

*In Re: Lutheran Brotherhood Variable Insurance Products Co. Sales Practices Litigation*
No. 99-MD-1309 (PAM/JGL) (D. Minn)

*In re: McKesson HBOC, Inc. Securities Litigation*
No. 99-CV-20743 (N. D. CA)

*In Re: Micro Component Technology, Inc. Securities Litigation*
4-94-346 (D. Minn)

*In Re: Ria Telecommunications and Afex Mexico Money Transfer Litigation*
CV 990759 (San Louis Obispo, CA)

*In Re: Salmonella Litigation*
PI 94-016304 (Minn 4th Jud Dist)

*In Re: Scimed Life Systems, Inc. Shareholders Litigation*
MC-94-17640 (D. Minn)

*In Re: SS&C Technologies, Inc. Shareholders Litigation*
Case 1525-N (Deleware)

**Exhibit A**

**Analytics, Incorporated**

Partial List of
Class Action Notification and Settlement Administration Experience

*In Re: Tonka Corporation Securities Litigation*
Civ. 4-90-2  (D. Minn, 4th Div)

*In Re: Tonka II Securities Litigation*
Civ. 3-90-318 (D. Minn, 3rd Div).

*In Re: Tricord Systems, Inc. Securities Litigation*
3-94-746 (D. Minn 3rd Div.)

*In Re: U.S. Bank National Association Litigation*
Civ 99-891

*In Re: Williams Securities Litigation*
Case No. 02-CV-72-SPF-FHM (N. D. OK)

*In Re: Workers Compensation Insurance Antitrust Litigation*
Civ. 4-85-1166 (D. Minn, 4th Div)

*In re: Xcel Energy, Inc. ERISA Litigation*
Civ No. 03-2218 (D. Minn)

*In re: Xcel Energy, Inc. Securities Litigation*
Civ No. 02-2677 (D. Minn)

*Irene Milkman, et al. v. American Travellers Life Insurance Company, et al.*
No. 03775 (Philadelphia Court of Common Pleas)

*Ivy Shipp, et al. v. Nationsbank Corp.*
19,002 (TX 12th Jud Dist)

*Jacobs v. State Farm General Insurance Company*
No. CJ-96-406 (Sequoyah County, OK)

*James M. Wallace, III, et al. v. American Agrisurance, Inc., et al.*
LR-C-99-669 (E. D. AR)

*James Ralston, et al. v. Chrysler Credit Corporation, et al.*
No. 90-3433 (Lucas County, Ohio)

*Janet Figueroa, et al. v. Fidelity National Title*
No. 04-08980-CA-01 (Miami Dade County, FL)

*Jerome H. Schlink v. Edina Realty Title*
No. 02-18380 (Minn 4th Jud Dist)

*Joel E. Zawikowski, et al. v. Beneficial National Bank, et al.*
No. 98 C 2178 (N. Dist. IL)

## Exhibit A

## Analytics, Incorporated

Partial List of
Class Action Notification and Settlement Administration Experience

*John Babb, et al. v. Wilsonart International, Inc.*
CT-001818-04 (Memphis, TN)

*Karl E. Brogen and Paul R. Havig, et al. v. Carl Pohlad, et al.*
Civ. 3-93-714 (D. Minn, 3rd Div.)

*Kelly Marie Camp, et al. v. The Progressive Corporation, et al.*
No. 01-2680 (E. D. La)

*Kenneth Toner, et al. v. Cadet Manufacturing Company*
No. 98-2-10876-2SEA (King County, WA)

*Kiefer, et al. v. Ceridian Corporation, et al.*
No. 3-95-818 (D. Minn)

*Lori Miller, et al. v. Titan Value Equities Group Inc., et al.*
MC94-106432 (D. Minn.)

*Louis Thula, et al. v. Lawyers Title Insurance Corporation*
No. 0405324-11 (Broward County, FL)

*Lynnette Lijewski, et al. v. Regional Transit Board, et al.*
4-93-Civ-1108 (D. Minn, 4th Div.)

*Mark Laughman, et al. v. Wells Fargo Leasing Corp. et al.*
No. 96 C 0925 (N. Dist. IL)

*Mark R. Lund v. Universal Title Company*
No. 05-00411 (Minn 4th Jud Dist)

*McCain, et al. v. Bloomberg, et al.*
No. 41023/83 (New York)

*Melissa Castille Dodge, et al. v. Phillips College of New Orleans, Inc., et al.*
No. 95-2302 (E. Dist. LA)

*Michael Drogin, et al. v. General Electric Capital Auto Financial Services, Inc.*
Index No. 95/112141 (S.C. NY, County of New York)

*Michael Stoner, et al. v. CBA Information Services*
Civ. 04-CV-519 (E. Dist. PA)

*Michael Sutton v. DCH Auto Group, et al.*
(Essex County, NJ)

*Michael T. McNellis, et al. v. Pioneer Life Insurance Company, et al.*
CV 990759 (County of San Luis Obispo, CA)

## Exhibit A

## Analytics, Incorporated

Partial List of
Class Action Notification and Settlement Administration Experience

*Michael T. Pierce et al. v. General Electric Capital Auto Lease*
CV 93-0529101 S

*Michelle Jackson, et al. v. Jamba Juice Company*
CV 01- SA02-381 DOC (MLGx) (C. D. CA)

*Morris v. Liberty Mutual Fire Insurance Company*
CJ-03-714 (Pottawatomie County, OK)

*Nilsen v. York County*
Civ No. 02-212-PH  (D. Maine)

*Patricia Faircloth, et a. v. Certified Finance, Inc., et al.*
No: 99-3097 (E. D. La)

*Quince Rankin v. Charles C. Conway (Kmart ERISA Litigation)*
No. 02-71045 (ED. MI)

*Rawlis Leslie, et al. v. The St. Joe Paper Company*
No. 03-368CA (Gulf County, FL)

*Raymond Arent, et al. v. State Farm Mutual Insurance Company*
No. MC 00-16521 (Minn 4th Jud Dist)

*Red Eagle Resources Corporation, Inc., et al. v. Baker Hughes Inc., et al.*
Civ. H-91-627 (S.D. Tx, Houston Div)

*Regayla Loveless, et al. v. National Cash, Inc, et al.*
CIV 2001-892-2 (Benton County, AR)

*Resendes, et al.; Maher, et al.; Hawkins, et al.; Schooley, et al. v. Thorp, et al.*
84-03457, 84-11251, 85-6074, 86-1916L (Minn 4th Jud Dist)

*Rob'n I, Inc., et al. v. Uniform Code Coundel, Inc.*
Civil Action No. 03-203796-1 (Spokane County, WA)

*Robert Trimble, et al. v. Holmes Harbor Sewer District, et al.*
No. 01-2-00751-8 (Island County, WA)

*Rocher, et al. v. Sav-on Drugs, et al.*
Case No. BC 227551 (Los Angeles County, CA)

*Ronnie Haese, et al. v. H&R Block, et al.*
No. CV-96-423 (Kleberg County, TX)

*Roy Whitworth, et al. v. Nationwide Mutual Insurance Company, et al.*
No. 00CVH-08-6980 (Franklin County, OH)

## Exhibit A

## Analytics, Incorporated

Partial List of
Class Action Notification and Settlement Administration Experience

*Sarah F. Hall d/b/a Travel Specialist, et al. v. United Airlines, Inc., et al.,*
No. 7:00-CV-123-BR(1) (E. Dist SC)

*Shepherd, et al. v. Volvo Finance North America, Inc., et al.*
Civ. 1-93-CV-971 MHS (D. GA, Atlanta Div)

*Sonia Gonzalez, et al. v. Rooms to Go, Inc., et al.*
97-3146-CIV-GRAHAM (S.D. FL, Miami Div.)

*Svenningsen, et al. v. Piper Jaffray & Hopwood, et al.*
Civ. 3-85-921 (D. Minn, 3rd Div)

*Theresa Boschee v. Burnet Title, Inc.*
No. 03-016986 (Minn 4th Jud Dist)

*Thomas Losgar, et al. v. Freehold Chevrolet, Inc., et al.*
L-3145-02 (Monmouth County, NJ)

*Three Bridges Investment Group, et al. v. Honeywell, et al.*
Civ. 88-22302 (D. Minn, 4th Div.)

*Todd Tompkins, Doug Daug and Timothy Nelson v. BASF Corporation, et al.*
Civ 96-59 ( NEC D. N.D.)

*Tom Lundberg, et al. v. Sprint Corporation, et al.*
No. 02CV-4551 (Wyandotte County, KS)

*Travis Brecher, et al. v. St. Croix County, Wisconsin, et al.*
Case No. 02-C-0450-C (W.D. WI)

*Truc-way, Inc., et al. v. General Electric Credit Auto Leasing*
92 CH 08962 (Cook County IL)

*Trudy Latman, et al. vs. Costa Cruise Lines, N.V., et al*
Case No. 18139 CA 03

*Vicente Arriaga, et al. v. Columbia Mortgage & Funding Corp, et al.*
No. 01 C 2509 (N. Dist. IL)

*William R. Richardson, et al., v. Credit Depot Corporation of Ohio, et al.*
No. 315343 (Cuyahoga County, Ohio)

*William Steiner, et al. v. Honeywell, Inc. et al.*
Civ. 4-88-1102 (D. Minn)

*Williams, et al. v. Dollar Financial Group, et al.*
Case No. RG03099375 (Alameda County, CA)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

CHARLES V. RYAN IV, on behalf of himself )
and on behalf of others similarly situated, )
                                          )
        Plaintiffs                        )
                                          )
            v.                            )        Civil Action No. 05-30017-MAP
                                          )
ROBERT J. GARVEY, and PATRICK J.          )
CAHILLANE in their individual capacities, )
                                          )
        Defendants                        )
_____)

## AFFIDAVIT OF HOWARD FRIEDMAN

I, Howard Friedman, on oath, depose and say the following:

1.      I am an attorney in good standing in the Commonwealth of Massachusetts. I have served as counsel for the named plaintiff Charles V. Ryan IV and the class in the above case.

2.      I am a member of the Bar of the Supreme Court of the United States of America, the Supreme Judicial Court of Massachusetts, the United States Court of Appeals for the First Circuit, and the United States District Court for the District of Massachusetts. I graduated from Northeastern University School of Law and began practicing law in 1977.

3.      My first job as a lawyer in 1977 was at the Prisoner's Rights Project in Boston. I represented prisoners on civil rights cases under 42 U.S.C. §1983. Among other cases, I represented a class of inmates who were members of the Nation of Islam in a civil rights suit alleging violation of their civil rights under the First Amendment.

4.      I have been engaged in the private practice of law since October 1981. My private practice has emphasized civil rights litigation, particularly police misconduct cases.

5.      I am a member of the Massachusetts Bar Association (MBA), Association of Trial Lawyers of America (ATLA), Federal Bar Association, and the Massachusetts Academy of Trial Attorneys (MATA). I served as a member of the MBA, Individual Rights and Responsibilities Section Council (IRR) from 1991 to 1995. I chaired the Police Misconduct Committee of the IRR from 1988 to 1999. I served as the chair of the Civil Rights Section of ATLA from 1996 to 1997. I served as a member of the Massachusetts Attorneys General's Civil Rights Task Force and its police committee from 1992 to 1998. I was a founder of the Police Practices Coalition in Boston and I am the current President of the National Police Accountability Project of the National Lawyers Guild.

6.      I have lectured on the subject of police civil liability for Massachusetts Continuing Legal Education, Inc. (MCLE), MATA, MBA, FBI National Academy, New England Associates, National Lawyers Guild (NLG), ATLA and at several law schools. In October 1999, I was a panelist on the topic of "Strip-searches: Yes or No?" at the International Criminal Justice Expo & Conference sponsored by Northeastern University College of Criminal Justice, Boston, MA.

7.       In April 2004, I spoke on the subject of, "Fourth Amendment Rights of Prisoners" and I participated in a panel on "Litigating Prison Conditions and Excessive Force Claims," at a continuing legal education seminar sponsored by the Georgetown University Law Center, Washington, D.C.

8.      I have been retained by lawyers representing the plaintiffs in a class action in New Orleans, Louisiana alleging a policy of illegal strip searches to consult with them.

9.      For the past three years, I have lectured on the subject of class actions at Professor Karen Blum's first year class in civil procedure at Suffolk University School of Law in Boston.

2

10.    I have authored several articles on civil rights litigation including "Damages Actions Under Section 1983" in <u>Federal Civil Litigation in the First Circuit</u>, (co-author) MCLE, April 1995; "Evaluating Police Misconduct Cases," <u>Trial Magazine</u>, December 1997; "Plaintiff's Strategies for Avoiding Summary Judgment on Municipal Liability Claims for Failure to Act," 2 <u>Massachusetts Governmental Liability Reporter</u> 1 June, 1988 and "Attorney's Fee Awards: Calculation in the Wake of *Hensley* and *Blum*," <u>Police Misconduct and Civil Rights Law Report</u>, Vol. 1 No. 7, Summer 1984. I served as the editor for the "Civil Rights Forms Book," ATLA Civil Rights Section, June 1998.

11.    I have represented the plaintiffs in thirteen cases alleging illegal strip-searches including three other class actions and one individual case that went to trial resulting in a verdict for the plaintiff against a police officer and the Town of Wareham, Massachusetts. I have also represented individuals in strip search cases which settled without litigation.

12.    In <u>Mack v. Suffolk County</u>, D.Mass. C.A. No. 98-12511-NG, I represented the plaintiffs in a class action of approximately 5,400 class members alleging illegal strip-searches; 1,500 class members submitted claims forms and participated in the settlement. In <u>Connor v. Plymouth County</u>, D.Mass. C.A. No. 00-10835-RBC, I represented a class of approximately 800 women who alleged illegal strip-searches. Ultimately, 133 class members participated in the settlement distribution. In <u>Nilsen v. York County</u>, D.Me. C.A. No. 02-212-P-S, I represented a class of more than 7,000 people where more than 1,400 filed claims. In addition to <u>Mack</u>, <u>Connor</u> and <u>Nilsen</u>, I successfully litigated several other class actions alleging civil rights violations, including a Fourth Amendment challenge to a city's search and seizure policy in <u>Ocasio v. City of Lawrence</u>, 788 F.Supp. 99 (D.Mass. 1992).

3

13.     I approached settlement in this case with the benefit of my experience in <u>Mack</u>, <u>Connor</u> and <u>Nilsen</u>, as well as advice from lawyers who had settled similar strip-search class actions in other states. I have discussed these issues with attorneys Vincent Moccio of Minneapolis, MN, class counsel in <u>Brecher v. St. Croix County</u>, W.D.Wis. C.A. No. 02-C-0450-C and <u>Blihovde v. St. Croix County</u>, 219 F.R.D. 207 (W.D. Wisc. 2003); Richard Emery of New York, NY, class counsel in <u>Tyson v. City of New York</u>, S.D.N.Y. C.A. No. 97CV3762; Gregory Bölzle of Louisville, KY, class counsel in <u>Eddleman v. Jefferson County</u>, W.D. Ky.C.A. No. 3:91CV144; Daniel Duckett of Manchester, NH, class counsel in <u>Moser v. Anderson</u>, D.N.H. C.A. No. 93-634-B; Thomas Morrissey of Chicago, IL, class counsel in <u>Gary v. Sheahan</u>, N.D.Ill. C.A. No. 96-7294 and Kenneth Flaxman of Chicago, IL, class counsel in <u>Doe v. Calumet City</u>, N.D.Ill. C.A. No. 87-3594. In my opinion, the settlement in this case is fair and the settlement amount is within the range of settlements in other strip-search class actions.

14.     In <u>Mack</u>, the court approved a $10 million settlement for the class of 5,400. Of those, approximately 1,500 made claims. Counsel was awarded 30% of the $10 million settlement. Expenses were also paid from the settlement fund. The judge approved bonuses of $15,000 for acting as a class representative and $5000 for being the subject of a deposition. In <u>Mack</u> the class representatives had substantially more work to do than the representative in this case. The case went on for over four years before a settlement was reached. The class representatives were involved in not only the motion to certify the case but also had extensive contact with the press, many meetings with counsel and assisted in the successful summary judgment proceedings, prepared for damages trials as well as participating in the mediation sessions leading up to the settlement.

4

15.    In <u>Connor</u>, the court approved a $1.35 million settlement for approximately 770 class members. Of those, 113 made claims. Counsel was awarded 33% of the settlement fund. In addition, all litigation and claims administration expenses were paid from the settlement fund.

16.    In <u>Nilsen</u>, the court approved a $3.3 million settlement for more than 7,000 class members. Of those, 1,410 made claims.

17.    In <u>Tyson</u>, the court approved a $50 million settlement for 50,000 potential class members. Of those, approximately 6,000 class members made claims.

18.    In <u>Eddleman</u>, the court approved a settlement of $11.5 million for a class of about 50,000 class members. Of those, more than 4,000 class members made claims. Class counsel was awarded 33.3% of the $11.5 million settlement fund and the court approved bonuses of $5,000, $10,000 and $15,000 to class representatives and other class members who assisted class counsel in litigating the case.

19.    In <u>Moser</u>, the court approved a $3 million settlement for 2,200 potential class members. Class counsel was awarded an attorney's fee of 33.3% of the $3 million settlement fund.

20.    In <u>Brecher</u>, the two named plaintiffs shared an incentive award of $35,000.

21.    Based on these other settlements, I came to the conclusion that a strip search class action settlement which requires individual calculation of damages is too time-consuming and costly. For example, in <u>Tyson</u>, although the case settled in June 2001, by July 2002, distributions had been made only to Step 1 class members making claims for $250. The other plaintiffs had to wait in order for records to be evaluated so that their claims could be "scored" by adding points for factors listed in the settlement agreement.

5

22.     The parties began negotiating a settlement in June 2006. Plaintiffs made a detailed settlement demand on August 2, 2006. An agreement in principle was reached in late August 2006. The parties continued negotiations lasting into December 2006. Class counsel and counsel for the defendants believe the settlement is fair, reasonable and adequate. Both sides faced significant risks if they did not reach a fair settlement.

23.     The parties conducted significant discovery. Plaintiffs served and the defendant answered a set of interrogatories and requests for documents. Plaintiffs obtained complete booking records in electronic format from the defendants. Counsel for the class spent significant time traveling to the jail to personally review the files for 266 bookings. It took a full year to determine class size. The named class representative was deposed. A class has been certified. The parties entered settlement negotiations with a full understanding of the strengths and weaknesses of their positions on liability.

24.     Class counsel recommends a bonus to the class representative who was deposed by defense counsel in this case to compensate him for his loss of privacy as a result of bringing this case and for the time he spent in responding to discovery and working with counsel to bring about this result. Mr. Ryan spent significant time on this case: not only was he deposed, he also consulted with counsel on the telephone throughout this case. He endured a loss of his personal privacy by revealing his name in order to bring this case.

25.     Attorney's fees will be requested at 33.3% of the gross settlement amount. This is within the range of fees awarded in other strip search class actions. Expenses will be paid from the settlement fund, including the cost of administering the settlement.

6

26.     Analytics Inc., the proposed claims administrator is the oldest class action consulting firm in the country. In addition to their general experience in class action work, Analytics have experience in processing settlements in strip search class actions, having handled the administration of the cases in Nilsen v. York County and Blihovde v. St. Croix County, 219 F.R.D. 207 (W.D. Wisc. 2003) and distribution of the settlement proceeds in Connor v. Plymouth County.

27.     It is difficult to predict the participation rate in this case because of the very small size of the class. However, it is clear that each class member would receive a significant amount. If 30% of the potential class of 90 members were to submit claim forms, payments would be $3,666. Should 50% of the potential class members submit claims, class members would receive $2,444.

I declare under penalty of perjury that the foregoing is true and correct this 29th day of December, 2006,

 /s/ Howard Friedman
Howard Friedman
BBO #180080
Law Offices of Howard Friedman, P.C.
90 Canal Street, Fifth floor
Boston, MA 02114-2022
T (617) 742-4100
F (617) 742-5858
hfriedman@civil-rights-law.com

7