UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
)
CHARLES V. RYAN IV, on behalf of himself    )
and on behalf of others similarly situated,    )
)
Plaintiffs    )
)
v.    )    Civil Action No. 05-30017-MAP
)
ROBERT J. GARVEY, and PATRICK J.    )
CAHILLANE in their individual capacities,    )
)
Defendants    )
_____)

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

## I.    INTRODUCTION

This is a civil rights action against the Sheriff and Deputy Superintendent of Hampshire

County for requiring every person who was to be admitted into the Hampshire Jail to submit to a

strip and visual body cavity search. Plaintiffs alleged that this practice was an unconstitutional policy

of strip searching all pre-arraignment detainees indiscriminately without individualized suspicion.

On July 14, 2006, the Court certified this case as a class action under Fed.R.Civ.P. 23(b)(3). The

class was defined as follows:

> All persons who were illegally strip searched at the Hampshire Jail and
> House of Correction from January 18, 2002 to November 7, 2002, under a
> policy of conducting strip searches without evaluating for individualized
> reasonable suspicion:
>
> (1)    while waiting for bail to be set or for a first court appearance after
> being arrested on charges that did not involve a weapon or drugs or
> contraband or a violent felony; or

1

(2)     while waiting for a first court appearance after being arrested on a default or other warrant (for example, those issued by the State Parole Board) on charges that did not involve a weapon or drugs or contraband or a violent felony; or

(3)     while held after a finding of civil contempt of court for failure to pay child or spousal support, a judgment, or a fine.

This case was brought as a class action because the vast majority of Plaintiffs would not otherwise pursue a claim for violation of their rights given that their individual damages claims would not be large, they would have to give up their privacy and invest time to obtain a judgment, and it would be difficult to find qualified legal counsel to work on such a small damages case. The First Circuit recognized this in affirming a class certification of a similar case, stating:

> We think that only the limited number of cases where serious damage ensued would ever be brought without class status and that the vast majority of claims would never be brought unless aggregated because provable actual damages are too small.

*Tardiff v. Knox County*, 365 F.3d 1, 7 (1st Cir. 2004).

On January 8, 2007, this Court granted preliminary approval of the settlement. On February 9, 2007, notice of the class action settlement and claim form, including the right to opt out, was sent and received by over half of the 90 individuals who are believed to be class members. To date, none of the class members have exercised their right to opt-out and there have been no objections. The lack of any other individual lawsuits brought against Hampshire County challenging the practice at issue here further supports the conclusion that there is little or no incentive for individual class members to pursue individual lawsuits.

The parties seek this Court's final approval of their settlement whereby Hampshire County will maintain the new policy protecting the privacy of pre-trial detainees and will pay $205,000 to resolve all of the Plaintiffs' claims. The settlement is the product of contested and lengthy

2

negotiations. Counsel for the parties believe that the settlement is fair, reasonable and adequate, and should be approved by the Court.[1] Plaintiffs request that this Court find that the parties' proposed settlement is fair, reasonable, and adequate, and grant Plaintiffs' motion for final approval of the parties' settlement. Class Counsel has attached a proposed order with detailed procedural steps that the Court must approve as part of implementing the settlement.

## II.    **SUMMARY OF THE PROPOSED SETTLEMENT**

As part of the settlement agreement, Defendants agree to maintain a policy protecting the privacy of pre-trial detainees at the Hampshire County Jail and will pay $205,000 to settle all claims brought by the Plaintiffs in this action, including attorney's fees and costs. The agreement provides for a cash payment to every person who meets the class definition. The same amount will be paid regardless of how many times a class member was admitted into the jail during the class period and strip searched. Plaintiff class requests attorney's fees of one-third of the common fund plus litigation costs and claims administration expenses. Class Counsel recommends an incentive payment of $10,000 for named class representative Charles V. Ryan IV to compensate him for his loss of privacy as a result of bringing this case and for the time he spent to bring about the favorable result for the entire class.

## III.    **CASE BACKGROUND**

### A.    **Class Counsel Diligently Pursued Records Identifying Potential Class Members**

The Defendants admitted that they had a written policy requiring strip searches of class members without individualized suspicion. Therefore, counsel for the parties recognized early in the case that the critical issue would be the size of the class. Class Counsel sought electronic data from

---

[1] Ex. 1 at ¶13 (Affidavit of Howard Friedman).

the Defendants containing critical information about potential class members, such as which detainees were held pending their first appearance, their dates of booking, their charges, and their names and addresses.[2] In response, the Defendants produced multiple sets of electronic booking information relating to more than 900 bookings. The data were analyzed to determine the size and composition of the class. Because the Jail did not record in its booking computer system why or how a prisoner was brought to the Jail, a determination whether the individuals were pre-arraignment or pretrial detainees could not be made from examining the booking data alone. After excluding approximately 650 bookings based on booking dates and criminal charges, Class Counsel visited the Jail to personally review 266 inmate booking files to determine class membership. Based on the above analysis and review, by counting Hampshire County Jail's unique Inmate ID Number that is assigned to every prisoner at booking, Class Counsel determined that there were 90 individuals who appeared to fit the class definition. The defendants agreed with this determination.

### B.    Settlement Negotiations Were Difficult Because Defendants Had No Insurance

Class Counsel obtained the best possible settlement. The case settled after months of negotiations by counsel. The parties began discussing a settlement in June 2006. After the Court certified the case as a class action, Plaintiffs made a detailed settlement proposal on August 2, 2006. In late August, the parties reached agreement in principle on the terms of the settlement. It took another four months to agree on the details contained in the Settlement Agreement.

Hampshire County was abolished in 1999 and the Commonwealth of Massachusetts assumed responsibility of the County. This meant that the settlement amount would be paid from the State

---

[2] Support for this sentence and the rest of the paragraph can be found in Ex. 2 at ¶¶7-10 (Affidavit of Myong J. Joun).

Treasury. In order to resolve all of the issues needed to come to an agreement, the parties had to

negotiate with both the State Comptroller's Office and the Office of the Treasurer.

IV.    **THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE**

    A.    **The Settlement is Entitled to a Presumption of Fairness**

       In deciding whether to approve a proposed settlement of a class action, Fed.R.Civ.P. 23(e)

establishes that the Court must hold a hearing and determine if the settlement is "fair, reasonable and

adequate." See *Durrett v. Housing Authority of Providence*, 896 F.2d 600, 604 (1st Cir. 1990);

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54 (D.Mass. 1997).  A "presumption of

fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length

negotiations between experienced, capable counsel after meaningful discovery." *Manual for

Complex Litigation (Third)* § 30.42 (1995). This case was diligently litigated. A settlement was

finally achieved after a series of negotiations. The settlement hearing is not to become "a trial or

rehearsal of the trial." *Newman v. Stein*, 464 F.2d 689, 692 (2nd Cir. 1972), *cert.denied*, *Benson v.

Newman*, 409 U.S. 1039 (1972). Rather, it is a limited inquiry into whether the possible rewards of

litigation with its risks and costs are outweighed by the benefits of settlement. As explained below,

this settlement is fair, reasonable and adequate.

    B.    **Procedural Considerations Support Approval of the Settlement**

        1.    **Stage of Proceedings and Discovery**

       "The stage of the proceedings at which settlement is reached is important because it indicates

how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims."

*Duhaime v. John Hancock Mutual Insurance*, 177 F.R.D. 54 at 67 (D.Mass. 1999) (quoting

*Armstrong v. Bd. of School Directors of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980)). As

explained above, this settlement was reached after discovery regarding the size and makeup of the class, litigation of the issue of class certification and a series of settlement negotiations. Both Plaintiffs and Defendants negotiated this agreement with an understanding of the other party's position.

### 2.    Arm's Length Negotiations

As detailed above, the parties entered settlement negotiations with a full understanding of the strengths and weaknesses of their positions on liability and potential damage awards and settlement was achieved as a result of arms' length negotiations.

### C.    The Amount of the Settlement is Fair, Reasonable and Adequate

The most important factor to consider in evaluating a settlement which provides monetary relief is the amount agreed upon. The gross settlement amount here of $205,000 is a significant achievement for an estimated class size of 90 people. Each class member's award is expected to be approximately $5,900[3] which places the payment to class members within the range provided in other strip-search class action cases in Massachusetts.[4]

Judge Nancy Gertner approved a $10 million settlement for approximately 5,400 class members of whom about 1,500 made claims and received awards ranging from $454.58 to $9,091.46

---

[3] Ex. 2 at ¶14 (Affidavit of Myong J. Joun).

[4] The Court should review the amount of recovery as well as the plan for distributing the recovery to class members in order to determine whether the proposed settlement is fair, reasonable and adequate. It is well settled that there is "a range of reasonableness" allowed by courts in approving class action settlements. *See, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 2005 WL 15056 (2d Cir 2005) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.1972)). *See generally Newberg On Class Actions*, §11:45 (4th ed. 2002) ("courts have reviewed settlements with the intent of determining whether they are within a range of reasonableness."). The settlement in this case is consistent with similar cases in Massachusetts as well as other jurisdictions.

in *Mack v. Suffolk County*.[5] Magistrate Judge Robert B. Collings approved a $1.35 million settlement for approximately 600 class members of whom about 110 made claims and received awards ranging from $5,859 to $13,565 in *Connor v. Plymouth County*.[6] The estimated award of approximately $5,900 in this case to class members who have made claims falls comfortably within the range of reasonableness established by prior settlements approved by courts in this district.

**D.     The Distribution Formula is Fair, Reasonable and Adequate**

**1.     It Is Reasonable to Provide Uniform Compensation for Emotional Distress**

The settlement provides that the settlement funds be distributed by providing one payment for each class member. Under this settlement, class members receive a payment without the need for an individual evaluation of each person's emotional distress. This approach is consistent with the opinion of the First Circuit on class certification suggesting that one possible resolution of this case could be "an agreement on modest uniform damages for those not claiming special injury, with masters to determine the (potentially few) serious claims to special injury." *Tardiff*, 365 F.3d at 7. This settlement achieves this result by permitting class members who believe that they have a serious injury to exclude themselves from the settlement to pursue their own individual claims. None have done so. Those who chose to participate in the settlement by submitting a valid claim form will receive a prompt, uniform benefit. This allows a greater percentage of the settlement money to be

---

[5] Ex. 2 at ¶26 (Affidavit of Myong J. Joun).

[6] Ex. 2 at ¶27 (Affidavit of Myong J. Joun). *Connor* had two sub-classes: women who were strip-searched at a county lockup facility and women who were strip-searched before special arraignment sessions at a county jail. Twenty-eight class members who were members of both subclasses received $13,565 ($5,859 and $7,705). *Id.*

received by class members instead of administrative costs for determining the precise amount to distribute to each claimant.

### 2.    It Is Reasonable to Provide Payment for Only One Search

The Agreement calls for one payment to all class members regardless of the number of times a class member was subjected to a strip search. The settlement agreement provides a method of distribution that is simple and easy to administer so that the settlement can be processed quickly and without great expense. This approach is based on principles of practicality and fairness. As a practical matter, Class Counsel believe that class members are best served by ensuring that they receive a significant payment promptly and with a minimum of burden and expense. A number of strip search class action settlements have been approved by courts when they provide the same size payment regardless of the number of strip searches per class member.

As a matter of fairness, Class Counsel believes that the allocation of the settlement proceeds should reflect the reality that the compensable damages likely to be awarded by a jury for a strip search arise primarily from the shock of the event. Equally important is that if a class member has multiple strip searches it means that the class member was arrested more than once during the class period. Awarding additional money to class members for multiple searches would reward a career criminal over a person arrested only once, whereas a jury is more likely to sympathize with the one-time offender.

### E.    No One Has Objected to the Settlement

"If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." 4 Newberg § 11.41 at 108. Although class members were given fifteen weeks to submit an objection, not a single class member has done so. Any class member who

felt dissatisfied with the settlement or who felt they suffered extensively as a result of the strip search also could have simply opted out of the settlement to pursue that claim. None have done so.

### F.    The Class Received Proper Notice of the Settlement

On January 8, 2007, this Court approved the notice plan, which included direct mailing of the court-approved *Notice of Class Action Settlement* and the *Settlement Claim Form* to class members, posting at the Hampshire County Jail, advertisements in three local newspapers, maintaining a website for posting documents about the case and settlement, and sending a press release regarding the court's action.

Since February 2, 2007, the Jail has posted a notice in two locations in the booking area of the jail.[7]  On February 9, 2007, the Claims Administrator mailed the approved notice and claim form by first class mail postage-prepaid to all potential class members at their last known addresses.[8] A notice was also published in the *Springfield Republican* on January 23, 2007, in the *Daily Hampshire Gazette* on January 27-28, 2007, and in the *Greenfield Recorder* January 27, 2007.[9] In addition, there were newspaper articles and news reports on radio and television about the settlement.[10] Finally, Class Counsel has maintained a website at www.hampshiresheriffclassaction.com where the *Notice of Settlement* and *Claim Form* have been posted and has been available for download since February

---

[7]  Ex. 2 at ¶18 (Affidavit of Myong J. Joun).

[8]  Notices were mailed to 90 individuals at 128 addresses. Ex. 2 at ¶15 (Affidavit of Myong J. Joun). Of these, mailings to 28 individuals were returned as undeliverable. *Id.* "Such returns must be regarded as inevitable." *In Re Agent Orange*, 818 F.2d at 169.

[9]  Ex. 2 at ¶16 (Affidavit of Myong J. Joun). The U.S. Supreme Court has ruled that notice by publication of a pending settlement is constitutionally sufficient if class members' addresses are unknown. Mullane, 339 U.S. at 317-318.

[10]  Ex. 2 at ¶17 (Affidavit of Myong J. Joun). This Court may also take judicial notice of the widespread publicity this settlement has received. *In Re Agent Orange*, 818 F.2d at 169.

9, 2007.[11] There have been more than 175 unique IP address users who have visited the website more than 500 times. The notice and form was also sent to anyone who requested by writing to the Claims Administrator.

As of June 14, 2007, the Claims Administrator received 17 claim forms from 16 individuals.[12] The submission of a claim form by 18% of the entire class shows that the notice reached class members.[13]

### G.    The Request for Attorney's Fees is Fair and Reasonable

Under Fed. R. Civ. P. 23(h) and 54(d)(2), Plaintiffs request that this Court award Class Counsel attorney's fees of one-third of the $205,000 settlement fund based on the preferred percent-of-fund method for determining fees in class actions resulting in a common fund.[14] Plaintiffs also ask that this Court award reasonable litigation expenses for prosecuting this litigation and the reasonable costs of claims administration from the settlement fund.

In considering whether the request for attorney's fee is fair and reasonable, the court should review the following factors: (1) the size of the fund created and awards in similar cases, (2) the presence or absence of objections raised by class members, (3) the skill and efficiency of Class

---

[11] Support for this sentence and the rest of the paragraph can be found at Ex. 2 at ¶19 (Affidavit of Myong J. Joun).

[12] Ex. 2 at ¶11 (Affidavit of Myong J. Joun). One class member submitted two claim forms.

[13] This is a within the expected range for strip-search class actions. Return rates have ranged from 10% to 28%: *Williams v. Block* (10% - 40,000 claims made from 400,000 class members); *Tyson v. City of New York* (12% - 6,000/50,000); *Connor v. Plymouth County* (15% - 105/700); *Nilsen v. York County* (18%-1,400/7,600); *Mack v. Suffolk County* (28% - 1,495/5,400). Ex. 2 at ¶¶23-27 (Affidavit of Myong J. Joun).

[14] In determining an award of attorney's fees in complex litigation, the percentage method is preferred. *In Re Thirteen Appeals*, 56 F.3d 295, 307 (1st Cir.1995) (finding that percentage of fund method is "less burdensome to administer than the lodestar method" in that it "enhances efficiency" and does not create a "disincentive for the early settlement of cases").

10

Counsel, (4) the complexity and duration of the litigation, (5) the amount of time devoted to the case, (6) the risk of non-payment, and (7) the named class representative's agreement to the fee award.[15]

### 1.    Size of the Fund and Awards in Similar Cases

As discussed above, a settlement of $205,000 for a class size of 90 people with an estimated award of approximately $5,900 for each participating class member in this case falls comfortably within the range of reasonableness established by prior settlements approved by courts.

### 2.    There Are No Objections to the Settlement

As discussed above, despite an opportunity of fifteen weeks to submit an objection, not a single class member has done so. In addition, no one has opted-out of the settlement.

### 3.    Plaintiffs Were Represented by Experienced and Capable Counsel

Lead counsel for the class, Attorney Howard Friedman, is an experienced civil rights litigator. Attorney Friedman has been practicing law since 1977, and his practice has emphasized civil rights cases since 1981.[16] Attorney Friedman was named a "Massachusetts Super Lawyer" by Law & Politics magazine in each issue. Attorney Friedman teaches other lawyers at continuing legal education programs on civil rights issues. In 2003, he spoke on the subject of strip searches at a continuing legal education program at Georgetown Law School. Attorney Friedman has also been a guest lecturer on the subject of class actions at Professor Karen Blum's class on Civil Procedure at Suffolk Law School.

---

[15] *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 201 n. 6 (3rd Cir.2000); Third Circuit Task Force Report on Selection of Class Counsel, 208 F.R.D. 340, 423-24 (2002); *Goldberger v. Integrated Resources, Inc.* 209 F.3d 43, 50 (2d Cir. 2000).

[16] Support for this sentence and the rest of the paragraph can be found at Ex. 1 at ¶¶3-10 (Affidavit of Howard Friedman). A copy of Attorney Friedman's resume is attached to his affidavit as Ex. 1(A).

Attorney Myong J. Joun has been an Associate at the Law Offices of Howard Friedman, P.C. since 1999 concentrating his practice in civil rights litigation with an emphasis on police misconduct cases.[17]

Together, Attorneys Friedman and Joun have successfully represented Plaintiffs in three other strip search class actions that, like this case, alleged an unconstitutional policy or custom of strip searching pre-arraignment detainees: *Mack v. Suffolk County*, D.Mass. Docket No. 98-12511-NG, *Connor v. Plymouth County,* D.Mass. CA. No. 00-10835, *Nilsen v. York County*, D.Me. C.A. No. 02-212-PH. In addition, Attorney Friedman has represented plaintiffs in other class actions including successfully obtained a declaratory judgment in *Ocasio v. City of Lawrence*, 788 F.Supp. 99 (D.Mass. 1992), a §1983 class action for declaratory and injunctive relief challenging unlawful seizures under a policy of the City of Lawrence Police Department.

### 4.    Complexity, Expense and Duration of the Litigation

Settlement of this class action prevents substantial litigation expenses, delayed payment to the Plaintiffs and the strain on court resources that would result from multiple individual damages trials.[18] Furthermore, settlement will increase the number of class members who are able to participate in this case, class members whose rights would otherwise not be vindicated.

By reaching a compromise, both sides avoid the risks they faced by proceeding to trial. If damages claims were decided individually, some class members may have received only one dollar.[19]

---

[17] Ex. 2 at ¶¶1-4 (Affidavit of Myong J. Joun). A copy of Attorney Joun's resume is attached to his affidavit as Ex. 2(A).

[18] *Id.* at 1331.

[19] Nominal damage verdicts have been awarded in individual strip search cases. *See Foote v. Spiegel*, 118 F.3d 1416 (10th Cir. 2001) (after two appeals, plaintiff awarded $1 for an admittedly illegal strip search); *Stewart v. Lubbock County,* 767 F.2d 153, 154, n.2. (5th Cir. 1985)(one plaintiff awarded $1 and the other

Of course, Defendant also faced the risk that many Plaintiffs would obtain larger damages awards ranging from $5,000 to $40,000, and that some might recover more than $40,000.[20] The wide range of verdicts in strip search cases shows that, absent a settlement, both the Plaintiffs and the Defendants faced significant uncertainty.

Even if Plaintiffs were able to win large verdicts, collecting the amounts from the Defendants would have presented additional problems. First, Defendants would have been likely to appeal, further delaying payment. Then, Plaintiffs would have had to pursue collection against the individual Defendants who may not have had the means to pay, again delaying payment. The Defendants also had compelling reasons to settle. They could have lost the trial on liability based on their admitted policy of requiring strip searching class members without individualized suspicion. The Defendants would then have been facing an unknown number of individual damages trials. Even if the damages in individual cases were not large, the Defendants would be liable for reasonable attorney's fees to the Plaintiffs pursuant to 42 U.S.C. § 1988. The costs of pursuing this litigation could have been large. Thus, both sides had good reasons to settle.

---

awarded $15,000); *Sorenson v. City of New York*, 2000 U.S.Dist. LEXIS 15090 (S.D.N.Y. 2000)(two plaintiffs awarded $1 each); *Polk v. Montgomery County*, 689 F.Supp. 556 (D. Md. 1988) (plaintiff awarded $1 after rejecting a settlement offer of $31,000).

[20] Verdicts in Massachusetts courts for women alleging an illegal strip search have ranged from $45,000 to $177,000. *Blackburn v. Snow*, 771 F.2d 556 (lst Cir. 1985)(award of $177,040); *Denk v. Santos*, 98-11963-NG (jury award of $135,000); *Rodriguez v. Silva and City of New Bedford*, June 17,1996, (award of $45,000 for plaintiff who was deceased at time of trial and $150,000 for another); *Adams v. Town of Wareham*, 94-11446-DPW (award of $50,000). In *Joan W. v. City of Chicago*, 771 F.2d 1020 (7th Cir. 1985), the Seventh Circuit addressed the question whether a verdict of $112,000 was excessive. In ordering that the case be remanded for a new trial unless the plaintiff accepted a reduction of the award to $75,000, the Court looked to verdicts in nine other strip search suits against the City of Chicago in which the juries returned awards of $3,300, $15,000, $15,000, $25,000, $25,000, $30,000, $45,000, $50,000 (reduced as excessive to $25,000), and $60,000. *See id.* at 1023–24.

### 5.    Amount of Time Devoted to the Case

As of June 14, 2007, Class Counsel have devoted a total of 211.20 hours of time in this case.[21] Attorney Howard Friedman recorded 21.90 hours, attorney Myong J. Joun recorded 170.30 hours, attorney Jennifer Bills recorded 12.90 hours, and two paralegals recorded 6.20 hours.[22] Using the lodestar method, the total attorney's fees as of June 14, 2007, are $48,375.[23] Thus, the multiplier requested is 1.4 based on the hourly fees to date. Class Counsels' work is not done yet; it will continue until all of the claims are paid to class members in 2007, tax form 1099's are mailed to class members in 2008 and a final settlement report is obtained in 2009.[24]

### 6.    Risks of Non-Payment

Class Counsel handled this case on a contingency basis. Since meeting with the lead Plaintiff Charles Ryan IV in December 2004, Class Counsel worked on this case without any fee while spending $1,687.61 in litigation expenses without reimbursement.[25] As of June 14, 2007, attorney's fees and expenses in this case total $50,040.11. Analytics estimates that the cost of claims administration in this case will be $6,350.00.[26]

---

[21] Ex. 2 at ¶31 (Affidavit of Myong J. Joun). "[T]ime logged is still relevant to the court's inquiry" even under the percentage of fund method because "time records tend to illuminate the attorneys' role in the creation of the fund". *In Re Thirteen Appeals*, 56 F.3d at 307.

[22] Ex. 2 at ¶32 (Affidavit of Myong J. Joun). Information regarding experience and qualifications for Attorney Jennifer L. Bills, Paralegals Neal Alpert and Ajay Sequeira can be found at Ex. 2 at ¶29 (Affidavit of Myong J. Joun).

[23] Ex. 1 at ¶13 (Affidavit of Howard Friedman). The hourly rate of $350 for attorney Howard Friedman, $225 for attorney Myong J. Joun, $150 for attorney Jennifer L. Bills and $75 for the paralegals are reasonable and within or below the range of fees charged by law firms in Boston.

[24] Ex. 2 at ¶33 (Affidavit of Myong J. Joun).

[25] Ex. 2 at ¶34 (Affidavit of Myong J. Joun).

[26] Ex. 2 at ¶35 (Affidavit of Myong J. Joun).

14

### 7.     Named Class Representative's Agreement to Fee Award

Charles Ryan IV, the named class representative, agrees that an attorney's fee of one-third of the settlement fund is reasonable; he signed a fee agreement providing a minimum fee of one-third of the amount of any recovery or settlement.[27]

### H.     Incentive Payment Should be Paid to Compensate Class Representative

Class Counsel requests an incentive payment of $10,000 to the class representative who spent time working with Class Counsel to achieve the settlement.[28] Mr. Ryan spent significant time on this case: not only was he deposed, he also answered individual discovery requests, and he consulted with counsel throughout the litigation. Mr. Ryan endured a loss of his personal privacy by revealing his name to bring this lawsuit on behalf of the class. The amount requested is reasonable. *See Niedert*, 142 F.3d 1004 (7th Cir. 1998).

### V.     ADMINISTRATION OF THE SETTLEMENT.

Class Counsel will oversee the settlement administration process and the distribution phases and will provide direction to the claims administrator as needed.

The Court approved Analytics, Incorporated of Chanhassen, MN as the claims administrator in this case. The deadline for submitting claim forms is June 22, 2007. This court granted a one-week

---

[27] See, *Pavlidis v. New England Patriots Football Club, Inc.*, 675 F.Supp. 707 (D.Mass.1987) (considering contingent fee agreement when awarding attorneys' fees); *Vizcaino v. Microsoft Corp.*, 142 F.Supp.2d 1299, 1304 (W.D.Wash. 2001)(noting that the requested attorney's fees of 28% of a $97 million "are at or below the market rate" because "plaintiffs in this case agreed to pay class counsel 30% of any recovery in their retainer agreements, which is higher than class counsel's request for attorney fees"), *affirmed*, 2002 WL 987541 (9th Cir. May 16, 2002).

[28] The incentive bonus requested here is similar to or smaller than those in many other strip search class actions. In *Mack v. Suffolk County*, the court approved a bonus of $15,000 for serving as a class representative and in *Connor v. Plymouth County*, the court approved a bonus of $7,500 for each class representative.  Ex. 2 at ¶¶26-27 (Affidavit of Myong J. Joun).

15

amnesty period until June 29, 2007, whereby Settlement Claim Forms postmarked no later than that date would be treated as if postmarked by June 22, 2007.

If this Court issues an Order granting final approval of this settlement by July 13, 2007, the claims administrator will, by July 20, 2007, send:[29]

(1)    a *Notice of Claim Approval* to those claimants whose claims are approved; and

(2)    *Notices of Claim Denial* to those claimants whose claims are not approved which will include an explanation of why the claim was denied; and

(3)    a *Notice of Claim Denial for Failure to Submit Claim Form by Deadline* to those claimants who submitted a claim form after June 29, 2007.

Class members who disagree with the denial of their claim have the right to appeal to the claims administrator by August 3, 2007. The claims administrator will resolve all appeals regarding membership and send notices to claimants regarding their appeal by August 10, 2007. The claimant may appeal the claims administrator's final decision denying a claim to the Court by August 24, 2007. Also by August 24, 2007, Class Counsel will submit a motion for approval of payments to Analytics, Inc. for their claims administration services to the Court.

If this Court decides all appeals and approves the payment to Analytics, Inc. by September 7, 2007, the claims administrator will be able to make final calculations for the settlement distribution amounts to class members after deducting amounts for payments to Class Counsel, Analytics, Inc. and prepare a distribution spreadsheet for the Massachusetts Comptroller's Office by September 14, 2007.

Pursuant to the Settlement Agreement, the Comptroller's Office will mail settlement checks to class members and make payments to Class Counsel and the claims administrator by November

---

[29] Ex. 2 at ¶¶20-22 (Affidavit of Myong J. Joun).

13, 2007. The Attorney General's Office will obtain a settlement distribution report from the Comptroller's Office by January 12, 2008. The Comptroller's Office will prepare and send 1099's to class members by January 15, 2008. The Attorney General's Office will periodically obtain settlement distribution reports as detailed in the Settlement Agreement to update Class Counsel on the status of any uncashed checks. The Attorney General's Office will obtain and provide a final settlement distribution report to Class Counsel and to the Court on January 6, 2009. The parties will jointly request that this case be closed at that time.

## VI.      **CONCLUSION**

For all of the above reasons, Plaintiffs request that this Court grant the Plaintiffs' motion for final approval of the settlement.

**RESPECTFULLY SUBMITTED,**
For the Plaintiff, and the class,

/s/ Howard Friedman

Date: June 15, 2007

Howard Friedman
BBO #180080
Myong J. Joun
BBO #645099
Law Offices of Howard Friedman, P.C.
90 Canal Street, Fifth floor
Boston, MA 02114-2022
T (617) 742-4100
F (617) 742-5858
hfriedman@civil-rights-law.com
mjjoun@civil-rights-law.com

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————— )
CHARLES V. RYAN IV, on behalf of himself )
and on behalf of others similarly situated, )
                                         )
        Plaintiffs                       )
                                         )
                v.                       )        Civil Action No. 05-30017-MAP
                                         )
ROBERT J. GARVEY, and PATRICK J.         )
CAHILLANE in their individual capacities, )
                                         )
        Defendants                       )
———————————————————————— )

**PROPOSED ORDER ON MOTION FOR
FINAL APPROVAL OF CLASS SETTLEMENT**

After conducting a final fairness hearing on June 22, 2007, this Court makes the following

findings and orders:

1.      The Court finds that Class Counsel provided notice to the class as ordered by this

Court and that class members received proper notice of the settlement.

2.      The Court finds that the *Settlement Agreement*, is fair, reasonable and adequate.

Therefore the Court **GRANTS** final approval of the settlement.

3.      The Court **APPROVES** the distribution plan in the *Settlement Agreement*.

4.      The Court **APPROVES** attorney's fees in the amount of $68,333.33, or one-third of

the $205,000 settlement. The Court **FURTHER APPROVES** the payment of $1,687.61 for

litigation expenses.

5.      The Court **APPROVES** payment to Analytics, Incorporated in the amount of no more

than $6,350 for the costs of administering this settlement.

6.     The Court **APPROVES** incentive award of $10,000 to compensate Charles Ryan, IV who spent time as the class representative working with class counsel to achieve the settlement.

7.     The Court **ORDERS** the Claims Administrator to process all claim forms that are postmarked on or before June 29, 2009, determine whether the claimant is a class member, and send by first class mail postage prepaid a *Notice of Claim Approval* to all claimants who are verified as class members and a *Notice of Claim Denial* to all claimants who could not be verified as class members within seven days from the date of this Order. The *Notice of Claim Denial* shall, to the extent possible, inform the claimant of the reason for the denial. The *Notice of Claim Denial* will inform claimant of the availability of an appeal and the time within which an appeal must be made.

8.     The Court **ORDERS** that the administration of the settlement comply with the following deadlines contained in the *Settlement Agreement*:

a.     Claimants who wish to appeal from a *Notice of Claim Denial* must file a written appeal postmarked no later than fourteen days from the date the *Notice of Claim Denial* was mailed (Appeal Deadline). Appeals from late claim denials shall be filed directly with the Court. All other appeals shall be filed with the Claims Administrator.

b.     The Claims Administrator shall resolve all class member appeals and send written notice to claimants of its final decision no later than seven days from the Appeal Deadline (Final Decision Deadline). If the decision is adverse to the claimant, the *Notice of Appeal Decision* will inform the claimant of his or her right to appeal to the Court.

c.     Claimants who wish to appeal the Claims Administrator's final decision to the Court shall file a notice of appeal  with the Court no later than fourteen days from the final decision deadline. Claimants will be informed that their notice of appeal should include a copy of the Claims Administrator's decision denying the appeal.

d.     The Claims Administrator will be notified of any appeals and may file a response within five working days.

2

9.     No later than seven days after this Court resolves the last appeal, the Claims Administrator shall make final calculations for distribution of the settlement funds and shall prepare for the Massachusetts Comptroller's Office a distribution spreadsheet as detailed in the *Settlement Agreement*.

10.     The Comptroller's Office shall, within sixty days of receiving the distribution spreadsheet from the Claims Administrator, make payments as follows:

a.     Incentive bonus of $10,000 to class representative Charles Ryan, IV.

b.     Litigation costs of $1,687.61 and attorney's fee of $68,333.33 to Class Counsel.

c.     Claims administration expenses of no more than $6,350 to Analytics, Inc., and

d.     Distribute settlement payments to class members pursuant to the distribution plan.

11.     The Attorney General's Office shall obtain an initial settlement distribution report from the Comptroller's Office and submit it to Class Counsel within 60 days from the date of distribution and thereafter obtain periodic updates of the report for Class Counsel. The Attorney General's Office shall obtain a final settlement distribution report in January 2009.

12.     Class counsel shall file a final report of the settlement within 60 days from receiving the final accounting from the Attorney General's Office.


So ORDERED.

Dated this ____ day of _____, 2007

_____
Michael A. Ponsor
United States District Judge

3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
CHARLES V. RYAN IV, on behalf of himself )
and on behalf of others similarly situated, )
                                        )
        Plaintiffs                      )
                                        )
            v.                          )        Civil Action No. 05-30017-MAP
                                        )
ROBERT J. GARVEY, and PATRICK J.        )
CAHILLANE in their individual capacities, )
                                        )
        Defendants                      )
_____)

## EXHIBITS IN SUPPORT OF FINAL APPROVAL

1.    Affidavit of Howard Friedman

      A.    Resume

2.    Affidavit of Myong J. Joun

      A.    Resume

      B.    Notice of Settlement, Claim Form and Envelope

      C.    Newspaper Notice in the *Springfield Republican* on January 23, 2007.

      D.    Newspaper Notice in the *Daily Hampshire Gazette* on January 27-28, 2007.

      E.    Newspaper Notice in the *Greenfield Recorder* January 27, 2007.

      F.    News coverage of the Settlement

      G.    Jail Notice

      H.    Photographs of Jail Notice postings

      I.    Summary of Attorney's Fees and Litigation Costs

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
CHARLES V. RYAN IV, on behalf of himself            )
and on behalf of others similarly situated,         )
            Plaintiffs                               )
                                                    )
            v.                                       )        Civil Action No. 05-30017-MAP
                                                    )
ROBERT J. GARVEY, and PATRICK J.                    )
CAHILLANE in their individual capacities,           )
            Defendants                               )
_____)

## AFFIDAVIT OF HOWARD FRIEDMAN

I, Howard Friedman state as follows:

1.      I am an attorney in good standing in the Commonwealth of Massachusetts.  I am counsel for the plaintiff class in this case.

2.      I am a member of the Bar of the Supreme Court of the United States of America, the Supreme Judicial Court of Massachusetts, the United States Court of Appeals for the First Circuit, and the United States District Court for the District of Massachusetts.  I graduated from Northeastern University School of Law in 1977.

3.      I became a member of the Massachusetts bar in 1977.  My first legal job was at the Prisoner's Rights Project in Boston where I represented prisoners on civil rights cases under 42 U.S.C. §1983.  Among other cases, I represented a class of inmates who were members of the Nation of Islam in a suit alleging violation of their civil rights under the First Amendment.  I have continued to handle civil rights cases and class actions since then while working in legal services programs for the elderly and then in private practice.  I have been engaged in the private practice of law since October 1981.  My private practice has emphasized civil rights litigation, particularly police misconduct cases.  A copy of my current resume is attached to this affidavit.

4.      I am a member of the Massachusetts Bar Association (MBA), the American Association for Justice Association (formerly known as the Association of Trial Lawyers of America (ATLA)), the Federal Bar Association, and the Massachusetts Academy of Trial Attorneys (MATA).  I served as a member of the MBA, Individual Rights and Responsibilities Section Council (IRR) from 1991 to 1995.  I chaired the Police Misconduct Committee of the IRR from 1988 to 1999.  I served as the chair of the Civil Rights Section of ATLA from 1996 to 1997.  I served as a member of the Massachusetts Attorney General's Civil Rights Task Force and its police committee from 1992 to 1998.  I was a founder of the Police Practices Coalition in Boston and I am the current President of the National Police Accountability Project of the National Lawyers Guild.

5.      I have lectured on the subject of police civil liability for Massachusetts Continuing Legal Education, Inc. (MCLE), Suffolk Law School Advanced Legal Education, Georgetown Law Center, MATA, MBA, FBI National Academy, New England Associates, National Lawyers Guild (NLG), ATLA, and several law schools and colleges.

6.      I have particular expertise in handling cases alleging unconstitutional strip searches. The first case I handled alleging an unconstitutional strip search was in 1984. I have represented the plaintiffs in fifteen cases alleging illegal strip-searches (including this case). In addition to these cases, I have represented individuals whose illegal strip search claims were settled without litigation.

7.      In addition to this case, I have been lead counsel in three class actions alleging unconstitutional strip searches which have been resolved: *Mack v. Suffolk County,* 191 F.R.D. 16 (D.Mass. 2000)*, Connor v. Plymouth County,* No. 00-10835-RBC, and *Nilsen v. York County,* 219 F.R.D. 19 (D.Me. 2003). I have been hired to consult with counsel in a class action lawsuit alleging illegal strip searches in a jail in Louisiana.  I have also been lead counsel in two other class actions alleging violations of civil rights which sought primarily injunctive or declaratory relief and co-lead counsel in a consumer class action in Massachusetts state court. Currently, I am lead counsel in a class action lawsuit against the Sheriff of Suffolk County regarding inhumane conditions at the jail.

8.      I have been a guest speaker on the subject of class actions in Professor Karen Blum's civil procedure class at Suffolk University Law School.

9.      In May 2005, I served as the chair and as a speaker at two seminars sponsored by the Suffolk University Law School Center for Advanced Legal Studies:  "Introduction to Section 1983" and "Advanced Police Misconduct Litigation."  In April 2004, I was on the faculty for a one-day seminar at Georgetown University Law Center on Prison Litigation. I spoke on the subject of "Fourth Amendment Rights of Prisoners" along with Massachusetts Judge and former Sheriff Robert Rufo. My presentation and written materials focused on the constitutionality of strip searches. I was also on a panel at Georgetown discussing "Litigating Prison Conditions and Excessive Force Claims." In October 1999, I was a panelist on the topic of "Strip-searches: Yes or No?" at the International Criminal Justice Expo & Conference sponsored by Northeastern University College of Criminal Justice, in Boston, MA.

10.     I have authored several articles on civil rights litigation including "Damages Actions Under Section 1983" in Federal Civil Litigation in the First Circuit, (co-author) MCLE, April 1995; "Evaluating Police Misconduct Cases," Trial Magazine, December 1997; "Plaintiff's Strategies for Avoiding Summary Judgment on Municipal Liability Claims for Failure to Act," 2 Massachusetts Governmental Liability Reporter 1 June 1988 and "Attorney's Fee Awards: Calculation in the Wake of *Hensley* and *Blum*," Police Misconduct and Civil Rights Law Report, Vol. l No. 7, Summer 1984. I served as the editor for the "Civil Rights Forms Book," ATLA Civil Rights Section, June 1998.

11.     Lawyers from across the country consult with me on civil rights issues. Lawyers in Rhode Island, New York, New Jersey, Minnesota, Michigan, Illinois, Washington D.C., Florida,

Louisiana, California, Washington, and other states have consulted with me on the subject of strip searches.

13.    Most of my work is performed on a contingent fee basis. I have been retained on an hourly-rate basis by counsel in Louisiana to consult on a strip search class action alleging unlawful strip searches of pre-arraignment detainees. I bill my time at the rate of $385 per hour for my work on this case. My bills are paid within one month of performing services.

13.    I approached settlement in this case with the benefit of my experience in *Mack*, *Connor* and *Nilsen* as well as information from lawyers who had handled similar strip-search class actions in other states and my knowledge of those cases. In my opinion, the settlement in this case is fair in light of the circumstances.

14.    Class members in this case will not have to disclose confidential psychiatric or medical records, nor will they have to disclose the details of their arrests and strip-searches publicly. This allows people to obtain vindication for a violation of their right to privacy without being forced to give up their privacy. Anonymity is important to class members in strip search cases.

15.    My firm began working on this case when Charles Ryan IV contacted me in late December 2004. We filed this case about three weeks later.

16.    The summary of time spent by members of the firm, which is attached to the affidavit of Attorney Myong J. Joun, is accurate. It is based on contemporaneous time records. By the time the settlement funds are disbursed we will have spent almost three years working on this case without any compensation.  The firm has paid  $1,687.61 for litigation costs and without any reimbursement.

17.    The class representative, Charles Ryan IV, agreed that an attorney's fee of one-third of the settlement fund is reasonable. He signed a fee agreement providing a minimum fee of one-third of the amount of any recovery or settlement.

I declare under penalty of perjury that the foregoing is true and correct, this 15th day of June, 2007.


                        /s/ Howard Friedman
                        _____
                        Howard Friedman
                        Law Offices of Howard Friedman, P.C.
                        90 Canal Street, 5th Floor
                        Boston, MA 02114-2022
                        (617) 742-4100


3

# RESUME

**HOWARD FRIEDMAN**
90 Canal Street, 5th floor
Boston, MA 02114
(617) 742-4100

## LEGAL EXPERIENCE

LAW OFFICES OF HOWARD FRIEDMAN P.C.                September, 1989 - present
90 Canal Street, Boston, MA
    Litigation practice emphasizing plaintiff's civil rights and personal injury cases.

AVERY & FRIEDMAN                Partner, January 1984 - August, 1989
Boston, MA                Associate, October 1981 - December, 1983
    Partner, litigation firm.
  Practice in the areas of civil rights, personal injury and criminal defense.

GREATER BOSTON ELDERLY LEGAL SERVICES                January - September 1981
Boston, MA
    Staff Attorney.

MERRIMACK VALLEY LEGAL SERVICES                October 1978 - December 1980
Lawrence, MA
    Staff Attorney, elder unit.

PRISONERS' RIGHTS PROJECT                August 1977 - June 1978
(Currently Massachusetts Correctional Legal Services)
Boston, MA
    Staff Attorney.

## EDUCATION

    Northeastern University School of Law, Boston, Massachusetts
    J.D., May 1977

    Goddard College, Plainfield, Vermont
    B.A., May 1974

## BAR ADMISSIONS

| | |
|---|---|
| Supreme Court of the United States of America | 1986 |
| Supreme Judicial Court of Massachusetts | 1977 |
| United States Court of Appeals for the First Circuit | 1982 |

FRIEDMAN 2

Federal District Court of Massachusetts          1978
Supreme Court of Illinois (inactive)             1978

**BAR ACTIVITIES**

Massachusetts Bar Association (MBA)
    Individual Rights and Responsibilities Section,
    Police Misconduct Committee, Chairperson    1988 -1997
    Section Council                             1991 - 1995
American Association for Justice
(Formerly Association of Trial Lawyers of America)
    Steering Committee, Civil Rights Section    1995-2000
    Chair, Civil Rights Section                 1996- 1997
    Vice-chair, Civil Rights Section            1995 -1996
National Police Accountability Project
    President                                   2003- present
    Treasurer                                   2002- 2003
American Civil Liberties Union of Massachusetts
    Cooperating attorney
Massachusetts Academy of Trial Lawyers
Federal Bar Association, Massachusetts chapter
Boston Inn of Court
National Lawyers Guild (NLG)

**HONORS**

Selected as a "Massachusetts Super Lawyer" by Law        2004, 2005, 2006
and Politics Magazine.

Lawyer of the Year, Massachusetts Chapter NLG            May, 2004

**LECTURER**

Panelist, Civil Rights "Qualified Immunity"              June 2007
2007 Judicial Conference hosted by the
District of Massachusetts.

Panelist, "Access to Justice" part of a series on        June 2007
"Living the American Dream," sponsored by
United Way of the Massachusetts Bay, Boston, MA

Panelist, "Major shifts in civil rights law since 1977," May, 2007
Northeastern University School of Law, Alumni
Weekend, Boston, MA

FRIEDMAN 3

"Beyond Monetary Compensation, Providing Services          March 2007
to Exonerees" Innocence Network Conference,
Cambridge, MA

"Living the Dream in Greater Boston" speaker on          June, 2006
"Justice and the American Dream" sponsored by
United Way of the Massachusetts Bay, Boston, MA

"The Effects of the War on Terror on Civil Rights          March, 2006
Bates College, Lewiston, Maine

"Civil Claims for Wrongful Conviction,"          November, 2005
Boston University School of Law, Prof. Stanley
Fisher's Seminar

"Compensation for Wrongful Convictions"          June, 2005
Boston Bar Association, Criminal Law,
Young Lawyer and IRR Section, Boston, MA

"Advanced Police Misconduct Litigation,"          May, 2005
Program Chair, and Speaker on "Police Use
of Less Lethal Force," Suffolk University Law School
Center for Continuing Professional Development
Boston, MA

"Introduction to §1983 Civil Rights Litigation,"          May, 2005
Program Chair, and Speaker on "Evaluating a Police
Misconduct Case and Drafting the Complaint"
Suffolk University Law School Center for Continuing
Professional Development, Boston, MA

"Policing public spaces," Emerson College,          March, 2005
Boston, MA

"Compensation for Erroneous Convictions"          March, 2005
panelist, brown bag lunch, Boston Bar Association
Boston, MA

"Police Misconduct Litigation,"          January 2005
Program Chair, and panelist, "Attorney's Fees
issues in Civil Rights Cases" Suffolk University
Law School Center for Continuing Professional
Development, and University of Washington

FRIEDMAN 4

School of Law, Seattle, WA

| | |
|---|---|
| "Civil Rights and the War on Terror," Bates College, Lewiston, Maine | December, 2004 |
| "Police use of 'less lethal' weapons," Great Boston Civil Rights Coalition, Boston, MA | December, 2004 |
| "Police Misconduct," Emerson College Sociology class, Boston, MA | November, 2004 |
| "David vs. Goliath, Managing the Huge Case in the Small Firm," Boston Bar Association | May, 2004 |
| Prison Litigation, "Fourth Amendment Rights of Prisoners"and "Litigating Prison Conditions and Excessive Force Claims," Georgetown University Law Center, Washington, D.C. | April, 2004 |
| "Class Actions," guest lecture at Suffolk University School of Law, civil procedure class, Boston, MA | February, 2004 |
| Prison Conditions in Massachusetts, panel member, Suffolk Law School. Boston, MA | November, 2003 |
| Achieving Systemic Change Through Police Misconduct Litigation, NLG, Minneapolis, MN | October, 2003 |
| "Class Actions," guest lecture at Suffolk University School of Law, civil procedure class, Boston, MA | February, 2003 |
| Federal Court Judicial Forum 2002, member of lawyer panel questioning federal judges, MCLE, Boston, MA | November, 2002 |
| "Representing Indigent Plaintiffs in Federal Court," speaker on "Ethical and Practical Issues" MCLE, Boston, MA | June, 2002 |

FRIEDMAN 5

| | |
|---|---|
| "Class Actions," guest lecture at Suffolk University School of Law, civil procedure class, Boston, MA | February, 2002 |
| "Civil Rights after September 11, 2001," Suffolk University School of Law, Boston, MA | February, 2002 |
| "Class Actions," guest lecture at Suffolk University School of Law, civil procedure class, Boston, MA | February, 2001 |
| "Civil Rights Violations: Municipal and Supervisory Liability" NLADA, Student Legal Services Conference, Boston, MA | July, 2000 |
| "Representing Indigent Plaintiffs in Federal Court," speaker on "Practical Considerations for the Novice Litigator" MCLE, Boston, MA | May, 2000 |
| Panelist, "Strip searches: Yes or No?" Criminal Justice '99 Boston, International Criminal Justice Expo & Conference, Northeastern University College of Criminal Justice, Boston, MA | October, 1999 |
| "Suing the Government: Section 1983 in 1988" Massachusetts Bar Association, Boston, MA | November, 1998 |
| "Suing the Cops," National Lawyers Guild, Boston University School of Law, Boston, MA | October, 1998 |
| Panelist Prof. Karen Blum's class on police misconduct, Suffolk University School of Law, Boston, MA | October, 1998 |
| "Representing Indigent Plaintiffs in Federal Court," speaker on police misconduct and prisoner civil rights litigation MCLE, Boston, MA | June, 1998 |

FRIEDMAN 6

"Internal Investigations of Police Misconduct,"          May, 1998
Regional Roundtable of Police Integrity,
Boston, MA

"Eliminating Racism, Sexism and                          July, 1997
Homophobia in Jury Selection,"
panelist, Association of Trial
Lawyers of America, San Diego, CA

"Internal Affairs in the Boston Police                   June, 1997
Department,"  Greater Boston
Civil Rights Coalition, Boston, MA

"Evaluating and Mediating Civil                          June, 1997
Rights Cases," MBA, Boston, MA

"Plaintiff's perspective on municipal                    November, 1996
liability,"guest speaker, Prof. Karen Blum's
police misconduct class, Suffolk University
School of Law, Boston, MA

"Police misconduct litigation,"                          July, 1996
moderator, Association of Trial
Lawyers of America, Boston, MA

"Applying the Mass Civil Rights Law,"                    June, 1996
MCLE, Boston, MA

"Proving municipal liability,"  guest speaker,           April, 1996
Prof. Karen Blum's class on police
misconduct, Suffolk University
School of Law, Boston, MA

"Municipal and Supervisory Liability                     Feb., 1996
for Police Misconduct," guest speaker
Vermont Law School, South Royalton, VT

"Civil Liability of Campus Police,"                      Sept., 1995
MBA, Boston, MA

"SLAPP Suits: Offensive Defensive Litigation,"           May, 1995
 MBA, Boston, MA

FRIEDMAN 7

| | |
|---|---|
| "Recent Developments in Police Misconduct Litigation,"    Suffolk University School of Law, Boston, MA | May, 1995 |
| Federal Civil Litigation in the First Circuit, "Section 1983 Actions," MCLE, Boston, MA | April, 1995 |
| "Plaintiff's perspective on municipal liability," guest speaker, Prof. Karen Blum's  police misconduct class, Suffolk University School of Law, Boston, MA | April, 1995 |
| "Representing criminal defendants with potential civil rights claims,"  Boston Bar Association, Bar Advocates, Boston, MA | April, 1995 |
| "No Knock Searches," panelist, Boston University School of Law, Criminal Justice Society and Civil Liberties Association Boston, MA | March, 1995 |
| "Avoiding Police Misconduct Suits," Boston Police Academy, Recruit Class, Boston, MA | December, 1993 |
| "Hate Crimes,"  panelist Hebrew College, Brookline, MA | December, 1993 |
| "How To Handle Tort Claims Against the Government," Massachusetts Bar Association, Boston, MA | May, 1993 |
| "Practical Aspects of Trying a Police Misconduct Case," Massachusetts Bar Association, Boston, MA | April, 1993 |
| "Contingency Fee Practice," Massachusetts Bar Association, Boston, MA | March, 1993 |

FRIEDMAN 8

| | |
|---|---|
| "Boston Police," Greater Boston Civil Rights Coalition, Boston, MA | February, 1993 |
| "Police Misconduct," panelist, Northeastern University School of Law, Alumni Day, Boston, MA | October, 1992 |
| "Damages under §1983," Federal Litigation Training, Northeast Regional Training Center, Legal Services Corporation, Westminster, MA | October, 1992 |
| "Police Misconduct, Excessive Force Claims," National College of Advocacy, Association of Trial Lawyers of America, Washington, D.C. | July, 1992 |
| "Bringing Civil Suits Against Law Enforcement," FBI National Academy Associates of New England, North Conway, NH | June, 1992 |
| "Hate Crimes and Enforcing State Civil Rights," Massachusetts Continuing Legal Education, Boston, MA | June, 1992 |
| "Hot Topics for Litigators," Massachusetts Bar Association, Springfield, MA | May, 1992 |
| "Recent Developments in Section 1983 Police Misconduct Litigation," Massachusetts Bar Association, Boston, MA | October, 1991 |
| "Curbing Police Misconduct," Greater Boston Civil Rights Coalition, Boston, MA | October, 1991 |
| "Recent Developments in Section 1983 Police Misconduct Litigation," Massachusetts Bar Association, Boston, MA | November, 1990 |

FRIEDMAN 9

"Civil Rights Training," Panelist, Civil                    May, 1990
Rights Community Forum, Greater Boston
Civil Rights Coalition and the City of
Boston, Boston, MA

"Recent Developments in Civil Rights                        February, 1990
Liability," "Litigating and Collecting
Attorney's fees," Suffolk University Law
School, Center for Continuing Education,
Boston, MA

"Recent Developments in Section 1983                        September, 1989
Police Misconduct Litigation,"
Massachusetts Bar Association,
Boston, MA

"Civil Liability for High Speed                             March 1989
Police Pursuit," New England
School of Law, Boston, MA

"Trial of a Tort Claims Act Case,"                          October 1988
Practice Under the Massachusetts
Tort Claims Act, Massachusetts
Academy of Trial Lawyers, Boston, MA

"Civil Rights Issues in Employment                          September 1988
Litigation," Massachusetts Bar
Association, Labor Law Section,
Springfield, MA

"Conflicts of Interest In §1983                             January 1988
Litigation," Boston Bar Association
Municipal Law Committee, Boston, MA

"Preparing Municipal Liability                              May 1987
Claims," National Lawyers Guild,
Washington, D.C.

"Attorney's Fees Under the Civil                            May 1987
Rights Act," National Lawyers Guild,
Washington, D.C.

"Liability for Negligence in                                March 1987

Training and Supervision,"
Civil Liability Institute of
Massachusetts, Needham, MA

"Municipal Liability for                          April 1986
Civil Rights Violations Under §1983,"
Suffolk University Law School
Center for Continuing Professional
Development, Boston, MA

"Police Misconduct Litigation,"                   March 1986
Civil Liability Institute of
Massachusetts, Conference on Civil
Liability of Law Enforcement Officials
Framingham, MA

Massachusetts Union of Campus Police,            September 1985
Civil Liability of Police
Framingham, MA

"Civil and Vicarious Liability of                February 1985
Police," International Association of
Chiefs of Police, Daytona Beach, FL

"Civil Rights Attorney's Fees,"                  June 1984
National Lawyers Guild Skills Seminar,
Portland, Oregon

## PUBLICATIONS

"Attorney's Fee Awards: Calculation in the wake of <u>Hensley</u> and <u>Blum</u>," Police Misconduct and Civil Rights Law Report, Vol. l No. 7, Summer 1984.

"Plaintiff's Strategies for Avoiding Summary Judgment on Municipal Liability Claims for Failure to Act," 2 Massachusetts Governmental Liability Reporter 1 (June, 1988).

Interview on Indemnification under G.L. c. 258, 2 Massachusetts Governmental Liability Reporter 4 (March, 1989).

Interview on Conflicts of Interest in Municipal Representation, 3 Massachusetts Governmental Liability Reporter 32 (September, 1989).

FRIEDMAN 11

"Civil Consequences of Criminal Cases" in Blumenson, Ed., <u>Massachusetts Criminal Defense</u>, Butterworth Legal Publishers, 1990.

"42 U.S.C. §1983," with Joseph Kaigler, in <u>Federal Civil Litigation in the First Circuit</u>, MCLE, April 1995.

"Evaluating Police Misconduct Cases," <u>Trial Magazine</u>, December 1997.

Editor, "Civil Rights Forms Book," ATLA Civil Rights Section, June, 1998.
"Chapter 50. Strategies in Litigating Intentional Tort Cases" with Charles J. DiMare in *ATLA's Litigating Tort Cases*, ATLA's Litigating Tort Cases, Conlin and Cusimano Ed.s April, 2004

## SIGNIFICANT CASES

<u>Kibbe v. City of Springfield</u>, 480 U.S. 257 (1987) Brief for amicus curiae, ACLU and Civil Liberties Union of Massachusetts.  (Municipal liability for civil rights violations.)

<u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378 (1989) Brief for amicus curiae ACLU and ACLU of Ohio.  (Municipal liability for civil rights violations.)

<u>County of Sacramento v. Lewis</u>, 118 S.Ct. 1708 (1998) Brief for amicus curiae ATLA. (The "shocks the conscience" standard applies to police pursuits.)

<u>Pinshaw v. Metropolitan District Commission</u>, 406 Mass. 687 (1988)  (Indemnification for civil rights violations.)

<u>Lewis v. Kendrick</u>, 940 F.2d 25 (1st. Cir. 1991) Amicus brief for the Civil Liberties Union of Massachusetts. Availability of attorney's fees in nominal damages cases.

<u>Ocasio v. City of Lawrence</u>, 788 F.Supp. 99 (D.Mass. 1992) §1983 class action for declaratory and injunctive relief as well as damages challenging a policy of the City of Lawrence Police Department requiring the unlawful seizure of food stamp identification cards.

<u>Melendez v. City of Worcester</u>, 870 F.Supp. 11 (D.Mass. 1994) Liability of police officers under §1983.

<u>Pasqualone v. Gately</u>, 422  Mass. 398 (1996) (§1983 liability for the warrantless seizure of firearms and ammunition.

<u>Zurakowski v. D'Oyley</u>, 46 F. Supp. 2d 87 (D. Mass. 1999) False arrest and the Massachusetts Civil Rights Act.

FRIEDMAN 12

Mack v. Suffolk County, 191 F.R.D. 16 (D. Mass. 2000) Certifying a class under F.R.Civ.P. 23(b)(2) and (3) for women who were strip searched at the Suffolk County jail based on a blanket strip search policy.

Ford v. Suffolk County, 154 F. Supp. 2d 131 (D.Mass. 2001) Granting summary judgment on declaratory relief and liability for women who were strip searched while being held pre-arraignment at the Suffolk County jail.

Norris v. Murphy, 2003 WL 21488640 (D. Mass. 2003) Granting a motion in limine to preclude testimony of the defense expert for failure to comply with Rule 26(a)(2)(B).

Norris v. Murphy, 287 F.Supp.2d 111 (D. Mass. 2003) Awarding compensatory attorney's fees after a nominal damages verdict in a first amendment case.

Miller v. City of Boston, 297 F.Supp.2d 361, (D.Mass.2003)

Nilsen v. York County, 219 F.R.D. 19 (D.Me. 2003)Certifying a class under F.R.Civ.P. 23(b)(3) for detainees who allege that the changeover process at the York County Jail is an illegal strip search.

Tardiff v. Knox County, 365 F.3d 1 (1st. Cir. 2004) Affirming class certification in strip search cases against both Knox County and York County in Maine.

Limone v. United States,   336 F.Supp.2d 18, 42-48 (D.MA. 2004) Denying defendant's motions to dismiss a Federal Tort Claims Act case for the son of a man who was wrongfully convicted of murder.

## COMMUNITY ACTIVITIES

| | |
|---|---|
| CASCAP (Cambridge and Somerville Cooperative Apartment Program), Board member | 1983 -2003 |
| Police Practices Coalition, steering committee | 1991 - 2000 |
| Massachusetts Attorney General's Civil Rights Task Force, police committee | 1992 - 1998 |
| Cambridge and Somerville Mental Health Center, Human Rights Committee, Chairperson | 1985 - 1990 |
| Cambridge Housing Authority, Grievance Panel, Impartial member, Chairperson | 1987 - 1990 |

FRIEDMAN 13

| | |
|---|---|
| Cambridge Somerville Mental Health/<br>Retardation Area Board, member, | 1983 - 1988 |
| Vice-President | 1985 - 1988 |
| | |
| Northeastern University School<br>of Law, Prisoners Assistance Project,<br>Board member | 1979 - 1985 |
| | |
| Elder Cooperative Housing Option,<br>Board member | 1981 - 1983 |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
CHARLES V. RYAN IV, on behalf of himself            )
and on behalf of others similarly situated,         )
                Plaintiffs                           )
                                                    )
        v.                                           )        Civil Action No. 05-30017-MAP
                                                    )
ROBERT J. GARVEY, and PATRICK J.                    )
CAHILLANE in their individual capacities,           )
                Defendants                            )
_____            )

## AFFIDAVIT OF MYONG J. JOUN

        I, Myong J. Joun, state as follows:

        1.      I am an attorney in good standing in the Commonwealth of Massachusetts and an
Associate at the Law Offices of Howard Friedman, P.C.

        2.      I am a member of the Bar of the Supreme Court of the United States of America, the
Supreme Judicial Court of Massachusetts, the United States Court of Appeals for the First Circuit,
and the United States District Court for the District of Massachusetts.

        3.      I received a J.D. from Suffolk University Law School in 1999 and a B.A., *magna cum
laude*, from the University of Massachusetts in 1994.

        4.      Since 1999, my area of practice has been civil rights litigation with an emphasis on
police misconduct, prisoners' rights and discrimination cases. A copy of my current resume is
attached to this affidavit.

        5.      I am a member of several bar associations including the American, Massachusetts and
Federal Bar Associations, the Association of Trial Lawyers of America, the Massachusetts Academy
of Trial Attorneys and the Massachusetts Association of Criminal Defense Lawyers. I am a past-
President of the Asian American Lawyers Association of Massachusetts. I was a Delegate to the
Massachusetts Bar Association's House of Delegates, the governing body of the MBA, and a
member of the MBA's Executive Management Board. I have also served on two Section Councils
of the MBA. In addition, I have served on the Board of Directors of the Lawyers Committee for Civil
Rights Under Law of the Boston Bar Association since 2003 and the Board of Trustees of the
Massachusetts Law Reform Institute since 2001.

        6.      I have lectured on the subjects of criminal justice, civil rights and civil liberties at bar
associations, law schools, colleges, shelters, training centers and juvenile facilities.

**CLASS MEMBERS**

7.      After obtaining the electronic booking data from Hampshire County Jail, I analyzed the data containing 913 booking admissions at the jail to determine the size and composition of the class.

8.      I was able to exclude 647 bookings as not meeting the class definition based on booking dates and criminal charges.

9.      Because the Jail did not record in its booking computer system why or how a prisoner was brought to the Jail, a determination whether the individuals were pre-arraignment or pretrial detainees could not be made from examining the booking data alone for the remaining 266 bookings. I visited the Jail on three different dates to review 266 inmate booking files to determine class membership.

10.     Based on the above analysis and review, by counting Hampshire County Jail's unique Inmate ID Number that is assigned to every prisoner at booking, I determined that there were 90 individuals who appeared to fit the class definition. The defendants agreed with this determination.

11.     The Claims Administrator reported to me that, as of June 14, 2007, 17 claim forms have been received and that 16 claims are expected to be approved.[1] This represents an 18% participation rate thus far. The claims period will remain open until June 29, 2007.[2] It is likely that additional claims will be filed during the remaining two weeks. Based on my experience in *Mack, Connor* and *Nilsen*, I estimate that 20% of the class will ultimately participate.

12.     The Claims Administrator reported to me that, as of June 14, 2007, no objections to the settlement have been received. Further, I am not aware of any negative comments from any claimants or callers about the settlement.

13.     The Claims Administrator reported to me that, as of June 14, 2007, no notices of exclusion (opt-outs) were received.

14.     If 20% of the class ultimately participates, there will be 18 claims made. I estimate that, after deducting an attorney's fee in the amount of $68,333.33, litigation costs of $1,700, claims administration expenses of $6,350 and an incentive bonus of $10,000, class members will each receive $5,930.83. The total amount distributed to all class members will be $118,616.67.

---

[1] One class member submitted 2 claim forms but the Claims Administrator will treat it as one claim.

[2] The deadline for class members to have postmarked their settlement claim forms is June 22, 2007. The Court approved a one-week amnesty period until June 29, 2007, during which time claim forms will be accepted as timely.

### NOTICE

15.     After this Court approved the *Notice of Class Action Settlement* and *Settlement Claim Form*, on February 9, 2007, the Claims Administrator sent the notice and form via first class mail postage prepaid to 90 individuals at 128 addresses. Ex. 2(B) contains true and accurate copies of the notice, claim form and envelope. Of these, mailings to 28 individuals were returned as undeliverables because of bad addresses.

16.     A *Newspaper Notice Ad* was published in the *Springfield Republican* on January 23, 2007, in the *Daily Hampshire Gazette* on January 27-28, 2007, and in the *Greenfield Recorder* January 27, 2007. Exhibits 2(C)(D) and (E) are true and accurate copies of the *Ad*s.

17.     In addition, there were newspaper articles in the Springfield Republican, Boston Globe, Boston Herald, Daily Hampshire Gazette, Northampton Examiner, and news reports on WBZ 1030 radio, WCSH-6, WABC-40, WCBV-5 and WWLP-22 television news about the settlement. Exhibit 2(F) contains true and accurate copies of such coverage.

18.     On January 17, 2007, I mailed a copy of the Notice, attached as Exhibit 2(G), to Attorney Rosemary Tarantino for posting at the Jail where it could be easily viewed by prisoners. Since Febraury 2, 2007, the Jail has posted a notice in two locations in the booking area of the jail. Exhibit 2(H) are true and accurate copies of the photographs depicting the Jail postings of the Notice.

19.     My firm maintained the class action website at www.hampshiresheriffclassaction.com. The *Notice of Settlement* and *Claim Form* was posted on the website and has been available for download since February 9, 2007. There have been more than 175 unique IP address users who have visited the website more than 500 times. The notice and form was also sent to anyone who requested it by writing to the Claims Administrator.

20.     After processing all of the claim forms, within one week of this Court's granting of final approval of the settlement, the Claims Administrator will send a *Notice of Claim Approval* to all class members who have timely submitted a completed claim form and a *Notice of Claim Denial* to all claimants who do not meet the class definition.

21.     *Notices of Claim Denial* will inform the claimant of the procedures to appeal. After careful consideration of the appeal, the Claims Administrator will send a *Notice of Decision of Appeal* informing claimants whether their claim has been approved or denied. If the claim is denied after an appeal, the notice will explain how the claimant can appeal to the Court.

22.     The deadline to submit claim forms is June 22, 2007. This Court allowed an amnesty period so that claim forms postmarked by June 29, 2007, will be treated as timely filed. Claim forms postmarked after June 29, 2007, will be denied as untimely. The notice will provide procedures to appeal to the Court.

## OTHER STRIP SEARCH CLASS ACTION SETTLEMENTS

23.     I spoke with Attorney Barrett Litt, class counsel in *Williams v. Block*, C.D.CA. CA. No. 97CV03826 that settled for $27 million on behalf of approximately 400,000 class members. 36,626 claims were approved which is a participation rate of 9.15%.

24.     I spoke with Attorney Alexandra Lahav, formerly an associate of Attorney Richard Emery, class counsel in *Tyson v. City of New York*, S.D.N.Y. CA. No. 97CV3762, that settled for at least $19.5 million and up to $50 million on behalf of approximately 50,000 class members. She reported that approximately 6,000 people filed claims, which is a participation rate of 12%.

25.     In *Nilsen v. York County*, D.Me. C.A. No. 02-212-PH, the case settled for $3.3 million on behalf of approximately 7,600 individuals. About 1,400 people filed claims, which is a participation rate of 18%.

26.     *Mack v. Suffolk County*, D.Mass. CA. No. 98-12511, was a $10 million settlement for an approximately 5,400 all-female class where 1,495 claims were approved. The participation rate of 28% is the highest participation rate that I have found in a strip search class action. Class members received individual awards ranging from $454.58 to $9,091.46. The court awarded class counsel $3 million of the settlement fund for attorney's fees (30%) plus $142,101 for litigation costs and $110,247 for claims administration expenses. The court also approved an incentive bonus of $15,000 for serving as a class representative. The settlement received final approval in October 2002.

27.     In *Connor v. Plymouth County*, D.Mass. CA. No. 00-10835, the case settled for $1.35 million on behalf of approximately 700 female class members in two sub-classes: Marshfield sub-class consisting of women who were strip searched at a county lockup facility and PCCF sub-class consisting of women who were strip searched before special arraignment sessions at a county jail. A total of 105 claim forms representing 133 total claims were approved (28 class members were in both sub-classes), a participation rate of 15%. Marshfield class members received $5,859 and PCCF class members received $7,705. Claimants received an award for just one strip search. The court awarded class counsel $429,000 of the settlement fund for attorney's fees (33%), $8,359 for litigation costs, and $25,632 for claims administration expenses. The court also approved $7,500 to each of the four class representatives and $3,500 to one class member who assisted class counsel for a total of $33,500 in incentive awards. The court granted final approval in March 2004.

## ATTORNEY'S FEES AND EXPENSES

28.     The members of my firm and I kept contemporaneous records of the time we spent on each discrete task which were entered through the Amicus Attorney and Time Matters case management software and synchronized with the time and billing software. I generated an accurate computer report of all the time records recorded in this case by all of the attorneys and paralegals and report of all expenses incurred. A summary of attorney's fees and litigation expenses is attached as Exhibit 2(I).

29.     In addition to Attorney Howard Friedman and I, the following individuals worked on this case:

a.     <u>Attorney Jennifer L. Bills</u>. She joined the firm as an Associate in 2004. Before joining the firm, she served as a law clerk to the Honorable Gene Carter of the United States District Court for the District of Maine in 2001-2002, and as an Associate for Zalkind, Rodriguez, Lunt & Duncan, LLP from 2002-2004. She is a 2001 graduate of Northeastern University School of Law and a 1991 graduate of Haverford College. She was named as a "rising star," one of the top young lawyers in Massachusetts, by the publishers of Boston Magazine and Law & Politics in 2005, 2006 and 2007.

b.     <u>Paralegal Neal S. Alpert</u>. He is a 2000 graduate of the University of Massachusetts. He has been a freelance journalist for more than five years and was an editor/researcher for the book *Vote Your Conscience: The Last Campaign of George McGovern* (Praeger 2003). He has been employed at the firm since March 2005.

c.     <u>Paralegal Ajay Sequeira</u>. He is a 1999 graduate of Boston College. He is also an instructor at Princeton Review teaching LSAT and GMAT courses. He was employed at the firm from August 2003 through March 2005.

30.     Review of the billing records indicates that not all time spent on the case was billed. Despite best efforts, inevitably some time was negligently not recorded. If an attorney or paralegal failed to record time, the time was not billed. Time was recorded only from contemporaneous records of the time.

31.     As of June 14, 2007, the attorney's fees were $48,352.50 and litigation costs were $1,687.61 for a total of $50,040.11 in this case.

32.     Attorney Howard Friedman recorded 21.90 hours in this case which multiplied by his hourly rate of $350 equals $7,665. My recorded time of 170.30 hours multiplied by my hourly rate of $225 equals $38,317.50. Attorney Jennifer L. Bills' recorded time of 12.90 hours multiplied by her hourly rate of $150 equals $1,935. Two paralegals who assisted us on this case spent 6.20 hours, which multiplied by an hourly rate of $75 equals $457.50.

33.     Our work is not done yet; it will continue until all of the claims are paid to class members in 2007, tax form 1099's are issued in 2008 and a final accounting is done in 2009. Based on our experience in the *Mack, Connor* and *Nilsen* class actions, I estimate that the attorneys will need to spend approximately 20 additional hours.

34.     As of June 14, 2007, costs that were necessary for this litigation total $1,687.61. Itemization of these expenses as well as the actual bills are available for inspection on request.

35.    On June 13, 2007, Roger Bauser, Vice President of Business Development at Analytics Inc., submitted an estimate for projected fees for services and projected costs that will be necessary to administer the settlement totaling $6,350.

I declare under penalty of perjury that the foregoing is true and correct this 15th day of June, 2007,

/s/ Myong J. Joun

_____

Myong J. Joun
Law Offices of Howard Friedman, P.C.
90 Canal Street, 5th Floor
Boston, MA 02114-2022
(617) 742-4100

# MYONG J. JOUN

Law Offices of Howard Friedman, P.C.                          Associate, May 1999-present

> Plaintiff's civil rights litigation emphasizing police misconduct, wrongful convictions, class actions, discrimination in employment and housing, prisoners' rights and personal injury matters.

## EDUCATION

Suffolk University Law School                                 J.D., May 1999
Boston, Massachusetts
> SJC Rule 3.03 student attorney at Suffolk Legal Services (SU Clinica)
> in Chelsea, Massachusetts, representing indigent tenants (Sept. 1997-May 1999)

University of Massachusetts                          B.A., December 1994
Boston, Massachusetts                                    *Magna Cum Laude*
> Dual major in Political Science/Economic, Political and Social Philosophy
> Minor in Black Studies

## MILITARY

United States Army, Massachusetts National Guard                      1990-1996
> 1-101st Battalion, 26th Infantry Division
> 1-182nd Battalion, 42nd Infantry Division (Mechanized)

## BAR ADMISSIONS

United States Supreme Court                                           2003
Supreme Judicial Court of Massachusetts                               1999
United States Court of Appeals for the First Circuit                 2000
District Court of Massachusetts                                       2000

## BAR ACTIVITIES

American Bar Association                                      1999-present
> Individual Rights and Responsibilities Section

Asian American Lawyers Association of Massachusetts           1999-present
> President (December 2003-2005)
> Vice-President (May 2003- December 2003)
> Chair, Advocacy Committee (2002-2003)
> Chair, Student Mentorship (2001-2002)
> Chair, Membership Committee (2000-2001)

Association of Trial Lawyers of America                       1999-present
> Civil Rights Section

Boston Bar Association                                        1999-present

Federal Bar Association, Massachusetts chapter               2003-present

Massachusetts Bar Association                                                                    1999-present
    At-Large Member, House of Delegates (2004-2006)
    Executive Management Board Member (2004-2005)
    MBA Diversity Task Force Member (2006-present)
    ABA/MBA Delegation to Bristol County Jail (May 2003)
      to Assess Compliance with INS Detention Standards
    Council member, Individual Rights and Responsibilities Section (2001-2003)
    Council member, Small Firm and Solo Practitioners (2007-present)
    Police Misconduct Committee (1999-2001)

Massachusetts Academy of Trial Attorneys                                              1999-present

National Asian Pacific American Bar Association                                      2000-present
    Civil Rights Committee

National Lawyers Guild                                                                            1999-present

## LECTURER

"Civil Rights 101"                                                                                   October 2005
Moderator
17th Annual NAPABA National Convention
Chicago, IL

"Intersections Between Korematsu and the Current Administration's Fight Against Terrorism"   April 2005
Moderator
2005 NAPABA Northeast Regional Conference
Boston, MA

"USA Patriot Act, SAFE Act, and 'Enemy Combatants'"                          June 2004
Emerging Civil Rights Issues
2004 NAPABA Northeast Regional Conference
New Jersey Law Center, New Brunswick, NJ

"Asian Gangs in Massachusetts: Understanding the Growing Asian Gang Phenomenon     February, 2003
and Identifying Ways to Prevent, Intervene and Rehabilitate Gang Membership"
Moderator
Choate Hall & Stewart, Boston, MA

"Civil Liberties in a New America"                                                           October, 2002
Part of a Nationwide "First Monday" Campaign
Alliance for Justice
Boston University, Boston, MA

"Strip Searches and Civil Remedies"                                                    September, 2002
National Lawyers Guild Northeast Regional Conference
Western New England College School of Law, Springfield, MA

## PUBLICATIONS

"Challenging Unlawful Strip Searches," Association of Trial Lawyers of America, Civil Rights Section,
Vol. 11, No. 2, Winter 2004.

**CASE DECISIONS**

Howes v. Chesley, 20 Mass.L.Rptr. 350 (Suffolk Superior Ct. 2005) (Denying summary judgment for defendants who conducted suspicionless strip search of arrestee).

Nilsen v. York County, 382 F.Supp.2d 206(D.Me. 2005) (Granting final approval of class settlement); Nilsen v. York County,400 F.Supp.2d 265 (D.Me. 2005) (Approving class settlement); Nilsen v. York County, 400 F.Supp.2d 266 (D.Me. 2005) (Awarding attorneys' fees).

Shedlock v. Department of Correction, 442 Mass. 844 (2004) (Reversing award of summary judgment to defendants on plaintiff's claim that defendants failed to provide reasonable accommodation for his disability in violation of the Americans with Disabilities Act, the Rehabilitation Act and Article 114 of the Massachusetts Constitution).

Poore v. Town of Harwich, 2004 WL 2997699, 26 MDLR 270, MCAD Docket No. 98-BEM-1091 (Nov. 12, 2004) (Awarding $100,000 for emotional damages to a female high school coach for sex discrimination); Poore v. Town of Harwich, 2006 WL 1388759 (MCAD) (Affirming award plus statutory interest of 12% and awarding attorneys' fees).

Norris v. Murphy, 2003 WL 21488640 (D.Mass. 2003) (Granting motion in limine to preclude testimony at trial of the defense expert for failure to comply with Rule 26(a)(2)(B)); Norris v. Murphy, 287 F.Supp.2d 111 (D. Mass. 2003) (Awarding attorney's fees after a nominal damages verdict in a false arrest in retaliation of First Amendment case).

Ford v. Suffolk County, 154 F. Supp. 2d 131 (D.Mass. 2001) (Granting summary judgment on declaratory relief and liability for women who were strip searched while being held pre-arraignment at a jail).

Mack v. Suffolk County, 191 F.R.D. 16 (D. Mass. 2000)(Certifying a class under F.R.Civ.P. 23(b)(2) and (3) for women who were strip searched at the Suffolk County jail based on a blanket strip search policy).

**COMMUNITY ACTIVITIES**

| | |
|---|---|
| American Bar Foundation<br>    Fellow | 2005-present |
| Lawyers' Committee for Civil Rights Under Law of the Boston Bar Association<br>    Board of Directors | 2003-present |
| Massachusetts Law Reform Institute<br>    Board of Trustees | 2001-present |
| Police Practices Coalition | 1999 - present |
| National Police Accountability Project | 1999-present |
| Stop & Search Clinic, National Lawyer's Guild | |
|     TechBoston Academy, Dorchester, MA | November, 2004 |
|     Boys&Girls Club, Dorchester, MA | February, 2004 |
|     St. Ambrose Inn Homeless Shelter, Dorchester, MA | February, 2003 |
|     LARE Training Center, Chelsea, MA | November, 2002 |
|     Temporary Home for Women & Children, Boston, MA | November, 2001 |
|     DYS Residential Facility, Cambridge, MA | July, 2001 |

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

### PROOF OF CLAIM AND RELEASE

**WRITE ANY NAME AND ADDRESS CORRECTIONS BELOW** OR IF THERE IS NO PREPRINTED DATA TO THE LEFT, YOU MUST PROVIDE YOUR NAME AND ADDRESS HERE:

Name:

Address:

City:

State/Country and Zip Code:

10129HA520

JOUN MYONG
"90 CANAL STREET, 5TH FLOOR"
BOSTON, MA  02114

| | |
|---|---|
| CHARLES RYAN, et al, | ) |
| *Plaintiffs,* | ) |
| -vs- | ) |
| ROBERT J. GARVEY, et al., | ) |
| *Defendants.* | ) |

Civil Action No. 05-30017-MAP

CLAIM FORM

**Must be postmarked by June 22, 2007**

***Late claims will be denied.*** *You must complete and mail this Claim Form, postmarked by June 22, 2007, to: Please see below to learn how to file for a deceased class member.*

Ryan Claims Administrator
PO Box 2004
Chanhassen, MN 55317-2004

### Step One - Provide your basic information.

Please note that it is your responsibility to notify the Claims Administrator in writing at the above address if the address you provide changes.

LEGAL NAME: First: _____ M.I.: _____ LAST: _____

LEGAL ADDRESS: Street: _____

City: _____ State: _____ Zip code: _____

Home Phone: (____) _____ Work Phone: (____) _____ Cell Phone: (____) _____

Email: _____ SSN: ____ - __ - ____ Date of Birth: ___/___/___

Provide the following information about someone who will always know how to contact you.

Name: _____ Relation to you: _____

Address _____ City: _____ State: _____ Zip code: _____

Home Phone: (____) _____ Work Phone: (____) _____ Cell Phone: (____) _____

### To File for a Deceased Class Member:

To submit a Claim Form on behalf of a deceased class member, in **Step One**, give the class member's name and your contact information; and in **Step Three**, sign your own name and note your relationship to the class member. To receive a settlement check for a deceased class member, you must be appointed administrator or executor of the class member's estate and you must send documentation of your appointment to the Claims Administrator by June 22, 2007, or the claim will be denied. You may need to consult an attorney or probate court for more information on this process.

**Please check one box to indicate how your check should be handled if your claim is approved:**

☐ Mail the check to my address above.          ☐ Mail the check to this address:

Name: _____

*If you do not select any of these*          Address: _____
*options, the check will be sent to*
*your address above.*                         _____

City: _____

State: _____    Zip code: _____

**Step Two - Substitute W-9 Request for Taxpayer Identification Number.**

This should be your Social Security Number, unless you have been given a different number by the IRS for this purpose.

| | | | - | | | - | | | |
|---|---|---|---|---|---|---|---|---|---|

*(9 digits)*

The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the IRS that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding.

If you have been notified by the IRS that you are subject to backup withholding, you must cross out the word "not" and check here ☐.

**Step Three - Please sign under penalty of perjury that all of the information you provided in this form is true and accurate to the best of your knowledge and belief.**

It is important that your answers are truthful. If you sign this and you know that the statement is not true, you can be charged with perjury pursuant to 18 USCA § 1621, 28 U.S.C. § 1746.

| **Under penalty of perjury, I certify that all of the information provided on this form is true and correct:** | |
|---|---|
| (Signature) | (Date) |
| | |

**Step Four - Mail this form, postmarked by June 22, 2007.**

Mail this form to:   Ryan Claims Administrator          *This form must be postmarked by June 22, 2007, or*
                     P.O. Box 2004                      *your claim will be denied.*
                     Chanhassen, MN 55317-2004

NOTE:   After you mail in your claim form, the Claims Administrator will send you a notice to indicate that your claim for was received. This is your receipt - DO NOT LOSE IT. If you do not receive the notice, you must write to the Claims Administrator at the above address.

If you move, you must notify the Claims Administrator in writing so that your check will be sent to your new address.

You must cash your check within 60 days from the date the check was issued.

All questions regarding this lawsuit or the settlement should be addressed to the Claims Administrator at the above address.

2

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**
**Ryan v. Garvey, et al., Civil Action No. 05-30017-MAP**

# NOTICE OF CLASS ACTION AND PROPOSED SETTLEMENT

*A Federal Court authorized this notice. This is not from a lawyer.*

## You could get a payment of $1,500 or more from a class action settlement if you meet ALL of the following conditions:

1. **TIME:** You were held at the Hampshire County Jail at any time between January 18, 2002 and November 7, 2002.

2. **TYPE OF CUSTODY:** You were held at Hampshire County Jail after an arrest but before a bail hearing or first court appearance (this includes arrests on default and other warrants) or after a finding of civil contempt of court for failure to pay a judgment, a fine, or child or spousal support.

3. **OFFENSE:** You were not charged with a crime involving drugs or weapons or a violent felony.

4. **SEARCH:** You were strip searched on admission into the Jail.

**Your legal rights are affected if you act or do not act. <u>Please read the complete Notice carefully.</u>**

You are receiving this notice because records show that you <u>may</u> be a class member. To see if you qualify, you must submit a complete Settlement Claim Form, **postmarked by June 22, 2007,** to:

Ryan Claims Administrator, P.O. Box 2004, Chanhassen, MN 55317-2004

If you submit a claim form and qualify as a class member, you will share in this settlement after deducting attorney's fees, and the costs and expenses for this case. The amount of money you will receive depends on how many people submit claim forms. The money will be divided by the number of claims.

| THESE ARE YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | This is the only way to get a payment. **Remember: Claim Forms postmarked after June 22, 2007 will not be considered for payment.** |
| **ASK TO BE EXCLUDED FROM THIS CASE** | If you exclude yourself from this class action case, you will not be bound by the Settlement or judgment. You will not get a cash payment in this case. You will be free to pursue your claims against the defendants at your own expense. This is the only option that allows you to bring your own lawsuit against the Hampshire Sheriff or his employees for the claims raised in this case. **You must exclude yourself from the Settlement by May 25, 2007.** If you exclude yourself, you will not be allowed to rejoin this class action. |
| **OBJECT TO THIS SETTLEMENT** | If you want to object to the settlement but you do not exclude yourself, you may object by writing to the Claims Administrator explaining why you believe the settlement is not fair, received no later than **May 25, 2007**, or you may appear in Court at the Fairness Hearing on **June 22, 2007**. You must also submit a claim form to preserve your right to receive payment. |
| **DO NOTHING** | You get <u>no</u> payment. You will still be bound by the settlement and you give up your right to sue the defendants or employees of the county on these claims later. |

Questions? Visit *www.HampshireSheriffClassAction.com.*

## BASIC INFORMATION

### What is this case about?

Plaintiff Charles V. Ryan IV claimed that it was illegal for the Hampshire Sheriff to routinely strip search people when they were admitted into the Hampshire County Jail. He brought this case on behalf of himself and others similarly situated seeking money damages for every person who was strip searched.

### Are all strip searches in a jail illegal?

There are times when jail officers can legally strip search a prisoner. This case does not claim that all strip searches at the Jail were illegal. Plaintiffs claim that the intake searches of people who were held before a first court appearance and those who were held after a finding of civil contempt by a court were illegal. This case does not concern strip searches for cause, after contact visits, or on return from work release or court. The case does not challenge any strip searches of convicted prisoners.

## THE SETTLEMENT BENEFITS
## – WHAT YOU GET AND HOW TO GET IT –

### How much will my payment be?

We do not know the amount of the payments yet. The defendants agreed to pay $205,000 to settle this lawsuit. If you are eligible, you will get a payment for only one strip search. The amount will depend on how many people submit claim forms.

The amount per person will decrease as the number of forms submitted increases. We estimate that each participating class member will receive $1,500 or more.

The settlement money will be distributed after payment of attorneys' fees, expenses and an incentive payment. The attorneys who represented the plaintiffs, also called class counsel, will request an attorney's fee of no more than 33% of the settlement fund. Class counsel requests payment of an incentive payment to the class representative Charles V. Ryan IV who brought this case on behalf of all class members in order to compensate him for the time he spent helping to bring about this settlement and for his loss of privacy. The requested incentive payment is $10,000.

### How can I get a payment?

You must fill out the Settlement Claim Form completely and mail it to the Claims Administrator. A Claim Form is included with this notice. You can also obtain a Claim Form from *www.HampshireSheriffClassAction.com*. **The envelope must be postmarked no later than June 22, 2007; if it is not, your claim will be denied.**

The settlement check will be written in your name with your social security number. Your check will be sent to your mailing address. If you move, you must notify the Claims Administrator in writing of your new address or the check will be sent to your old address.

### When will I get my payment?

You cannot be paid until the settlement is approved by the Court and any appeals are over. The Court will hold a hearing on June 22, 2007 to decide whether to approve the settlement. Settlement checks will be issued after the Court approves the settlement and all appeals are completed. You may visit the website or contact the Claims Administrator for updates.

### If I owe past child support or tax obligations, will I have to pay them?

Yes. Any amounts for outstanding child support obligations and IRS/DOR tax liens may be deducted from your share of the settlement before a payment is made to you.

Questions? Visit *www.HampshireSheriffClassAction.com.*

## Will I have to pay taxes on my payment?

You may have to pay taxes on your payment. You should consult your tax preparer when you file your tax returns. The Commonwealth of Massachusetts will send you a 1099 Form. (If you have questions about backup withholding, Form W-9 or Form 1099, call your tax preparer or the IRS Information Reporting Program Customer Service Section, toll free at (866) 455-7438, 8:30 a.m. to 4:30 p.m., Monday through Friday.)

## What claims will be released by this Settlement?

This settlement resolves all claims for illegal strip searches. This means that people who could have been a part of this lawsuit cannot ever again sue Hampshire Sheriff Robert J. Garvey or Superintendent Patrick J. Cahillane over the issue of illegal strip searches, unless you chose to opt-out of this lawsuit.

# WHO IS IN THE SETTLEMENT

## What is a Class Action and who are Class Members?

In a class action, one or more people, called Class Representatives (in this case, Charles V. Ryan IV), sue on behalf of all people who have similar claims. All of the people who were similarly treated are known as a Class or Class Members. One court resolves the issues for all Class Members.

## How do I know if I am a Class Member and part of the settlement?

The Court has ruled that you are a Class Member if you meet all four factors below:

1.   You were held at the Hampshire County Jail at any time between January 18, 2002 and November 7, 2002.
2.   You were held at Hampshire County Jail after an arrest but before a bail hearing or first court appearance (this includes arrests on default and other warrants) or after a finding of civil contempt of court for failure to pay a judgment, a fine, or child or spousal support.
3.   You were not charged with a crime involving drugs or weapons or a violent felony.
4.   You were strip searched on admission into the Jail.

NOTE: You are **not** a class member if you were either (1) strip searched while you were serving a sentence or being held for trial, (2) you were strip searched because a correctional officer had an individualized reason to think that you were in possession of contraband, drugs or weapons, or (3) you were arrested for and/or charged with a crime involving drugs, weapons or a violent felony.

## What crimes are considered to be violent felonies?

The following crimes are examples of violent felonies: arson, assault and battery with a dangerous weapon, assault with intent to rob or murder, extortion by threat of injury, home invasion, indecent assault and battery, intimidation of witness, kidnaping, manslaughter, mayhem, murder, rape, and robbery. This is not a complete list; other felony level crimes may be determined to be "violent".

## What if I was arrested for more than one crime?

The most serious charge for an arrest will determine your class membership. If any one of the charges was a crime involving weapons or drugs or was a violent felony, you are not a class member for that arrest. You might be eligible for another arrest that took place on a different date.

## What if I was found not guilty of the crime for which I was arrested?

You are entitled to the same settlement amount whether you were found guilty or not guilty of the crime.

## What if I was arrested on a default warrant for violation of probation or parole?

You are a class member if you were arrested on a default warrant or for violating the terms of probation or parole so long as the crime for which you were on probation or which you were arrested did not involve weapons, or drugs, or a violent felony.

## I was not arrested. I was held on a finding of civil contempt. Am I a Class Member?

Yes, if you also meet all of the other requirements.

## What if I was strip searched more than once at the Jail. Can I still participate?

Yes. If you were arrested and brought to the Jail more than once during the class period you are a member of the class and can recover money. You can only recover one payment, however, and will not be provided with extra payments for being strip searched at the jail more than one time.

## What if I was at the Jail before January 18, 2002 or after November 7, 2002?

The time period for being a class member is based on the legal requirement that a case must be filed within a certain time period; this is called the statute of limitations. The law in Massachusetts only allows a person to bring a claim within three years after his or her rights were violated. Because this case was filed by Charles V. Ryan IV on January 18, 2005, class members include anyone strip searched in the three years before that date. If you were strip searched before January 18, 2002, it may be too late to bring a lawsuit. The time period for the class ends on November 7, 2002, the date when Hampshire County changed its written search policy. If you were strip searched after this date, that search is not a part of this lawsuit; you must file your own lawsuit.

## What if I am still unsure about whether I am part of the Settlement?

If you are still unsure as to whether you are a member of the class, you may fill out and return the Settlement Claim Form. If the settlement is approved, you will be notified if you do not qualify. If you qualify, you will receive a check. You may also visit the settlement website on the Internet at *www.HampshireSheriffClassAction.com* to answer your questions.

## What if I am currently incarcerated? Where will you send my payment to?

The Claims Administrator will send your payment to the address you indicate on your claim form, including jails and prisons. However, we recommend that you provide an outside address if possible.

## Who makes the final decision about who qualifies as a Class Member?

The Class Administrator makes the final decision about who qualifies as a Class Member and the Judge will review that decision. The computerized booking records kept by the Hampshire County Jail will determine if you are a class member. You can help by listing the date or dates when you feel you met the class definition. If the records do not show that you fit the class definition, your claim will be denied. You can appeal your denial to the Claims Administrator by sending documentation and information regarding the dates you believe you were held and strip searched. A decision of the Claims Administrator can be appealed to the judge. (If you are not a class member, you are not bound by this settlement. You can take action as an individual if you wish.)

## How did the lawyers in this case find me and how can I protect my privacy?

On admission into the Jail, you gave your name and address during booking. This information was given to the lawyers for the plaintiffs by Hampshire County. The lawyers for the plaintiffs will do everything they can to protect your privacy. Only the lawyers in the case and the court-appointed Claims Administrator will know your name and, in most cases, only the Claims Administrator will see your Claim Form.

## What should I do if I do not want to participate in the Class Action?

If you do not wish to participate in the class action, you can either exclude yourself or do nothing. If you do not send in a claim form, you will not be a participating Class Member and you will not receive a payment. You will also be barred from filing a case on these claims in the future.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

## If I exclude myself, can I get money from this settlement?

No, you will not get a payment from this settlement. You will not be legally bound by the settlement. You can bring your own lawsuit. Class counsel will not represent you in pursuing your claims. If you exclude yourself, do not send in a Claim Form. Because you will no longer be part of the case, you cannot object to the settlement if you ask to be excluded. A request to be excluded means you have opted out of this case.

## How do I get out of this settlement?

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from Ryan v. Garvey, et al. Be sure to include your name, address, telephone number and sign the letter. You must mail your exclusion request postmarked no later than May 25, 2007, to the Claims Administrator at Ryan Claims Administrator, P.O. Box 2004, Chanhassen, MN 55317-2004. The Claims Administrator will file your notice with the court and counsel. You cannot exclude yourself by phone or by e-mail.

## If I do not exclude myself, can I sue the Hampshire County Sheriff for the same thing later?

No. Unless you exclude yourself, you give up the right to sue the Hampshire County Sheriff or his employees for the claims that this settlement resolves. Remember, the exclusion deadline is May 25, 2007.

### OBJECTING TO THE SETTLEMENT

## What if I think the proposed settlement is not fair? What can I do?

If you wish to object to the proposed settlement, you or a lawyer on your behalf must either state your objections to the Court in a letter sent to the Claims Administrator, received no later than May 25, 2007, or appear in the U.S. District Court of Massachusetts, 1550 Main Street, Springfield, MA on June 22, 2007 to present your objections. If you write, the Claims Administrator will forward your objection to the Court and to the lawyers.

You may object to the proposed settlement and still be eligible to receive a payment. *You must submit a valid Settlement Claim Form by the June 22, 2007 deadline even if you object to the settlement, if you wish to claim money should the settlement be approved.*

## THE COURT'S FAIRNESS HEARING

### What is a Fairness Hearing?

The Court will hold a hearing to decide whether to approve the settlement. The Court will consider whether the settlement is fair, reasonable and adequate. The Court will also decide whether to approve the request for attorney's fees, costs, expenses and the bonuses to class representatives and class members who were deposed. If the Court approves the proposed settlement, it will affect all class members.

### When and where is the hearing?

The Hearing will be at 2:00 p.m. on Friday, June 22, 2007 in Courtroom 1 at the U.S. District Court of Massachusetts, 1550 Main Street, Springfield, MA.

### Do I have to come to the hearing? May I or my lawyer speak at the hearing?

No, you are not required to attend the hearing. Class counsel will answer any questions the Court may have. You are welcome to come at your own expense. If you object to the settlement and you want to explain the objection to the Court, you can attend the hearing or hire your own lawyer to attend for you.

## THE LAWYERS IN THIS CASE

### Who are the lawyers in this case?

The lawyers for the Plaintiff Charles V. Ryan IV and the class are Howard Friedman and Myong J. Joun, Law Offices of Howard Friedman P.C., 90 Canal Street, 5th Floor, Boston, Massachusetts 02114.

Defendants Hampshire Sheriff Robert J. Garvey and Superintendent Patrick J. Cahillane are represented by Attorney General Thomas F. Reilly and Assistant Attorney General Rosemary Tarantino, Western Massachusetts Division, 1350 Main Street, 4th Floor, Springfield, MA 01103.

### How will the plaintiffs' lawyers be paid?

The lawyers for the plaintiffs will request that the Court award an attorney's fee of no more than 33% of the settlement fund. In addition to the fee, they will seek reimbursement from the settlement fund for expenses of litigation and claims administration.

## OTHER INFORMATION

If you wish to view the Court file or a copy of the proposed settlement agreement, you may go to the Clerk of the U.S. District Court of Massachusetts, 1550 Main Street, Springfield, MA during regular business hours. You can also view the settlement papers on the web at *www.HampshireSheriffClassAction.com*.

To obtain more information about the settlement, write to the Claims Administrator at Ryan Claims Administrator, P.O. Box 2004, Chanhassen, MN 55317-2004; or visit the website at *www.HampshireSheriffClassAction.com*.

**IMPORTANT: Please do not call the Court directly with questions about this lawsuit or the settlement. All questions regarding this lawsuit or the settlement should be addressed to the Claims Administrator.**

United States District Court
District of Massachusetts

<u>POSTMASTER</u>
IF UNDELIVERABLE, PLEASE RETURN TO
Analytics Incorporated, Claims Administrator
P.O. Box 2004
Chanhassen, MN 55317-2004



NEOPOST        **$0.39**
FEB 09 2007
US POSTAGE
FIRST CLASS
MAILED FROM 55317
048J002500

**<u>IMPORTANT</u>: Notice of Class Action Lawsuit. You may be eligible for a
Settlement Payment**

*Time Sensitive Material. Open Immediately.*    

# The Republican, Tuesday, January 23, 2007

**Hampshire County Jail
Class Action Settlement**

Ryan v. Garvey , et al., U.S.
District Court of Massachu-
setts, C.A. No. 05-30017-MAP
A federal court authorized
this notice. This is not an ad-
vertisement from a lawyer.

You could get a payment of
$1,500 or more from a class
action     settlement if you
meet ALL of the following
cond itions:

. You were held at the
Hampshire County Jail at
any time between January
18, 2002 and November 7,
2002.
. You were held at Hamp-
shire County Jail after an
arrest but before a bail
hearing or first court ap-
pearance (this includes ar-
rests on default and other
warrants) or after a finding
of civil contempt of court
for failure to pay child or
spousal support, a judg-
ment, or a fine.
. You were not charged with
a crime involving drugs or
weapons or a violent felony.
. You were strip searched.

To see if you qualify, you
must submit a complete Set-
tlement Claim Form, post-
marked by June 22, 2007.
You may obtain the Form by
writing to:
Ryan Claims Administrator,
P.O. Box 2004, Chanhassen,
MN 55317-2004
or downloading the form at
www.hampshirecountyjailcl
assaction.com.
(January 23)

## WEEKEND GAZETTE ● gazettenet.com **E11**

January 27-28, 2007

**Hampshire County Jail**
**Class Action Settlement**
Ryan v. Garvey, et al., U.S. District Court
of
Massachusetts, C.A. No. 05-30017-MAP
*A federal court authorized this notice.*
*This is not an advertisement from a lawyer.*
**You could get a payment of $1,500 or**
**more from a class action settlement if**
**you meet __ALL__ of the following condi-**
**tions:**
• **You were held at the Hampshire**
**County Jail at any time between January**
**18, 2002 and November 7, 2002.**
• **You were held at Hampshire County**
**Jail after an arrest but before a bail**
**hearing or first court appearance (this**
**includes arrests on default and other**
**warrants) or after a finding of civil**
**contempt of court for failure to pay child**
**or spousal support, a judgment, or a fine.**
• **You were not charged with a crime in-**
**volving drugs or weapons or a violent fel-**
**ony.**
• **You were strip searched.**
To see if you qualify, you must submit a
complete Settlement Claim Form, **post-**
**marked by June 22, 2007.** You may obtain
the Form by writing to: Ryan Claims Ad-
ministrator, P.O. Box 2004, Chanhassen, MN
55317-2004 or downloading the form at
www.hampshirecountyjailclassaction.com.
Jan. 27

**18**    The Recorder Saturday, January 27 2007

**Hampshire County Jail
Class Action Settlement
Ryan v. Garvey, et al.
U.S. District Court
of Massachusetts
C.A. No. 05-30017-MAP**

A federal court authorized this notice. This is not an advertisement from a lawyer.

You can get a payment of $1,500 or more from a class action settlement if you meet ALL of the following conditions:

ï You were held at the Hampshire County Jail at anytime between January 18, 2002 and November 7, 2002.

ï You were held at Hampshire County Jail after an arrest but before a bail hearing or first court appearance (this includes arrests on default and other warrants) or after a finding of civil contempt of court for failure to pay child or spousal support, a judgment, or a fine.

ï You were not charged with a crime involving drugs or weapons or a violent felony.

ï You were strip searched.

To see if you qualify, you must submit a complete Settlement Claim Form, postmarked by June 22, 2007. You may obtain the Form by writing to: Ryan Claims Administrator, P.O. Box 2004, Chanhassen, MN 55317-2004 or downloading the form at www.hampshirecountyjailclassaction.com.





# Hampshire County jail to pay people strip-searched at facility

**January 11, 2007**

NORTHAMPTON, Mass. --Nearly 100 people who were illegally strip-searched on arrival at the Hampshire County jail will be eligible for payments of at least $1,500 each under the settlement of a class-action lawsuit.

Those eligible for payments were strip-searched at the jail after being arrested between Jan. 18, 2002 and Nov. 7, 2002, for crimes that did not involve drugs, weapons or violent felonies, the Daily Hampshire Gazette reported, quoting the plaintiffs' lawyer.

Charles V. Ryan IV, a Worthington lawyer who brought the lawsuit, will receive at least $10,000 of the $205,000 settlement that received preliminary approval from U.S. District Court Judge Michael A. Ponsor. The deal was disclosed on Tuesday, the newspaper reported.

Final approval will likely be in June. Class action members must submit a claim form by June 22 to receive a share of the compensation, the newspaper reported.

Ryan, 52, was arrested during a Martin Luther King weekend in 2002 on a charge of violating a restraining order obtained by his now-ex-wife. He was brought to the jail, strip-searched and held for four nights until court opened on Tuesday. The case was eventually dismissed.

"It was probably the worst experience of my life. My father, the mayor of Springfield, came to see me in jail. I had to be strip-searched after I met him, which is apparently legal," Ryan told The Republican newspaper of Springfield.

In January 2005 he filed a lawsuit alleging unconstitutional strip searches at the Hampshire Jail and House of Corrections. The lawsuit was filed against the Hampshire Sheriff Robert Garvey and Patrick J. Callihane, the Deputy Superintendent responsible for operation of the facility.

The jail policy was changed when the Hampshire County lockup, which only holds people who were arrested and not yet arraigned, was opened in November 2002. Prior to its opening, those who were arrested were held with the rest of the jail population.

Authorities now "don't strip-search people prior to appearance in court unless there is significant probability they have something that could hurt themselves or others," Garvey told the Daily Hampshire Gazette on Wednesday.



### Hampshire County jail to pay people strip-searched at facility

By **Associated Press**

Thursday, January 11, 2007

**N**ORTHAMPTON - Nearly 100 people who were illegally strip-searched on arrival at the Hampshire County jail will be eligible for payments of at least $1,500 each under the settlement of a class-action lawsuit.

Those eligible for payments were strip-searched at the jail after being arrested between Jan. 18, 2002 and Nov. 7, 2002, for crimes that did not involve drugs, weapons or violent felonies, the Daily Hampshire Gazette reported, quoting the plaintiffs' lawyer.

Charles V. Ryan IV, a Worthington lawyer who brought the lawsuit, will receive at least $10,000 of the $205,000 settlement that received preliminary approval from U.S. District Court Judge Michael A. Ponsor. The deal was disclosed on Tuesday, the newspaper reported.

Final approval will likely be in June. Class action members must submit a claim form by June 22 to receive a share of the compensation, the newspaper reported.

Ryan, 52, was arrested during a Martin Luther King weekend in 2002 on a charge of violating a restraining order obtained by his now-ex-wife. He was brought to the jail, strip-searched and held for four nights until court opened on Tuesday. The case was eventually dismissed.

"It was probably the worst experience of my life. My father, the mayor of Springfield, came to see me in jail. I had to be strip-searched after I met him, which is apparently legal," Ryan told The Republican newspaper of Springfield.

In January 2005 he filed a lawsuit alleging unconstitutional strip searches at the Hampshire Jail and House of Corrections. The lawsuit was filed against the Hampshire Sheriff Robert Garvey and Patrick J. Callihane, the Deputy Superintendent responsible for operation of the facility.

The jail policy was changed when the Hampshire County lockup, which only holds people who were arrested and not yet arraigned, was opened in November 2002. Prior to its opening, those who were arrested were held with the rest of the jail population.

Authorities now "don't strip-search people prior to appearance in court unless there is significant probability they have something that could hurt themselves or others," Garvey told the Daily Hampshire Gazette on Wednesday.

—

© Copyright 2007 Associated Press. All rights reserved. This material may not be published, broadcast, rewritten, or redistributed.

# The Republican.

## Settlements set for strip searches

Thursday, January 11, 2007

**By NANCY H. GONTER**
ngonter@repub.com

NORTHAMPTON - Nearly 100 people who were strip-searched when they were brought to the Hampshire County jail will be eligible for payments of $1,500 or more under a proposed $205,000 settlement in U.S. District Court in Springfield.

The man who brought the class-action suit, Worthington lawyer Charles V. Ryan IV, the son of Springfield Mayor Charles V. Ryan, will receive at least $10,000 under the settlement.

Those eligible for the payments were strip-searched when they were brought to the jail after being arrested between Jan. 18, 2002, and Nov. 7, 2002, for crimes that did not involve drugs, weapons or violent felonies, according to settlement agreement that received preliminary approval from U.S. District Court Judge Michael A. Ponsor.

Ryan was arrested late on a Friday afternoon of the Martin Luther King Day weekend in 2002 on a charge of violating a restraining order obtained by his now-ex-wife. He was brought to the jail, strip-searched and held for four nights until court opened on Tuesday. Eventually the case was dismissed.

"It was probably the worst experience of my life. My father, the mayor of Springfield, came to see me in jail. I had to be strip-searched after I met him, which is apparently legal," Ryan said.

Ryan, 52, who said he plans to use the settlement money to go to Ireland, said he was strip-searched three times during his stay at the jail, twice after having visitors and once when he entered the facility. It was that entrance search that was the subject of the lawsuit.

His lawyer, Howard A. Friedman, of Boston, who won two previous class-action lawsuits about illegal strip searches, said people cannot be strip-searched without cause when they have been arrested and held for court.

"They can strip-search if they have a reasonable suspicion. They have to evaluate," Friedman said. Having a visitor who could have brought contraband to a prisoner qualifies as cause for a search, he said.



Wednesday, January 10, 2007

NORTHAMPTON - The Hampshire County Sheriff's Office has agreed to pay $205,000 to the plaintiffs in a class action lawsuit alleging correction officers conducted illegal strip searches on them, according to information released Tuesday by the plaintiffs' lawyer.

The settlement was given preliminary approval by U.S. District Court Judge Michael A Ponsor, according to the press release.

Named in the suit are Sheriff Robert Garvey and Patrick Cahillane, deputy superintendent of the Hampshire County Jail and House of Correction. Neither could be reached for comment Tuesday night after the settlement was announced. Rosemary Tarantino of the state attorney general's office, who represented Garvey and Cahillane, also could not be reached.

The class action suit originated as a civil suit filed in 2005 by Charles Ryan, 51, of Worthington.

In a telephone interview Tuesday night, Ryan said 90 other plaintiffs have signed onto the case, alleging they were also illegally strip-searched at the county jail on Rocky Hill Road in Northampton. Individual plaintiffs will receive $1,500 or more, provided they file claims by June 22, the press release states.

According to the press release, a person qualifies as a member of the class action if he or she was arrested for crimes that did not involve drugs, weapons or violent felonies, or was held after a civil contempt of court finding, between Jan. 18 and Nov. 7, 2002, and then was strip-searched at the Hampshire Jail.

Representing Ryan and the other plaintiffs is Howard Friedman, a Boston lawyer who specializes in civil rights and police misconduct litigation, according to his Web site.

Ryan, himself a lawyer, alleges he was strip-searched at the jail Jan. 19, 2002, after being arrested for allegedly violating an abuse-prevention order taken out against him by his former wife. The charge was ultimately dropped when she didn't testify, Ryan said.

While Ryan's lawsuit focuses on the strip search that followed his arrest, Ryan said his grievance extends to other civil rights abuses inherent in the criminal justice system. The strip search 'happened to be technically available to me to seek redress,' he said.

Ryan said in addition to the strip search, he suffered the additional indignities of being led out of his home law office in Worthington by state police, being held in jail overnight without a hearing and later having his property taken away by the Hampshire Probate Court.

In representing hundreds of clients, Ryan said he's seen plenty examples of civil rights abuses, and has taken a dim view of the criminal justice system.

The settlement, he said, is 'a Pyrrhic victory at best. I've been ruined. I've had everything taken away from me.'

Ryan said he has no personal quarrel with Garvey, the sheriff, or Cahillane, the jail superintendent.

'They had to be sued because you can't sue the state, you have to sue its officers,' Ryan said.

Members of the class action suit who submit claim forms will be entitled to receive a piece of the settlement money, pending a final hearing scheduled for June 8. The settlement money will also cover attorney and other legal fees associated with the case.

'I'm happy that justice is being done, and I hope all the people who have been violated enjoy their small pittance,' Ryan said.



## Sheriff acknowledges strip searches illegal

Sheriff acknowledges strip searches illegal
BY KIMBERLY ASHTON STAFF WRITER
Daily Hampshire Gazette, Northampton, MA

January 11,2007

NORTHAMPTON - Hampshire Sheriff Robert J. Garvey acknowledged Wednesday that the jail's former practice of strip-searching people awaiting court was unconstitutional. But Garvey said that the searches were deemed necessary before the opening of the regional lockup. A federal judge this week preliminarily approved a settlement in which Garvey's department must pay $205,000 to those illegally searched during that time. The jail stopped the practice in November 2002, but before that time, the department routinely strip-searched everyone coming in, according to Howard Friedman, a Boston lawyer who represented the 90 or so people illegally searched from Jan. 18, 2002, to Nov. 7, 2002. He said that the sheriff's department was using procedures normally used on those in jail, not for those awaiting their first court appearances. In the federal lawsuit, Friedman included people who had been strip-searched after being arrested for crimes other than violent felonies or those that involved drugs or weapons. Defendants who were searched while being held in a civil finding of contempt of court or for failure to pay child or spousal support finding, a judgment or a fine were also included in the class-action suit.

According to Friedman, each class member will get $1,500 or more. Class members must submit a claim form by June 22 to receive their reward. Worthington resident Charles V. Ryan IV, 51, was the lead plaintiff in the case. He filed a complaint Jan. 18, 2005, or three years after he was arrested on a charge of violation of an abuse-prevention order and strip-searched before his arraignment. The charge was later dropped when the witness refused to testify. Ryan was far from the only person illegally strip-searched at the time.

After the regional lockup opened at the jail in November 2002 - creating a separate facility to hold people immediately after their arrest - the sheriff's department stopped strip-searching people awaiting their first court appearances, according to both the sheriff and the group that sued him and his deputy.

Garvey said Wednesday that before the opening of the regional lockup, those awaiting their first court appearance were strip-searched because they were held at the Hampshire Jail and House of Correction with the general population. He said that now "we don't strip-search people prior to appearance in court unless there is significant probability they have something that could hurt themselves or others." Since the complaint alleged a

violation of constitutional rights, the case was handled in U.S. District Court in Springfield. Judge Michael A. Ponsor granted preliminary approval of the settlement Tuesday. Final approval will likely be in June, Friedman said. David Guarino, a spokesman for the state attorney general's office, which represented Garvey and Deputy Superintendent Patrick Cahillane, called the settlement "an appropriate disposition of the case." Ryan, reached at his Worthington home Tuesday night, said, "I'm happy that justice is being done, and I hope all the people who have been violated enjoy their small pittance."



Friday, January 12, 2007

**In Our Opinion: Worth noting**

## Sheriff's costly lesson

The Hampshire County sheriff's department has agreed to pay a total of $205,000 to settle a class-action lawsuit filed by about 90 people who were strip searched while awaiting arraignment at the Hampshire Jail and House of Correction.

This has been a costly lesson for the sheriff's department, particularly at a time when it's unsure how it will come up with enough money to keep its regional lockup open.

The lockup is now used to hold people awaiting arraignment. Before it opened in 2002, people who had just been arrested were housed along with the general inmate population at the jail until their arraignments. The department routinely strip searched them regardless of the nature of the crime they were accused of committing, citing a concern about weapons being smuggled into the jail.

That means, for example, that someone who was arrested for failing to pay a court fine was treated the same as someone arrested for a violent crime like assault, and subjected to the humiliation of a strip search.

The $205,000 settlement, which received preliminary approval from a federal judge this week, came in response to a lawsuit that was initially filed on behalf of Worthington attorney Charles Ryan; about 90 other people joined with Ryan to make it a class-action suit. Ryan was strip searched after his arrest on a charge of violating an abuse-prevention order. The charge was later dropped when the witness declined to testify against Ryan.

Sheriff Robert Garvey says he now realizes the strip searches were unconstitutional. That acknowledgment, though, is late in coming, and it's little comfort to the people whose rights were violated.

Considering how much the sheriff's department now has to pay to settle the case, it might have been far less costly to have invested in separate accommodations at the jail for people awaiting trial. Perhaps it will provide the sheriff with the added incentive to finally work out a funding agreement with area police departments that use the lockup to make sure that the facility remains open. The sheriff's department can't afford to find itself in the same bad situation with the same bad choices again.

EXAMINER.COM

# Hampshire County jail to pay people strip-searched at facility

The Associated Press
Jan 11, 2007 1:45 AM (6 days ago)

**NORTHAMPTON, Mass. -**

Nearly 100 people who were illegally strip-searched on arrival at the Hampshire County jail will be eligible for payments of at least $1,500 each under the settlement of a class-action lawsuit.

Those eligible for payments were strip-searched at the jail after being arrested between Jan. 18, 2002 and Nov. 7, 2002, for crimes that did not involve drugs, weapons or violent felonies, the Daily Hampshire Gazette reported, quoting the plaintiffs' lawyer.

Charles V. Ryan IV, a Worthington lawyer who brought the lawsuit, will receive at least $10,000 of the $205,000 settlement that received preliminary approval from U.S. District Court Judge Michael A. Ponsor. The deal was disclosed on Tuesday, the newspaper reported.

Final approval will likely be in June. Class action members must submit a claim form by June 22 to receive a share of the compensation, the newspaper reported.

Ryan, 52, was arrested during a Martin Luther King weekend in 2002 on a charge of violating a restraining order obtained by his now-ex-wife. He was brought to the jail, strip-searched and held for four nights until court opened on Tuesday. The case was eventually dismissed.

"It was probably the worst experience of my life. My father, the mayor of Springfield, came to see me in jail. I had to be strip-searched after I met him, which is apparently legal," Ryan told The Republican newspaper of Springfield.

In January 2005 he filed a **lawsuit** alleging unconstitutional strip searches at the Hampshire Jail and House of Corrections. The lawsuit was filed against the Hampshire Sheriff Robert Garvey and Patrick J. Callihane, the Deputy Superintendent responsible for operation of the facility.

The jail policy was changed when the Hampshire County lockup, which only holds people who were arrested and not yet arraigned, was opened in November 2002. Prior to its opening, those who were arrested were held with the rest of the jail population.

Authorities now "don't strip-search people prior to appearance in court unless there is significant probability they have something that could hurt themselves or others," Garvey told the Daily Hampshire Gazette on Wednesday.

---

Information from: The Springfield Republican, http://www.masslive.com/republican/index.ssf

Information from: Daily Hampshire Gazette, http://www.gazettenet.com

*Copyright 2007 The Associated Press. All rights reserved. This material may not be published,*

# Hampshire County Jail Class Action Settlement

*A federal court authorized this notice.*

## You could get a payment of $1,500 or more from a class action settlement if you meet <u>ALL</u> of the following conditions:

1.  **You were held at the Hampshire County Jail at any time between January 18, 2002 and November 7, 2002.**

2.  **You were held at Hampshire County Jail after an arrest but before a bail hearing or first court appearance (this includes arrests on default and other warrants) or after a finding of civil contempt of court for failure to pay child or spousal support, a judgment, or a fine.**

3.  **You were not charged with a crime involving drugs or weapons or a violent felony.**

4.  **You were strip searched.**

To see if you qualify, you must submit a completed Settlement Claim Form, postmarked by June 22, 2007. You may obtain the Form by asking an officer at the Hampshire County Jail or by writing to: Ryan Claims Administrator, P.O. Box 2004, Chanhassen, MN 55317-2004.

# Hampshire County Jail
# Class Action Settlement

*A federal court authorized this notice.*

## You could get a payment of $1,500 or more from a class action settlement if you meet <u>ALL</u> of the following conditions:

1. You were held at the Hampshire County Jail at any time between January 18, 2002 and November 7, 2002.

2. You were held at Hampshire County Jail after an arrest but before a bail hearing or first court appearance (this includes arrests on default and other warrants) or after a finding of civil contempt of court for failure to pay child or spousal support, a judgment, or a fine.

3. You were not charged with a crime involving drugs or weapons or a violent felony.

4. You were strip searched.

To see if you qualify, you must submit a completed Settlement Claim Form, postmarked by June 22, 2007. You may obtain the Form by asking an officer at the Hampshire County Jail or by writing to: Ryan Claims Administrator, P.O. Box 2004, Chanhassen, MN 55317-2004.



# ATTORNEY FEES LITIGATION EXPENSE SUMMARY

<u>Ryan, et al. v. Garvey, et al</u>.
C.A. No. 05-30017-MAP

| User | Time | Rate | Amount |
|------|------|------|--------|
| Attorney Howard Friedman | 21.90 | $350.00 | $7,665.00 |
| Attorney Myong J. Joun | 170.30 | $225.00 | $38,317.50 |
| Attorney Jennifer L. Bills | 12.90 | $150.00 | $1,935.00 |
| Paralegal Neal Alpert | 3.30 | $75.00 | $247.50 |
| Paralegal Ajay Sequeira | 2.40 | $75.00 | $180.00 |
| Law Student Lydia Milnes | 0.10 | $75.00 | $7.50 |
| **Total Fees** | | | **$48,352.50** |

| **Total Expenses** | **$1,687.61** |
|------|------|

| **TOTAL FEES & EXPENSES** | **$50,040.11** |
|------|------|